UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Myra Ponce | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Justin Sterling | Jeff Katosfsky<br>Lindsay Singer |

| **Proceedings:** | PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS (ECF No. 48, filed October 17, 2014)<br><br>DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF No. 54, filed October 20, 2014) |
|---|---|

## I.    INTRODUCTION

On February 6, 2014, plaintiff Dr. Alisa Wolf ("Wolf") filed this lawsuit against defendants Joseph "Joey" Travolta, doing business as Inclusion Films ("Travolta"), Inclusion Wear, LLC ("Inclusion Wear"), Little Documentary Films, LLC, and Does 1 through 100 (collectively "defendants" or "counterclaimants"). ECF No. 1. Wolf filed the operative Second Amended Complaint ("SAC") on September 29, 2014. ECF No. 39. Also on September 29, 2014, defendants filed an Amended Answer to the First Amended Complaint and Counterclaims ("CC"). ECF No. 40. The parties' dispute concerns the authorship and ownership of a filmmaking course designed for students with autism. The SAC asserts claims for (1) copyright infringement, (2) unfair competition, (3) interference with economic relationship, (4) breach of fiduciary duty, (5) misappropriation of trade secrets, and (6) conversion. See generally SAC. Defendants have counterclaimed for (1) intentional interference with prospective economic relations and (2) negligent interference with economic relations. See generally CC.

On October 17, 2014, Wolf filed a motion to dismiss the counterclaims. ECF No. 48. Defendants filed an opposition on November 3, 2014, ECF No. 64, and Wolf filed a reply on November 10, 2014, ECF No. 70. On October 20, 2014, defendants filed a motion to dismiss the SAC. ECF No. 54. Wolf filed an opposition on November 3,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

2014, ECF No. 63, and defendant filed a reply on November 10, 2014, ECF No. 73.  On November 24, 2014, the Court held a hearing at which counsel for the parties appeared. For the reasons stated below, the Court grants in part and denies in part defendants' motion, and grants Wolf's motion.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint or counterclaim.  "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the pleading, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The pleading must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a [pleading], they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a [pleading] to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  Ultimately, "[d]etermining whether a [pleading] states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the counterclaim (e.g., facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|----------------------------|------|-------------------|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

presented in briefs, affidavits, or discovery materials). <u>In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.</u>, 102 F.3d 1524, 1537 (9th Cir. 1996), <u>rev'd on other grounds sub nom</u> <u>Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the counterclaim and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986); <u>see</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DEFENDANTS' MOTION TO DISMISS THE SAC

### A. Background

1. Allegations of the Second Amended Complaint

Wolf's SAC alleges the following facts, the truth of which the Court assumes for purposes of the motion to dismiss the SAC only. Wolf is the founder, CEO, and Executive Director of Actors for Autism ("AFA"), a non-profit engaged in the provision of educational and vocational training programs for young persons on the autistic spectrum or with other special needs. SAC ¶¶ 3, 11. These programs include a course in filmmaking offered to persons with developmental disabilities. <u>Id.</u> ¶ 10. AFA is also in the business of securing "vendorization" agreements with regional centers and contracts with other entities to offer its curriculum and courses.[1] <u>Id.</u>

Wolf contends that she authored a filmmaking course curriculum entitled "Practical Film Vocational Program" ("PFVP"), which she designed to comply with the

---

[1]"Vendorization" refers to a process whereby regional centers can pay the fees for individuals with developmental disabilities who enroll in approved programs. <u>See</u> ECF No. 37 at 2 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

"strict guidelines of Title 17 of the California Code of Regulations that contain the regulations pertaining to the Development of Developmental Services and the vendorization process for regional centers." Id. ¶ 16. Wolf asserts that she "wrote the curriculum on her own without the contribution of others." Id. ¶ 17. Wolf registered a version of the PFVP with the U.S. Copyright Office in 2006, id. ¶ 18, and offers courses based on this curriculum through AFA, id. ¶ 19.

Travolta served as President of AFA, and also served on AFA's Board of Directors. Id. ¶ 12. Wolf asserts that Travolta's position of President was a figurehead position in which "his duties consisted of promoting the organization in the entertainment community" and performing other duties given to him by Wolf, the organization's Executive Director. Id. ¶ 13. According to Wolf, Travolta breached fiduciary duties to AFA and Wolf by persuading entities with which AFA and Wolf were negotiating to change the name on contracts from AFA to Travolta, and to make payments out to Travolta personally. Id. ¶ 15. Wolf specifically alleges that Travolta persuaded Dr. Vivian David at the San Mateo-based Stepping Stones Center for Autistic Spectrum Disorders to change the name on a summer camp contract, and also convinced Oakland University to change the name on a contract. Id. ¶ 52. Travolta was asked to resign from his position as President of AFA based on these alleged breaches of fiduciary duty, and for stealing vendorization agreements and contracts negotiated by AFA and Wolf. Id. ¶ 20. Wolf alleges that Travolta took AFA equipment with him when he resigned from AFA, including computers that had Wolf's curriculum stored on them, and has refused to return AFA property despite repeated requests. Id. ¶¶ 21, 78. Wolf contends that Travolta stole this curriculum to secure more contracts and vendorization agreements "that would otherwise be negotiated with AFA." Id. ¶ 21.

Wolf asserts that defendants continue to use "an infringing curriculum which is substantially similar" to Wolf's curriculum, and retain Wolf's intellectual property and AFA equipment. Id. ¶¶ 22, 23. Wolf alleges that defendants have copied large portions of her curriculum, including lengthy verbatim passges, into their Inclusion Films program guide. Id. ¶ 33. Wolf asserts that defendants have used this infringing material to secure contracts with sponsoring agencies including Futures Explored, Oakland University, and Kern County Regional Center. Id. Wolf also asserts that defendants have made false representation to the public about Wolf for the purpose of diverting business from Wolf and AFA to defendants. Id. ¶ 42. Wolf contends that, due to defendants' infringement and misrepresentations, organizations serving the autism community "have come to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|----------------------------|------|-------------------|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

believe that AFA copied its program" from defendants, or that Wolf and AFA "support, associate, and/or promote the use" of defendants' infringing curriculum.  Id. ¶ 34.

2.     Versions of the Curriculum Submitted by Wolf

Defendants' motion to dismiss the copyright infringement claim is based in large part on Wolf's alleged failure to identify and produce the document for which she obtained a copyright registration.  The First Amended Complaint ("FAC") attached a curriculum entitled "Actors for Autism Practical Film Program Proposal," dated September 5, 2006, and containing a copyright symbol next to "Alisa Wolf, M.Ed."  See ECF No. 9 Ex. A ("Version 1").  This document is fifteen pages long.  Id.  The FAC also attached a screen shot of a United States Copyright Office web page reflecting a copyright registration (number TX0006421919) in Wolf's name for material with a publication date of May 10, 2006.  Id. Ex. B.  In their opposition to Wolf's motion for a preliminary injunction, defendants pointed out that the date of Version 1 of the curriculum postdated that of the copyright registration.  See ECF No. 27 at 2.

In her reply to the opposition to her motion for a preliminary injunction, Wolf submitted a document titled "Practical Film Vocational Program for People with Developmental Disabilities" and dated May 10, 2006—the same date as that on the copyright registration.  See ECF No. 28-1 Ex. B ("Version 2").  Although the highlighted passages that Wolf claims defendants copied are almost exactly the same, the May 10 curriculum is only five pages long.  Id.

Wolf attached to the SAC the same Version 2 of the curriculum.  See SAC Ex. A.  The SAC also stated that a "Litigation Statement Form has been submitted to the U.S. Copyright Office for a certified copy of deposit which will be further amended to this Complaint once received."  SAC ¶ 16.  The SAC asserted the same copyright registration number (TX 6-421-919) as that in the FAC.  Id. ¶ 18.

On November 10, 2014, Wolf requested judicial notice of a U.S. Copyright Office Certificate of Registration for number TX 6-421-919.  See ECF No. 71.  Wolf also requested judicial notice of a U.S. Copyright Office Certified Copy of Deposit marked with the same registration number.  See ECF No. 72.  The PFVP contained in this Certificate of Deposit ("Version 3") is approximately four pages long, is dated May 10, 2006, and appears to have a substantially identical cover page to the previously submitted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

May 10, 2006 document. <u>Id.</u> The next page of Version 3 contains a "Mission Statement" section that is identical to that contained in Version 2, an "Entrance Criteria" section that is identical to that contained in Version 2, and a "Referral Process" section that is significantly different from the equivalent section in Version 2. <u>Id.</u> The third page of Version 3 includes an "Exit Criteria" section that includes one paragraph that is identical to an equivalent paragraph in Version 2, but also includes two additional paragraphs. <u>Id.</u> The last page of Version 3 contains "Participation Limits" and Outcomes sections that are identical to equivalent sections in Version 2. <u>Id.</u> Version 2 contains several sections that are not in Version 3, namely: descriptions of the filmmaking course in four multiweek periods, cost, admission process, and an absence policy.

**B.     Analysis**

> 1.     Defendants' Argument that the SAC Fails to Identify the Copyrighted Work at Issue

A copyright infringement claim has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." <u>Feist Publ'ns v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991). Defendants claim that the SAC fails on both counts because it does not attach the correct document. The Court disagrees.

> a.     Ownership

Copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "Copyright protection subsists from the moment the work is 'fixed in any tangible medium of expression.' " <u>S.O.S., Inc. v. Payday, Inc.</u>, 886 F.2d 1081, 1085 (9th Cir. 1989) (citing 17 U.S.C. § 102(a)). "Registration is not a prerequisite to a valid copyright, although it is a prerequisite to suit." <u>Id.</u> Generally, "[w]hether one person or another is the owner of rights or whether one person has imbued the work with enough originality to be considered an author is a question of fact." 2 William F. Patry, <u>Patry on Copyright</u> § 51:50 (2014).

Defendants assert that the SAC fails to identify the actual work alleged to be owned and infringed, and therefore fails to put defendants on notice of the claims against them. Wolf responds that although the number of pages differ, the "works are the same"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

because they contain identical content, which Wolf alleges has been copied verbatim by defendants.  Wolf also cites an out-of-circuit district court case for the proposition that she "need not . . . attach a copy of the work to survive a 12(b)(6) motion."  ECF No. 63 at 9 (citing Sefton v. Jew, 201 F. Supp. 2d 730 747–48 (W.D. Tex. 2001) (finding a claim for copyright infringement sufficiently pled even though the plaintiff "failed to provide a comprehensive list or complete set of copies of all the photographs at issue")).  Defendants reply that, even if Wolf is not required to attach the work to the SAC, because the SAC does not attach the registered work or assert that Wolf will register the work that was originally attached, Wolf "is currently bringing a copyright infringement claim for a work that has not been registered."  ECF No. 73 at 2.

The only legal authority defendants cite in support of this argument is Four Navy Seals v. Assoc. Press, 413 F. Supp. 2d 1136, 1147–48 (S.D. Cal. 2005).  In that case, the court found that the plaintiffs had not pled ownership of a valid copyright where they merely asserted that, out of a group of 1800 photographs, "at least one unidentified photograph [had] been copyrighted by an un identified [Navy Seal] and was distributed by" the defendants.  Id. at 1148.  The complaint in that case did not identify which works defendants had allegedly infringed, or when the works were registered.  Id.  The Court finds Four Navy Seals inapposite.  Although it has taken Wolf some time to file with the Court the precise document submitted to the Copyright Office, much of the allegedly copied content has remained the same in each document Wolf has submitted, and the copyright registration number she references has not changed.  Therefore, defendants have clearly been put on notice as to the material over which Wolf asserts ownership.

        b.     Copying

The second element of a copyright infringement claim, copying, is demonstrated by showing (1) circumstantial (or other) evidence of defendants' access to the protected work, and (2) substantial similarity between the copyrighted and accused works.  Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1043 n.2 (9th Cir.1994).  Access is not in dispute: on either parties' version of the facts, both Wolf and Travolta had access to the developing curriculum while Travolta was a board member and officer of AFA.

The Ninth Circuit employs two tests to determine whether substantial similarity exists: an objective "extrinsic" test and a subjective "intrinsic" test.  Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir.1996) (internal citations omitted).  Under the extrinsic test, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

court considers whether two works share a similarity of ideas and expression as measured by external, objective criteria. Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442-43 (9th Cir.1994). In applying the extrinsic test, the court carries out an "analytic dissection" of the isolated elements of each work, excluding the other elements and the combination of elements. Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir.1997). In applying the "intrinsic" test, the court determines whether a reasonable person would perceive a substantial similarity in the "total concept and feel" of each work. Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir.1984).

Defendants argue that the SAC does not allege substantial similarity because "[d]etermining whether the works are substantially similar requires a comparison of the copyrighted work with the alleged infringing work," which is impossible because "the copyrighted work is not attached to the complaint." ECF No. 54 at 5. For the reasons discussed above, the Court rejects defendants' contentions that they have not been put on sufficient notice of the material they are alleged to have copied, and denies the motion to dismiss the claim for copyright infringement. Having received the certificate of deposit referenced in the SAC, the Court takes judicial notice of it and deems that document to be the copyrighted material underlying the claims in the SAC. The Court hereby directs that the certificate of deposit be considered Exhibit D to the SAC.

2.     Defendants' Argument that the State Law Causes of Action are Time-Barred

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations," but "only when 'the running of the statute is apparent on the face of the complaint.' " Von Saher v. Norton Simon Museum of Art, 592 F.3d 954, 969 (9th Cir. 2009) (quoting Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006)). That is, "a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995). Defendants argue that Wolf's state law claims for unfair competition, interference with economic relationship, breach of fiduciary duty, misappropriation of trade secrets, and conversion are time-barred. Wolf raised these claims for relief for the first time with the filing of the SAC on September 29, 2014. Wolf argues that, to the extent her claims might otherwise appear time-barred, the Court should deny the motion to dismiss for several reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

            a.      Wolf's Statute of Limitations Arguments

        "Generally speaking, a cause of action accrues at 'the time when the cause of
action is complete with all of its elements.' "  <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal.
4th 797, 806 (quoting <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 397 (1999)).
Nevertheless, as the Supreme Court of California has recently summarized:

> To align the actual application of the limitations defense more closely
> with the policy goals animating it, the courts and the Legislature have
> over time developed a handful of equitable exceptions to and
> modifications of the usual rules governing limitations periods.  These
> doctrines may alter the rules governing either the initial accrual of a
> claim, the subsequent running of the limitations period, or both. The
> " 'most important' " of these doctrines, the discovery rule, where
> applicable, "postpones accrual of a cause of action until the plaintiff
> discovers, or has reason to discover, the cause of action."  Equitable
> tolling, in turn, may suspend or extend the statute of limitations when
> a plaintiff has reasonably and in good faith chosen to pursue one
> among several remedies and the statute of limitations' notice function
> has been served.  The doctrine of fraudulent concealment tolls the
> statute of limitations where a defendant, through deceptive conduct,
> has caused a claim to grow stale.  The continuing violation doctrine
> aggregates a series of wrongs or injuries for purposes of the statute of
> limitations, treating the limitations period as accruing for all of them
> upon commission or sufferance of the last of them.  Finally, under the
> theory of continuous accrual, a series of wrongs or injuries may be
> viewed as each triggering its own limitations period, such that a suit
> for relief may be partially time-barred as to older events but timely as
> to those within the applicable limitations period.

<u>Aryeh v. Canon Bus. Solutions, Inc.</u>, 55 Cal. 4th 1185, 1191–92 (2013) (internal citations
omitted).

        Wolf first argues that her claims are timely under the discovery rule, arguing that
factual disputes exist with regard to the period of time over which the alleged acts
occurred and the time at which Wolf received notice of the alleged misconduct.  <u>See</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

Broberg v. Guardian Life Ins. Co. Of Am., 171 Cal. App. 4th 912, 921 (2009) ("When a plaintiff reasonably should have discovered facts for purposes of . . . application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the . . . allegations . . . can support only one reasonable conclusion."). Wolf asserts that even though Wolf "suspected . . . Travolta was deceitfully replacing the cover sheet on her program [in 2006] . . . she never knew with an absolute certainty" until 2012. ECF No. 63 at 11. Wolf argues that she did not have "evidence that . . . Travolta was using her program," and that the attorney she consulted "informed her that she would need evidence to support her suspicions in order to bring a lawsuit," which she could not discover because Travolta "deceitfully concealed his conduct." Id.

As an initial matter, the discovery rule does not require "absolute certainty" for a cause of action to accrue. See Fox, 35 Cal. 4th at 807. Rather, "suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Id. In this context, "elements" refers not to the specific legal elements of the particular cause of action at bar, but rather to the " 'generic' elements of wrongdoing, causation, and harm." Id. (citation omitted). Moreover, although Wolf makes discovery rule arguments in her opposition brief, and supports them with an attached declaration, she did not plead supporting facts in the SAC. "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." Fox, 25 Cal. 4th at 808 (alteration and emphasis in original) (quoting McKelvey v. Boeing N. Am., Inc., 74 Cal. App. 4th 151, 160 (1999)). This pleading requirement applies in federal court when a plaintiff seeks to avail herself of the discovery rule. See Fodor v. AOL Time Warner, Inc., 217 Fed. App'x 622, 623 (9th Cir. 2007) (citing Fox and applying this rule); Cal. Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1407 (9th Cir. 1995) ("California law makes clear that a plaintiff must allege specific facts establishing the applicability of the discovery-rule exception."); Gallardo v. DiCarlo, 203 F. Supp. 2d 1160, 1169 n.13 (C.D. Cal. 2002) (noting that the discovery rule did not apply because the complaint did "not specifically plead any facts addressing" the rule). Because Wolf did not "plead facts to show . . . her inability to have discovered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                   **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

the necessary information earlier despite reasonable diligence," she cannot "utilize the discovery rule" to save any claims that are time-barred as pled. <u>Fox</u>, 35 Cal. 4th at 815.[2]

A similar deficiency in pleading forecloses Wolf's additional argument that equitable tolling should be applied based on defendants' concealment of wrongdoing. "Equitable tolling is a judge-made doctrine which operates . . . to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." <u>Lantzy v. Centex Homes</u>, 31 Cal. 4th 363, 370 (2003). "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." <u>Stoll v. Runyon</u>, 165 F.3d 1238, 1242 (9th Cir. 1999). Although the two theories are sometimes conflated, the "distinct doctrine" of equitable *estoppel* "comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." <u>Lantzy v. Centex Homes</u>, 31 Cal. 4th 363, 383 (2003); <u>see also</u> <u>Naton v. Bank of Cal.</u>, 649 F.2d 691, 696 (9th Cir. 1981) (distinguishing "equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and lack of prejudice to the defendant," from "equitable estoppel, which usually focuses on the actions of the defendant").

The Ninth Circuit has explained that "because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.' " <u>Supermail Cargo</u>, 68 F.3d at 1206 (quoting <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1276 (9th Cir. 1993)). Still, the

---

[2]Wolf argues that the "question of when a cause of action was or should have been discovered by a plaintiff is a question of fact that is not properly determined at this motion for dismissal stage of proceedings." ECF No. 63 at 11. But as discussed above, although a court may not resolve at the motion to dismiss phase factual disputes over the complaint's allegations, a plaintiff must allege facts supporting the applicability of the discovery rule. Accordingly, "[a]rguments that discovery-rule issues are necessarily factual and cannot be resolved on a demurrer have been rejected" by California courts <u>Camsi IV v. Hunter Tech. Corp.</u>, 230 Cal. App. 3d 1525, 1537 (1991).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

Ninth Circuit has also recognized that "federal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings." Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 991 (9th Cir. 2006); cf. Grimmet v. Brown, 75 F.3d 506, 514 (9th Cir. 1996) ("[Claimant] never pled the allegedly concealed facts in her complaint.  Failure to plead these facts waives this tolling defense."); Bull, S.A. v. Comer, 55 F.3d 678, 681 (D.C. Cir. 1995) (explaining that the plaintiff has the burden of "pleading and providing . . . 'equitable reasons for noncompliance' with the statutory deadline" (quotation marks omitted)), cited in Wasco, 435 F.3d at 991.

Accordingly, courts within the Ninth Circuit have granted motions to dismiss where the running of the statute of limitations is apparent on the face of complaint and the plaintiff has failed to allege facts supporting equitable tolling or estoppel. For example, in Session v. PLM Lender Services, Inc., the plaintiff filed her claims more than four years after the alleged misconduct, and the longest statute of limitations applying to her claims was four years.  No. C 10–04942 WHA, 2011 WL 6748510, at *4 (N.D. Cal. Dec. 22, 2011).  She nevertheless argued that her injuries and hospitalization "equitably tolled the relevant limitations periods pending her reasonable discovery" of defendants' acts. Id.  The court disagreed, explaining that the plaintiff's "failure to plead such facts regarding the tolling of the statutes in her complaint . . . is fatal to her argument." Id. The plaintiff did allege with regard to one claim that "[a]ny and all statute(s) of limitations . . . were tolled due to Defendants' failure to effectively provide the required disclosures and notices," but the court found "this conclusory statement along with the fact of plaintiff's injury . . . not enough to satisfy the equitable tolling of all statutes of limitation." Id; see also POGA MGMT PTNRS LLC v. Medfiler LLC, No. C 12–06087 SBA, 2014 WL 3963854, at *9 (N.D. Cal. Aug. 12, 2014) (finding that the plaintiff had "failed to allege sufficient facts to invoke the doctrine of equitable estoppel); Shapiro v. Bank of Am., N.A., No. 2:11-CV-00576-JAM-CMK, 2011 WL 4851145, at *5 (E.D. Cal. Oct. 12, 2011) (rejecting an argument for equitable tolling raised in an opposition to a motion to dismiss but not supported by allegations in the operative complaint); Ultreras v. Recon Trust Co., No. CV-09-08810 DDP (CTx), 2010 WL 2305857, at *3 (C.D. Cal. June 7, 2010) (finding that the statute of limitations had run and granting a motion to dismiss because a plaintiff "pleaded no basis for equitable tolling or equitable estoppel that would justify suspending the limitations period").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                  **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|----------------------------|------|-------------------|
| Title    | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

Here, the SAC does not even mention equitable tolling or any facts that might support it.  See generally SAC.  Moreover, as the Session court explained, Wolf's "attempt to supplement the facts alleged in her complaint with her opposition brief is not allowed.  A plaintiff cannot avoid dismissal of her complaint by alleging new facts in opposition to a motion to dismiss."  2011 WL 6748510, at *5 (citing Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).  Accordingly, Wolf's statements in her opposition and accompanying declaration "cannot be considered" in assessing the sufficiency of her complaint.  Id.  Because the SAC alleges no facts that would support equitable tolling, that doctrine cannot save the complaint from being time-barred.

Finally, Wolf argues that her claims are timely under the "continuing violation" doctrine.  This doctrine "developed in employment cases dealing with matters such as hostile work environments, where the claims by '[t]heir very nature involve[] repeated conduct,' rather than 'discrete acts.' "  Komarova v. Nat'l Credit Acceptance, Inc., 175 Cal. App. 4th 324, 344 (2009) (quoting Joseph v. J.J. Mac Intyre Cos., L.L.C., 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003)).  The doctrine holds that a claim is not time-barred "if the alleged wrongs are 'multiple, continuous acts,' some of which occurred within the limitations period."  Betz v. Trainer Wortham & Co., Inc., 236 Fed. App'x 253, 256 (9th Cir. 2007).  "The key to the continuing violations doctrine 'is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts.' "  East West Stone, LLC v. Wei Shao, No. 11-cv-1652 DMS (WVG), 2011 WL 4914282, at *4 (S.D. Cal. Nov. 28, 2011) (quoting Joseph, 281 F. Supp. 2d at 1161)).  As the Supreme Court of California has recently explained:

> The continuing violation doctrine serves a number of equitable purposes.  Some injuries are the product of a series of small harms, any one of which may not be actionable on its own.  Those injured in such a fashion should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to warrant action.  Moreover, from a court-efficiency perspective, it is unwise to impose a limitations regime that would require parties to run to court in response to every slight, without first attempting to resolve matters through extrajudicial means, out of fear that delay would result in a time-barred action.  Allegations of a pattern of reasonably frequent and similar acts may, in a given case,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

> justify treating the acts as an indivisible course of conduct actionable
> in its entirety, notwithstanding that the conduct occurred partially
> outside and partially inside the limitations period.

Aryeh, 55 Cal. 4th at 1197-98 (citations omitted).  The doctrine is not, however, properly applied where a complaint alleges "a series of discrete, independently actionable wrongs."  Id. at 1198.

Under the related but distinct "continuous accrual" doctrine, "separate recurring invasions of the same right can each trigger their own statute of limitations."  Id.  This theory "is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing malfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance."  Id.  Under this rule, " 'a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.'  Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation—each may be treated as an independently actionable wrong with its own time limit for recovery."  Id. at 1199 (citations omitted).  "Where continuous accrual applies, however, the plaintiff may only recover 'damages arising from those breaches falling within the limitations period.' "  Medfiler LLC, 2014 WL 3963854, at *10 (quoting Aryeh, 55 Cal. 4th at 1199).

The SAC alleges that defendants "continue to use an infringing curriculum which is substantially similar to Dr. Wolf's curriculum, to promote and secure vendorization agreements and contracts which would otherwise be negotiated with AFA and Dr. Wolf."  SAC ¶ 22.  The SAC also contends that defendants "remain in possession of Dr. Wolf's intellectual property and AFA equipment."  Id. ¶ 23.  Further, the SAC alleges that defendants "continue to intentionally lead the public to believe that Dr. Wolf and AFA supports, associates, and/or promotes [sic] them by and through the use of the subject copyrighted curriculum and make misrepresentations in accordance therewith."  Id. ¶ 25.  Wolf argues that the SAC therefore "alleges a continuous course of conduct, from 2006 to the present, in which [d]efendants are engaged in a pattern of marketing Dr. Wolf's curriculum as a product that they own, using Dr. Wolf's work to secure contracts and vendorization agreements, and then implementing it without her permission."  ECF No. 63 at 12–13.  See Suh v. Yang, 987 F. Supp. 783, 795–96 (N.D. Cal. 1997) (denying

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                 'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
| --- | --- | --- | --- |
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

summary judgment because alleged use of plaintiff's trademarks constituted "multiple, continuous acts . . . some [of which] occurred within the limitations period"). The Court finds that, unlike Wolf's other theories, the potential application of the continuing violation or continuous acts doctrines are supported by some allegations in the SAC. With the potential applicability of these theories in mind, the Court turns to the timeliness of each of Wolf's state law claims for relief.

       b.     The Timeliness of Wolf's State Law Claims for Relief

             i.     Unfair Competition and Interference with Economic Relationship Claims

      Wolf's claims for unfair competition and interference with economic relationship arise under California Business & Professions Code §17200 *et seq.*, and are therefore governed by the four-year statute of limitations set forth in section 17208. Accordingly, the claims must have accrued on September 29, 2010 or later to be timely. Defendants argue that all alleged acts of unfair competition and interference with economic relationship occurred prior to September 2010. They point out that Travolta is alleged to have persuaded entities to alter contracts to pay Travolta instead of AFA while serving as an AFA board member, and that Travolta resigned from AFA in 2006. Wolf responds that the "material belonging to Dr. Wolf that was posted on Defendant Travolta's website is a continuous act of unfairly competing against Dr. Wolf, in that Defendant Travolta was marketing Dr. Wolf's work as his own," ECF No. 63 at 13, and that in general, defendants' use of Wolf's copyrighted materials to gain and keep business that might otherwise have gone to Wolf and AFA has formed a continuous course of conduct.

      As indicated above, the continuing violation doctrine has been applied to UCL claims, see Betz, 236 Fed. App'x at 256, and the Court finds that the question of whether that doctrine could apply to toll the statute of limitations on these claims would be better decided on a more complete record. Moreover, the Supreme Court of California has made clear that under the continuous accrual theory, "separate, recurring invasions of the same right can each trigger their own statute of limitations." Aryeh, 55 Cal. 4th at 1198 (applying the doctrine to UCL claims). Accordingly, it is possible—even if the facts do not support a continuing violation theory that would allow Wolf to recover for all of defendants' alleged unfair competition as a continuous course of conduct—that at least some of Wolf's allegations supporting her claims for unfair competition and interference

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

with economic relations are not time-barred.  It would therefore be inappropriate to dismiss these claims at this stage.

ii.       Breach of Fiduciary Duty Claim

"The statute of limitations for breach of fiduciary duty is three years or four years, depending on whether the breach is fraudulent or non-fraudulent."  American Master Lease LLC v. Idanta Partners, Ltd., 225 Cal. App. 4th 1451, 1479 (2014).  Defendants argue that any fiduciary duties Travolta owed ended upon his resignation from AFA in September 2006, and that the claim for breaches thereof is untimely by several years.  Wolf responds that "Travolta's duties owed to Dr. Wolf continue with regards to the information he held in confidence."  ECF No. 63 at 13.

Courts have applied California's continuing violation and continuous accrual theories to breach of fiduciary duty claims.  See Medfiler LLC, 2014 WL 3963854, at *10–11 (denying a motion to dismiss because of the continuous accrual doctrine and suggesting that the continuing violation doctrine would apply on sufficient allegations); East West Stone, 2011 WL 4914282, at *4 (denying a motion to dismiss a fiduciary duty claim where the plaintiff had alleged a continuing pattern and course of conduct).  In one of these cases, a district court denied a motion to dismiss where, as here, the alleged continuing violations took place after the defendant's attorney-client and officer-director relationships with the plaintiff had ended .  See Aoki v. Gilbert, No. 2:11-cv-02797-TLN-CK, 2014 WL 3689345, at *2, *9–10 (E.D. Cal. July 23, 2014).  Therefore, it is possible that Wolf can prove that at least some of Travolta's alleged breaches of fiduciary duty are not time-barred, and dismissal of this claim is unjustified.

iii.      Misappropriation of Trade Secrets Claim

"An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. . . . [A] continuing misappropriation constitutes a single claim."  Cal. Civ. Code § 3426.6.  Defendants argue that Wolf had notice of the alleged taking of her curriculum in 2006, when Travolta resigned and when AFA board meeting minutes previously submitted in this litigation show that Wolf contacted an attorney, who told her that Travolta "could be sued for taking the program."  Therefore, defendants contend, the statute of limitations ran in 2009.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|----------------------------|------|-------------------|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

As discussed above, Wolf has not pled facts to support tolling on discovery rule or equitable grounds. To the extent that Wolf relies on the continuing violation or accrual doctrines to save her claim for misappropriation of trade secrets, that reliance is misplaced. Section 3426.6 explicitly states that "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ. Code § 3426.6. Interpreting this provision, the Supreme Court of California has held that "the continued improper use or disclosure of a trade secret after defendant's initial misappropriation is viewed . . . as part of a single claim of 'continuing misappropriation' *accruing at the time of the initial misappropriation*." Cadence Design Sys., Inc. v. AvantA Corp., 29 Cal. 4th 215, 218 (2002) (emphasis added). The SAC alleges that Travolta "misappropriated Dr. Wolf's copyrighted curriculum and the identities of customers," starting "[f]rom the time of his resignation from AFA and continuing to the present." SAC ¶ 70. Therefore, it is clear from the face of the complaint that Wolf's claim for misappropriation of trade secrets accrued in 2006, and that the claim is therefore time-barred as pled.

iv.    Conversion Claim

Under California Code of Civil procedure 338(c), "which applies to the conversion of personal property, there is a three-year limitations period for 'action[s] for taking, detaining, or injuring any goods or chattels.' " AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006). The " 'statute of limitations for conversion is triggered by the act of wrongfully taking property.' " Id. (quoting Bono v. Clark, 103 Cal. App. 4th 1409, 1433 (2002)). The SAC alleges that Travolta took AFA property with him "upon his resignation from AFA" in 2006. SAC ¶ 77. As discussed above, the SAC does not plead facts supporting tolling on discovery rule or equitable grounds, and the rationale of the continuing violation doctrine is inapplicable to a claim that is "triggered by the act of wrongfully taking property." Therefore, this claim is time-barred as pled.

**C.    Summary**

The motion to dismiss the SAC's copyright infringement claim is denied. The motion to dismiss is granted only insofar as the misappropriation and conversion claims, which are time-barred as pled. Because the state-law claims being dismissed are new to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                   **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|----------------------------|------|-------------------|
| Title    | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

the SAC, and because amendment would not clearly be futile, Wolf shall have leave to amend.

## IV.   WOLF'S MOTION TO DISMISS THE COUNTERCLAIMS

### A.   Allegations of the Counterclaims

Defendant's CC alleges the following facts, the truth of which the Court assumes for purposes of the motion to dismiss the counterclaims only.  In or around 2003, Travolta became involved with The Entertainment Experience ("TEE"), a filmmaking school in Manhattan Beach, California.  CC ¶ 19.  In 2003, Travolta founded the San Fernando Valley location of TEE.  Id.  In or around 2004, Wolf approached Travolta to inquire about having students with autism participate in acting courses taught by Travolta, and Travolta agreed to tailor his classes for such students.  Id.  ¶ 20.  Soon after, Travolta and Wolf formed AFA.  Id.  AFA offered autistic students the chance to take filmmaking classes through Travolta's courses at TEE.  Id.  ¶ 21.

In or around 2004, Travolta hired Wolf to perform administrative tasks for TEE. Id. ¶ 22.  Prior to Wolf's employment, and even prior to meeting Wolf, Travolta had begun formulating his ideas for a practical filmmaking course, and began drafting a Practical Film Vocational Program ("PFVP").  Id.  Using his degree in special education and expanding upon his earlier drafts, Travolta developed the Inclusion Films Practical Film Workshop Program Service Guide ("Inclusion Films Program") to provide students with disabilities the opportunity to learn filmmaking.  Id.  ¶ 24.  Wolf, as a paid employee of TEE, assisted with preparation of the Inclusion Films Program, and prepared a typed draft "[u]nder the direction and at the instruction of Travolta."  Id. ¶ 25.

On August 14, 2014, Wolf, through her attorney, sent a cease and desist letter to counterclaimants' clients, requesting that they immediately cease and desist from use or implementation of Travolta's curriculum.  Id. ¶ 29; see CC Ex. 3.  According to defendants, this letter was intended to interfere with their business relations.  CC ¶ 29. Counterclaimants have business relationships with Oakland University and Futures Explored, Inc. ("Futures Explored"), through which counterclaimants provide filmmaking classes and camps to students.  Id. ¶ 31.  Counterclaimants have worked with Oakland University since 2006 to provide an annual summer camp for autistic children. Id. ¶ 32.  Counterclaimants expect continued and future business from Oakland

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|----------------------------|------|-------------------|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

University and Futures Explored, and believe that Wolf knew of these ongoing business relationships.  Id.  ¶¶ 33, 34.

Counterclaimants allege that Wolf interfered with their economic relationships by initiating a copyright infringement action and sending cease and desist letters to counterclaimants' clients.  Id. ¶ 35, 36.  The cease-and-desist notice, attached to the Amended Answer and Counterclaims as Exhibit 3, notifies recipients of this lawsuit and states that Wolf "is the owner of all rights in the copyrighted curriculum entitled the Practical Film Vocational Program . . . which is offered by and through [AFA], and which is the subject of Copyright Registration No. TX 6-421-919.  Id. Ex. 3 at 1.  The notice warns recipients that "based on information and belief you are implementing an infringing curriculum."  Id. Ex. 3 at 2.  The notice disclaims that it "is not intended nor should it be interpreted to interfere with any existing or prospective business relations," but warns, "if the Court determines . . . that the Defendants' curriculum is in fact infringing . . . the further implementation by you of the infringing curriculum may result in liability."  Id.  The notice concludes by requesting that recipients "immediately cease and desist from the ongoing use and implementation of the infringing curriculum" and make "an accounting of all revenue made to date from the infringing curriculum."  Id.  Counterclaimants allege that, as a result of this aforementioned wrongful conduct, they have "suffered damages in excess of the jurisdictional limits of this court, in a sum to be shown at time of trial."  CC  ¶ 40.

**B.     Analysis**

1.     The Court May Not Resolve Factual Disputes on a Rule 12(b)(6) Motion

Wolf argues that counterclaimants "have no evidence of any legal, valid business expectancy as required to support their claims for interference with prospective economic interference," and that both counterclaims must accordingly be dismissed.  ECF No. 48 at 10.  Wolf contends that there is no valid "economic relationship" for her to interfere with, because counterclaimants have no valid ownership rights in the curriculum they are using.  Wolf also argues that counterclaimants' assertions of ownership rights are "unreliable," that Wolf was "not an employee of [TEE] or any of the named defendants, and that the curriculum "was never [counterclaimant's] to profit from."  Id. at 12–13.  But these are factual arguments inappropriate for a Rule 12(b)(6) motion.  Taking defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

allegations as true, as the Court must for purposes of this motion, defendants are the rightful owners of their curriculum, their relationships with Oakland University and others are presumably valid, and Wolf's arguments to the contrary fail.

2.      The Counterclaims Are Barred by California's Litigation Privilege

Wolf asserts that both counterclaims must be dismissed because the alleged conduct is covered by the litigation privilege set forth in California Civil Code section 47(b)(2). "Section 47(b) protects participants in judicial proceedings from derivative tort actions based on communications in or regarding the judicial proceeding." eCash Techs., Inc. v. Guagliardo, 127 F. Supp. 2d 1069, 1082 (C.D. Cal. 2000). This privilege "'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' " Olszewski v. Scripps Health, 30 Cal. 4th 798, 830 (2003) (quoting Silberg v. Anderson, 50 Cal. 3d 205, 212 (1990)). The privilege is "absolute in nature." Silberg, 50 Cal. 3d at 215. "Although originally enacted with reference to defamation . . . the privilege is now held applicable to . . . all torts except malicious prosecution." Id. at 212; cf. Brody v. Montalbano, 87 Cal. App. 3d 725, 738 (1978) (holding that litigation privileged conduct may not form the basis of a claim for interference with prospective advantage). The privilege applies to an otherwise qualifying communication even if it is "made outside the courtroom and no function of the court or its officers is involved." Silberg, 50 Cal. 3d at 212. The question of the litigation privilege is "a matter of law" where the circumstances under which the communication was made are not in dispute. Costa v. Super. Court, 157 Cal. App. 3d 673, 678 (1984). "Any doubt about whether the privilege applies is resolved in favor of applying it." Kashian v. Harriman, 98 Cal. App. 4th 892, 913 (2002).

Counterclaimants respond that the litigation privilege does not apply to the cease and desist notices because the privilege does not extend to statements made to nonparties.[3] See Rothman v. Jackson, 49 Cal. App. 4th 1134, 1141 (1996) ("Statements

---

[3]To the extent that counterclaimants attempt to premise their counterclaims on the filing of the lawsuit itself, "[p]leadings and process in a case are generally viewed as privileged communications." Navellier v. Sietten, 106 Cal. App. 4th 763, 770 (2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|---|---|---|---|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

to nonparticipants in the action are generally not privileged."). Although nonapplicability to third parties is indeed the general rule, courts have expanded the privilege "to include publication to nonparties with a substantial interest in the proceeding." Susan A. v. County of Sonoma, 2 Cal. App. 4th 88, 94 (1991) (citing Costa, 2 Cal. App. 4th at 678); see also GetFugu, Inc. v. Patton Boggs LLP, 220 Cal. App. 4th 141, 152 (2013) (citing Costa for the same proposition). A court in this judicial district has previously explained that a "communication merely informing a third party of the pendency of [a] litigation must clearly fall within the privilege." Guagliardo, 127 F. Supp. 2d at 1082 (emphasis omitted).

The Court finds persuasive cases applying the privilege to bar claims under similar circumstances. For example, in Sliding Door Co. v. KLS Doors, LLC, the sales manager of a patent infringement plaintiff sent a communication to a customer of the defendants stating that the defendants were infringing on the plaintiff's patent, and warning the recipient that the plaintiff would "hold those who purchase any infringing product accountable." No. EDCV 13–00196 JGB (DTBx), 2013 WL 2090298, at *2, *5 (C.D. Cal. May 1, 2013). The court determined that:

> the communication falls under California's litigation privilege since it has a logical relation to the action before the Court in that it advances the litigant's case by ensuring that customers are aware of the litigation and informing them of their potential liability. Therefore, the recipient of the email "had a substantial interest in Plaintiff's lawsuit against Defendants."

Id. at *8 (quoting Sharper Image Corp. v. Target Corp., 425 F. Supp. 2d 1056, 1079 (N.D. Cal. 2006)). The Court granted without leave to amend a motion to dismiss a UCL claim premised on the communication warning of the lawsuit and potential liability for the customer, even though it also included a hyperlink to the plaintiff's catalogue and other indicia of commercial advertising. Id. Here, where the cease-and-desist notice included the caption of this lawsuit, did not contain any overt advertising, and warned that the recipients' "further implementation . . . of the infringing curriculum may result in liability," the recipients' "substantial interest" in the lawsuit seems even more clear. See also Sharper Image, 425 F. Supp. 2d at 1079 (finding that the litigation privilege barred counterclaims premised on emails to retailers advising them of a patent infringement lawsuit and asking them not to carry the allegedly infringing products); Guagliardo, 127

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|---------------------------|------|-------------------|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

F. Supp. 2d. at 1082 (explaining that an intellectual property rights owner's entitlement to advise others of his intent to enforce those rights through legal proceedings "is obvious under both federal and state law").

Counterclaimants also argue that "conduct which is independently wrongful is not privileged."  ECF No. 64 at 8.  But the authority they cite in support of this argument is irrelevant to the litigation privilege.  In Hsu v. OZ Optics Ltd., the court explained that it is "the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful and, therefore, was not privileged rather than the defendant's burden to prove, as an affirmative defense, that its conduct was not independently wrongful and therefore was privileged."  211 F.R.D. 615, 620 (2002) (quoting Bed Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture, 52 Cal. App. 4th 867, 881 (1997)); see ECF No. 64 at 8–9 (quoting the aforementioned language from Hsu).  This language concerns the substantive element of independently wrongful conduct that a claimant must plead as part of an economic interference claim.[4]  It has nothing to do with the statutory litigation privilege, which is "absolute and [] unaffected by the existence of malice."  Royer v. Steinberg, 90 Cal. App. 3d 490, 504 (1979).  Therefore, the Court concludes that the allegations of the counterclaims fall under the litigation privilege and cannot support a claim for intentional or negligent interference with prospective economic relations.[5]

---

[4]To plead either an intentional or negligent interference with prospective economic relations claim, the alleged conduct must be "independently wrongful" by "some measure beyond the fact of the interference itself."  Nat'l Med. Transp. Network v. Deloitte & Touche, 62 Cal. App. 4th 412, 439 (1998) (quoting Della Penna, 11 Cal. 4th at 392–93).  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional statutory, regulatory, common law, or other determinable legal standard."  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1159 (2003).

[5]The Court's tentative ruling was to dismiss these counterclaims with prejudice because the counterclaims appear to be based on a document already attached to the counterclaims.  At oral argument, defendants' counsel asserted that he could amend the pleading so as to include additional allegations that would not be covered by the litigation privilege.  The Court agreed to grant defendants leave to amend, with the admonition that defendants should file an amended pleading only if they can assert a basis for liability not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | No. 2:14-CV-938-CAS (VBKx) | Date | November 24, 2014 |
|----------|----------------------------|------|-------------------|
| Title | ALISA WOLF v. JOSEPH "JOEY" TRAVOLTA, ET AL. | | |

## V.    CONCLUSION

In accordance with the foregoing, defendants' motion to dismiss the SAC is GRANTED IN PART and DENIED IN PART.  Specifically, the motion is GRANTED without prejudice insofar as it seeks to dismiss Wolf's claims for misappropriation and conversion, and is otherwise DENIED.  Wolf's motion to dismiss the counterclaims is GRANTED without prejudice.  The parties shall have until **<u>December 22, 2014</u>** to amend their pleadings to correct the deficiencies identified herein, but shall not add any claims for relief not already asserted.

IT IS SO ORDERED.

|  |  | 00 | : | 25 |
|--|--|----|---|----|
| | Initials of Preparer | | CMJ | |

covered by the litigation privilege as interpreted in this order.