**JOHN S. CHA, ESQ. (SBN 129115)**
jcha@raineslaw.com
**STEVEN T. GEBELIN (SBN 261507)**
sgebelin@raineslaw.com
**RAINES FELDMAN** LLP
9720 Wilshire Boulevard, 5th Floor
Beverly Hills, California 90212
Telephone:  (310) 440-4100
Facsimile:    (424) 239-1613

Attorneys for Defendants JOSEPH "JOEY"
TRAVOLTA, d/b/a INCLUSION FILMS,
INCLUSION WEAR, LLC, and LITTLE
DOCUMENTARY FILMS, LLC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA WOLF, *et al.*<br><br>                    Plaintiffs,<br><br>         v.<br><br>JOSEPH "JOEY" TRAVOLTA, *et al.*<br><br>                    Defendants. | **CASE NO. 14-CV-00938-CAS (PJWx)**<br>[Hon. Christina A. Snyder]<br>[Courtroom 5-2nd Floor]<br><br>Action Filed:    February 6, 2014<br>4AC Filed:        August 5, 2015<br>Trial Date:        February 9, 2016<br><br>**DEFENDANTS' NOTICE OF**<br>**MOTION AND MOTION FOR**<br>**SUMMARY JUDGMENT**<br><br> **DATE: January 11, 2016**<br> **TIME: 10:00 A.M.**<br> **DEPT.: Court Room 5** |

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on January 11, 2016, at 10:00 a.m., or as soon thereafter as this matter may be heard in the Courtroom of the Honorable Christina A. Snyder, Courtroom Number 5, United States District Court for the Central District of California, Western Division, Spring Street Federal Courthouse, 312 North Spring Street, Los Angeles, CA 90012, Defendants JOSEPH "JOEY" TRAVOLTA, d/b/a INCLUSION FILMS, INCLUSION WEAR, LLC, and LITTLE DOCUMENTARY FILMS, LLC (collectively "Defendants"), will and hereby do move this Court for an order granting summary judgment in favor of Defendants and against Plaintiffs ALISA WOLF and ACTORS FOR AUTISM ("Plaintiffs") pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56-1.

Defendants bring this motion on the grounds that they are entitled to complete summary judgment on all state law claims brought by Plaintiffs and partial summary judgment on Plaintiff Wolf's copyright claims in this action because the statute of limitation for all such claims have run.  Plaintiffs were made aware of their claims and had reasonable suspicion to believe they had been allegedly harmed by Defendants in 2006 and 2007 in connection with the taking of program design materials and/or related business opportunities, such that any claims arising out of the alleged copying of Plaintiff's registered work pre-dating the limitations period are barred.

Defendants also bring this motion on the grounds that Plaintiff's registered works lack originality.  Plaintiff has copied (plagiarized) significant portions of the works registered with the Copyright Office from third parties such that she cannot assert claims of infringement based on any alleged copying of those works.

Defendants' motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Defendants' Local Rule 56-1 Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), the Declarations of Steven T. Gebelin, Joey Travolta, and Kelly Palmer, all exhibits attached thereto, the

1  pleadings and orders on file in this action, and such further facts and argument as

2  may be presented prior to or at the hearing.

3      Pursuant to Local Civil Rule 7-3, this motion is made following the

4  conference of counsel on July 23, 2015, regarding the statute of limitations and the

5  parties' meet and confer correspondence regarding originality on or about

6  September 10 and 16, 2015.

7

8  Dated:  December 11, 2015          Respectfully submitted,

9                                    **RAINES FELDMAN** LLP

10

11                                   By:_____

12                                   JOHN S. CHA
                                     STEVEN T. GEBELIN
13                                   Attorneys for Defendants
                                     JOSEPH "JOEY" TRAVOLTA, d/b/a
14                                   INCLUSION FILMS, INCLUSION WEAR,
                                     LLC, and LITTLE DOCUMENTARY
15                                   FILMS, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

3   I.      Introduction. ...................................................................................1

4   II.     Factual Background..........................................................................2

5           A. Plaintiffs' Knowledge of "Wrongdoing" By Travolta in 2006
            and 2007. .......................................................................................2

6
            B.  Wolf's Copying of Third Party Material into the Works. ........................5

7
                1. The Work Registered in 2006. ......................................................5

8
                2. The Work Registered in 2015. ......................................................6

9
    III.    Legal Standard..................................................................................7

10
    IV.     Argument. ........................................................................................8

11
            A. Statutes of Limitations....................................................................8

12
                1. Any Damages Under Wolf's Copyright Claim are
13              Limited to the 3 Years Prior to Filing. ........................................11

14                2. Plaintiffs' State Law Claims are all in Violation of the
            Applicable Statutes of Limitation. ..............................................12

15
            B.  Lack of Originality....................................................................14

16
    V.      Conclusion.....................................................................................16

17

18

19

20

21

22

23

24

25

26

27

28

*Wolf v. Travolta, et al.*                                    i                    **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                                **SUMMARY JUDGMENT**

91,577v1

# TABLE OF AUTHORITIES

**Cases**

*Alfred Bell & Co. v. Catalda Fine Arts,*

    191 F.2d 99, 102–03 (2d Cir.1951) ................................................................. 14

*AmerUS Life Ins. Co. v. Bank of America, N.A.,*

    143 Cal. App. 4th 631, 639 (2006) ................................................................. 11

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ..................... 7, 8, 10

*Bono v. Clark,*

    103 Cal. App. 4th 1409, 1433 (2002) ............................................................. 11

*Cadence Design Systems, Inc. v. Avanti Corp.,*

    29 Cal. 4th 215, 227 (2002) ........................................................................... 10

*Celotex Corp. v. Catrett,*

    477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........................... 7, 8

*Coy v. County of Los Angeles,*

    235 CA3d 1077, 1087 (1991) .......................................................................... 11

*David Welch Co. v. Erskine & Tulley,*

    203 Cal. App. 3d 884, 893 (1988) .................................................................. 10

*Eden Toys, Inc. v. Florelee Undergarment Co.,*

    697 F.2d 27, 34 n. 6 (2d Cir.1982) ................................................................. 15

*Edwards v. Fresno Comm. Hosp.*

    38 CA3d 702, 706, 113 CR 579, 581-582 (1974) ............................................. 9

*Entm't Research Group, Inc. v. Genesis Creative Group, Inc.,*

    122 F.3d 1211, 1217 (9th Cir.1997) ........................................................... 14, 15

*Fox v. Ethicon Endo-Surgery, Inc.,*

    35 Cal. 4th 797, 806 (2005) ........................................................................... 8, 9

*Glue-Fold, Inc. v. Slautterback Corp.,*

    82 Cal App. 4th 1018, 1024 (2000) ................................................................ 10

*Wolf v. Travolta, et al.*               ii                **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                         **SUMMARY JUDGMENT**

91,577v1

*Gutierrez v. Mofid,*

    39 Cal.3d 892, 897–98, 218 Cal.Rptr. 313, 705 P.2d 886 (1985) ..................................... 11

*Hatch v. Collins,*

    225 Cal. App. 3d 1104, 1111(1990) ................................................................. 10

*Knoell v. Petrovich,*

    76 CA4th 164, 168, 90 CR2d 162, 164 (1999) ................................................... 9

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.,*

    345 F.3d 1140, 1145-46 (9th Cir. 2003) .......................................................... 15

*Makedwde Publ'g Co. v. Johnson,*

    37 F.3d 180, 181 (5th Cir.1994) .................................................................... 11

*McFaddin v. H. S. Crocker Co., Inc.,*

    219 CA2d 585, 591, 33 CR 389, 393 (1963) ..................................................... 9

*N. Coast Indus. v. Jason Maxwell, Inc.,*

    972 F.2d 1031, 1033 (9th Cir.1992) ................................................................ 14

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*

    6 C3d 176, 182, 98 CR 837, 840 (1971) ........................................................... 11

*Newsom v. Countrywide Home Loans, Inc.,*

    714 F.Supp.2d 1000, 1014 (ND Cal. 2010) ...................................................... 9

*Pickett v. Prince,*

    207 F.3d 402 (7th Cir.2000) ......................................................................... 15

*Roley v. New World Pictures, Ltd.,*

    19 F.3d 479, 481 (9th Cir.1994) ............................................................... 11, 12

*Satava v. Lowry,*

    323 F.3d 805, 810 (9th Cir.2003) ................................................................... 14

*Silvas v. E*Trade Mortg. Corp.*

    514 F3d 1001, 1007, fn. 3 (9th Cir. 2008) ........................................................ 9

*Sobhani v. @Radical.Media Inc.,*

    257 F. Supp. 2d 1234, 1239-41 (C.D. Cal. 2003) ............................................... 15

*Wolf v. Travolta, et al.*        iii      **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)      **SUMMARY JUDGMENT**

91,577v1

*Soremekun v. Thrifty Payless, Inc.*,

    509 F.3d 978, 984 (9th Cir.2007) ................................................................ 8

*Stalberg v. Western Title Ins. Co.,*

    230 Cal. App. 3d 1223, 1230 (1991) .......................................................... 10

*Stone v. Williams,*

    970 F.2d 1043, 1049–50 (2d Cir.1992) ...................................................... 12

*Thomson v. Canyon*,

    198 CA4th 594, 606 (2011) ......................................................................... 10

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,*

    692 F.3d 1009, 1016 (9th Cir. 2012) .......................................................... 15

*United States v. Hamilton,*

    583 F.2d 448, 451 (9th Cir.1978) ............................................................... 14

*Wisper Corp. N.V. v. California Commerce Bank*,

    49 CA4th 948, 957 (1996) ........................................................................... 11

**Statutes**

17 U.S.C. § 102 ......................................................................................................... 14

17 U.S.C. § 103(b) ................................................................................................... 15

17 U.S.C. § 507(b) ................................................................................................... 11

Cal. Bus. & Prof. C. § 17208 ................................................................................... 9

Cal. Bus. & Prof. Code § 17200 .............................................................................. 9

Cal. Civil Code § 3426.6 ........................................................................................ 10

Cal. Code Civ. Proc., § 312 ..................................................................................... 8

Cal. Code of Civil Procedure § 338(c) .................................................................. 10

California Code of Civil Procedure section 339 ................................................. 9, 11

California Code of Civil Procedure section 343 .................................................... 10

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................. 7

*Wolf v. Travolta, et al.*             iv              **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)          **SUMMARY JUDGMENT**

91,577v1



**<u>Other Authorities</u>**

1–3 Nimmer on Copyright § 3.06 (2002) ............................................................................ 15

*Wolf v. Travolta, et al.*                                              v          **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                  **SUMMARY JUDGMENT**

91,577v1

# I.    Introduction.

Plaintiffs Alisa Wolf and her organization Actors for Autism allege that Defendants Joseph "Joey" Travolta and his companies, Inclusion Wear LLC and Little Documentary Films, LLC, have infringed her copyrights in two versions of a "program service design" for a vocational practical film school for autistic young adults, based on copying allegedly first occurring in 2006 and 2007.  Based on the alleged infringement, Plaintiffs also allege that Defendants have committed various other state law business torts against Plaintiffs by using the allegedly copied materials and related business opportunities.

However, Plaintiffs were well aware of their claims against Defendants in 2006.  Wolf drafted the documents in collaboration with Travolta, receiving edits and input on how to document his long gestating idea for a practical film school. After Wolf and Travolta stopped working together, Plaintiffs registered one of the works, complained to the regional center that contracted with Travolta rather than Plaintiffs, sought the advice of an attorney, and eventually decided to forgo their claims and pursue other opportunities with the regional center.  Having waited nearly eight years to file claims based on this conduct, Plaintiffs can no longer maintain any claims save for infringement occurring within the three years prior to the filing of the suit.

In addition a time bar against the majority of Plaintiffs' claims, the passage of time eroded some, but not all, of the evidence that the works claimed by Wolf are not original enough to qualify for copyright protection.  Despite adamantly claiming that all of the words in the works were solely her own, Wolf actually "cut and pasted" significant portions of the works from third party documents on the internet, and this unauthorized derivation pervades the work.  As a result, the portion of the copyright claims not barred by the statute of limitation are invalid - Wolf cannot seek to enforce copyright protection of works that she largely did not actually create.

1    Defendants are entitled to summary judgment on all of Plaintiffs' claims.

2    **II.    Factual Background.**

3        A.    *Plaintiffs' Knowledge of "Wrongdoing" By Travolta in 2006 and 2007.*

4        Over a decade ago, Plaintiff Alisa Wolf met Defendant Joseph "Joey"

5    Travolta after she read an August 2003 newspaper article that described Travolta's

6    film classes and his prior work with disabled children.  Statement of Undisputed

7    Facts ("SUF") 1.  At the time, Travolta was running acting classes, filmmaking

8    camps and filmmaking classes at his branch of The Entertainment Experience.

9    After that meeting, Plaintiff and Defendant worked together to incorporate autistic

10   children, like Wolf's son, into Travolta's acting programs.  SUF 2.  In early June

11   2004, Wolf started working for Travolta at the Entertainment Experience in the

12   disabilities division and continued until August 2006.  As this relationship

13   progressed, Travolta aided Wolf in setting up her own charitable organization, co-

14   Plaintiff Actors for Autism in 2005.  SUF 3.  In late 2005, Wolf and Travolta

15   attended a meeting with the Lanterman Regional Center regarding whether the

16   center would authorize payments to ("vendorize") AFA's own acting classes for

17   autistic children.  SUF 4.  During that meeting, the representatives from the center

18   asked for programs directed at teaching vocational skills to adults, and Travolta

19   responded by proposing the use of his long gestating idea for a practical film school

20   for the center's clients.  SUF 5.  In the subsequent months, Travolta instructed Wolf

21   on putting together documentation for his idea to submit to the center, reviewed and

22   edited such documentation that she prepared, obtained a $10,000 per student

23   commitment for the program from the regional center, and made efforts directed at

24   obtaining a slate of films for production that would serve as the backbone for the

25   program.  SUF 6-8.

26       Despite initially working on the program together, Travolta and Wolf ended

27   their professional collaboration in summer of 2006, with Travolta resigning his

28   position with AFA and moving out of the offices and performance space that he had

*Wolf v. Travolta, et al.*                                    2                    **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                          **SUMMARY JUDGMENT**

91,577v1

let AFA use for free.  SUF 9.  Wolf typed Travolta's resignation letter to AFA, and registered one of the two works at issue in this case with the U.S. Copyright office shortly thereafter.  SUF 10-11.  In the meantime, Travolta continued to work with the regional center to establish and begin providing services to adults through his practical film school program, eventually leading to his vendorization for a practical film making vocational program.  SUF 12.  It was in August 2003 that Travolta first articulated his "practical film school" program.  SUF 1.

During the same time, Plaintiffs sent a September 2006 letter submitting their own written application to the regional center to establish a competing vocational filmmaking program for adults.  SUF 13.  In response, Plaintiffs were informed by a December 28, 2006, letter that the regional center was already working on a "program identical" (by Travolta) to the one proposed and submitted by Plaintiffs and, due to limited demand, Plaintiffs would not be considered for providing the same service.  SUF 14.  Plaintiff Wolf then "suspected Defendant Travolta had merely changed the cover sheet to [her claimed] program design."  *Id*.  Prior to receiving this letter, by December 4, 2006, Plaintiffs had sought counsel from an attorney on possible claims in a lawsuit against Travolta for "taking the program" but it "was decided by the board of directors to not pursue a law suit at this time, rather to write a different program to submit to the regional center," despite Wolf believing that "it seemed clear that Defendant Travolta was using the program." SUF 15.

Despite this decision, Plaintiffs still wrote an appeal letter to the regional center in response to the rejection of their program design proposal.  In this letter, dated January 23, 2007, Plaintiff Wolf asserted on behalf of AFA that "All documents that I submitted to you regarding the film program are copy written by me [Wolf] and registered with the U.S. State Department," that "Mr. Travolta broke his fiduciary duty when he continued to have conversations with Lanterman Regional Center about our program for his own personal gain," that after Mr.

*Wolf v. Travolta, et al.*            3            **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                    **SUMMARY JUDGMENT**

91,577v1

1   Travolta left AFA "any further conversations regarding this program should have

2   ceased," asserting that by law "any and all concepts, programs and services which

3   are developed under a public charity belong to the charity" and that a "board

4   member may not take an idea, concept, program, or service for personal gain."  SUF

5   16.

6          Eventually, Plaintiffs met with regional center representatives in person and

7   agreed to withdraw their appeal and instead submit a different 2-year vocational

8   program that would include film, television, and animation vocational training.  SUF

9   17.  Wolf has admitted that at the time, despite claiming to have received

10  reassurances that the program service design was not copied, she still believed that

11  Travolta was harming Plaintiffs by taking their opportunities and ideas and

12  breaching fiduciary duties to them.  SUF 18.

13         Despite their awareness of this alleged wrongdoing and harm to Plaintiffs in

14  2006 and 2007, Wolf waited until February 6, 2014, to finally file a five page

15  complaint for copyright infringement against Defendant Joseph Travolta.  SUF 18-

16  19.  State law claims connected to the alleged infringement were added months

17  later, and AFA was finally added as a plaintiff in 2015.  SUF 20.  Nos. Plaintiffs'

18  current claims are based on allegations of (1) Infringement of a work registered in

19  2006; (2) Infringement of a work registered in 2015; (3) Unfair Competition based

20  on the alleged infringement and exploitation of the works and unspecified trade

21  secrets; (4) Interference with Economic Relationships based on the same alleged

22  infringement and exploitation of the works and unspecified trade secrets; (5) Breach

23  of Fiduciary Duty (by Travolta) for his taking of business opportunities that

24  allegedly belonged to AFA and his use of knowledge gained while on the board of

25  directors of AFA  in competition with Plaintiffs; (6) Misappropriation of Trade

26  Secrets held by Plaintiffs at the time that Travolta left his association with AFA; and

27  (7) Conversion of money, physical property, and/or ideas allegedly belonging to

28  Plaintiffs at the time that Travolta left his association with AFA.  SUF 21-27

*Wolf v. Travolta, et al.*
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                    4          **MEMO IN SUPPORT OF MOTION FOR**
                                                                       **SUMMARY JUDGMENT**

91,577v1

### B.     *Wolf's Copying of Third Party Material into the Works.*

Wolf also claims that all of the words within her registered works are entirely her own words, save for items previously used for Plaintiff's acting class program design and inspiration from Title 17 regulations and the DSM psychiatric manual. However, during the time the program materials were being put into writing in 2006, Travolta's wife observed Wolf at Travolta's office, "cutting and pasting" from sources on the internet as part of Wolf's typing of the program service design materials for Travolta's filmmaking program.  SUF 29.  Now years later, Defendants have been able to locate some documents predating the registered works' dates and additional documents predating the first internet publication of allegedly infringing works by Defendants (in 2011).  SUF 30.  These documents all share verbatim language with significant portions of the works.

### 1.     The Work Registered in 2006.

Wolf's registration of the work underlying her first claim for copyright infringement occurred in August 2006.  SUF 10.  Wolf claims this work, carrying a face date of May 10, 2006, was the first submission for the vocational filmmaking program service design made to the Lanterman Center.  The work itself is comprised of a title page and three pages of administrative details about the program, providing short paragraphs on the topics of (1) a Mission Statement; (2) Entrance Criteria; (3) a Referral Process; (4) Exit Criteria; (5) Participation Limits; and (6) Outcomes. SUF 31.

First, each of these topics (except the mission statement) were a direct response to a list of elements and a brief description of the required information "needed to complete the service design" provided by the Lanterman Regional Center in a letter written to Travolta and AFA in April 2006.  SUF 32.  Second, substantial portions of the language are verbatim copies of other documents uncovered by Defendants during this litigation, such that it is inescapable, and

reasonable minds cannot differ, that the work is not substantially Wolf's own writing.

The 2006 Registered Work's "Referral Process" section's first paragraph and list of 5 elements copies 87.5% of its 247 words verbatim from a July 18, 2005, PDF document created by the TTUHSC Student Services Program regarding ADA Compliance for Students with Disabilities.  SUF 33.  The remaining paragraph of that section copies 36 of its 81 words from the screening section of an employment opportunity flyer published by the College of the Siskiyous on March 8, 2006.  SUF 34.

The 2006 Registered Work's "Outcomes" section also shares large blocks of verbatim language with a course description published on the web by the London Film Academy, including verbatim language from that sections' opening paragraph that does not appear in Defendants' Program Service Design that was published to the internet.  SUF 35.

2.   The Work Registered in 2015.

Wolf's registration of the work underlying her second claim for copyright infringement occurred on June 18, 2015, during this litigation.  Wolf claims this work, carrying a face date of September 5, 2006, was the second and final submission of Plaintiffs to the Lanterman Regional Center for vendorization of a practical filmmaking program.  In this document, the section labeled Weeks 1-4, Term 1 used material from the VFS Vancouver Film School website.  SUF 36.  The section labeled Weeks 5-10, Term 2 and Weeks I 1-18, Term 3 used material from the Columbia College Hollywood, Production Course.  SUF 37.  The section Weeks 19- 24, Term 4  used material from the Editing section of New York Film Academy s website.  SUF 38.

The Curriculum Section of Wolf s second Work are also directly copied from various online materials.  An excerpt from the "Writing" section appears on both the Film & Digital Hands-On Workshops and in the Total Immersion Classes section.

1   Excerpts from the "Directing," "Camera and Lighting," "Production," "Editing,"

2   and "Sound Design" sections also appear in the Film & Digital Hands-On

3   Workshops materials from the New York Film Academy's Workshop and One-Year

4   Filmmaking Class sections of their brochure.

5          Based on the still-existing evidence of verbatim copying within the two

6   documents, along with Wolf's vehement denial of any copying from third party

7   sources, it is impossible to escape the conclusion that the registered works were not

8   original to Wolf.

9   **III.    Legal Standard.**

10          Summary judgment against a party is appropriate when the pleadings,

11   depositions, answers to interrogatories, and admissions on file, together with the

12   affidavits, if any, show that there is no genuine issue as to any material fact and that

13   the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

14   A party seeking summary judgment bears the initial burden of informing the court

15   of the basis for its motion and of identifying those portions of the pleadings and

16   discovery responses which demonstrate the absence of a genuine issue of material

17   fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d

18   265 (1986). A "genuine issue" exists if there is a sufficient evidentiary basis on

19   which a reasonable jury could find for the non-moving party. *See Anderson v.*

20   *Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A

21   factual dispute is "material" if it might affect the outcome of the suit under

22   governing law.  *Id*. at 248.

23          Once the movant has sustained the initial burden, the non-movant "must set

24   forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477

25   U.S. at 250, 106 S.Ct. 2505. Under Rule 56, the non-moving party opposing a

26   summary judgment motion must make a showing "sufficient to establish the

27   existence of an element essential to [his] case, and on which [he] will bear the

28   burden of proof at trial ... since a complete failure of proof concerning an essential

1  element of [his] case necessarily renders all other facts immaterial." *Celotex*, 477

2  U.S. at 322–23.

3  When the non-movant bears the burden of proof at trial, the court evaluates

4  "the evidence presented through the prism of the substantive evidentiary burden."

5  *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. The court determines whether there is a

6  triable issue of fact in light of the "actual quantum and quality of proof" the non-

7  movant must meet at trial. *Id*. Rule 56 does not require "that the moving party

8  support its motion with affidavits or other similar materials negating the opponent's

9  claim." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.  Conclusory, speculative

10  testimony is insufficient to raise genuine issues of material fact and defeat summary

11  judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007).

12  **IV.  Argument.**

13  *A.    Statutes of Limitations.*

14  In California, a "plaintiff must bring a claim within the limitations period

15  after accrual of the cause of action."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th

16  797, 806 (2005) (citing Cal. Code Civ. Proc., § 312).  "Generally speaking, a cause

17  of action accrues at the time when the cause of action is complete with all of its

18  elements."  *Id*. (citations omitted).  An "exception to the general rule of accrual is

19  the "discovery rule," which postpones accrual of a cause of action until the plaintiff

20  discovers, or has reason to discover, the cause of action."  *Id*. at 807 (citations

21  omitted).  "Under the discovery rule, suspicion of one or more of the elements of a

22  cause of action, coupled with knowledge of any remaining elements, will generally

23  trigger the statute of limitations period."  *Id*.  (citations omitted).  The elements

24  evaluated are "the 'generic' elements of wrongdoing, causation, and harm," such

25  that a plaintiff need not "suspect facts supporting each specific legal element of a

26  particular cause of action," but instead "have reason to at least suspect that a type of

27  wrongdoing has injured them."  *Id*.  The rule is designed to avoid dilatory tactics-

28  "plaintiffs are required to conduct a reasonable investigation after becoming aware

*Wolf v. Travolta, et al.*                                    8                **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                      **SUMMARY JUDGMENT**

91,577v1

1  of an injury, and are charged with knowledge of the information that would have
2  been revealed by such an investigation." *Id*. at 808.

3      In evaluating a cause of action, where the "complaint shows on its face that
4  [the] claim would be barred without the benefit of the discovery rule," the plaintiff
5  must meet its burden to "show diligence" by presenting facts that "show (1) the time
6  and manner of discovery *and* (2) the inability to have made earlier discovery despite
7  reasonable diligence." *Ethicon,* 35 Cal. 4th at 808.

8      Plaintiffs' individual claims are subject to the following statutes of limitation:
9      <u>Copyright</u>.  Actions on copyright claims must be commenced within 3 years
10 after the claim accrued.  17 USC § 507(b).

11     <u>Unfair Competition under Cal. Bus. & Prof. Code § 17200 et seq</u>.  The statute
12 of limitations for actions brought under § 17200 is "four years after the cause of
13 action accrued."  Cal. Bus. & Prof. C. § 17208.  However, where the underlying
14 conduct is subject to its own statute of limitations, a plaintiff may not use the four
15 year statute to extend federal statutes of limitation.  *Newsom v. Countrywide Home*
16 *Loans, Inc.,* 714 F.Supp.2d 1000, 1014 (ND Cal. 2010) (*citing Silvas v. E*Trade*
17 *Mortg. Corp*. 514 F3d 1001, 1007, fn. 3 (9th Cir. 2008)).

18     <u>Interference with Economic Relationship</u>.  An action for tortious interference
19 with economic relations is governed by California Code of Civil Procedure section
20 339 (1) 2-year statute of limitations for an "obligation or liability not founded upon
21 an instrument of writing." *See Knoell v. Petrovich*, 76 CA4th 164, 168, 90 CR2d
22 162, 164 (1999) (causes of action for interference with contractual relations and
23 interference with prospective business advantage); *McFaddin v. H. S. Crocker Co.,*
24 *Inc.,* 219 CA2d 585, 591, 33 CR 389, 393 (1963) (tortious interference with
25 plaintiff's greeting card business); *Edwards v. Fresno Comm. Hosp*. (1974) 38 CA3d
26 702, 706, 113 CR 579, 581-582—physician's action against hospital for wrongful
27 curtailment of hospital facilities.

28

*Wolf v. Travolta, et al.*                                          9          **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                        **SUMMARY JUDGMENT**

91,577v1

<u>Breach of Fiduciary Duty</u>.  An ordinary action for breach of fiduciary duty is governed by California Code of Civil Procedure section 343 "catch-all" statute of limitations.  *Stalberg v. Western Title Ins. Co.,* 230 Cal. App. 3d 1223, 1230 (1991); *Hatch v. Collins,* 225 Cal. App. 3d 1104, 1111(1990); *David Welch Co. v. Erskine & Tulley,* 203 Cal. App. 3d 884, 893 (1988) (4-year limitations period applied to action by former client against attorneys for using confidential information to divert former client's business to themselves after the attorney-client relationship ended); *Thomson v. Canyon*, 198 CA4th 594, 606 (2011).

<u>Misappropriation Of Trade Secrets</u>.  Under the Uniform Trade Secrets Act an action against the misappropriator of a trade secret must be commenced within 3 years after the misappropriation is, or by the exercise of reasonable diligence should have been, discovered. Cal. Civil Code § 3426.6; *see Glue-Fold, Inc. v. Slautterback Corp.,* 82 Cal App. 4th 1018, 1024 (2000) (actual discovery of alleged misappropriation commenced Uniform Trade Secrets Act's 3-year limitations period).  The statute expressly provides that "(f)or the purposes of this section, a continuing misappropriation constitutes a single claim."  Cal. Civil Code § 3426.6. Thus, "a plaintiff's claim for misappropriation of a trade secret against a defendant arises only once, when the trade secret is initially misappropriated, and each subsequent use or disclosure of the secret augments the initial claim rather than arises as a separate claim."  *Cadence Design Systems, Inc. v. Avanti Corp.,* 29 Cal. 4th 215, 227 (2002).  It also means that if plaintiff delays filing suit after discovery of the initial misappropriation, any action against the same defendant for further disclosures or misuse of the trade secret may be time barred. *Glue-Fold, Inc.*, 82 Cal. App. 4th at 1027.

<u>Conversion</u>.  An action for "taking, detaining or injuring any goods or chattels," including actions for specific recovery of personal property ("claim and delivery"), must be commenced within 3 years. Cal. Code of Civil Procedure § 338(c); *see Wisper Corp. N.V. v. California Commerce Bank*, 49 CA4th 948, 957

*Wolf v. Travolta, et al.*
USDC, Case No. 2:14-cv-00938-CAS (PJWx)          10          **MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

91,577v1

(1996); *Coy v. County of Los Angeles,* 235 CA3d 1077, 1087 (1991); *Strasberg v. Odyssey Group, Inc.,* 51 CA4th 906, 915-916 (1996).  The statute of limitations on a conversion claim generally runs from the date of taking (or other act of conversion) even if plaintiff is unaware of the taking.  *See AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 639 (2006); *Bono v. Clark,* 103 Cal. App. 4th 1409, 1433 (2002).  Actions for intentional or negligent injury to intangible interests are governed by CCP § 339(1)'s 2-year statute of limitations for an "obligation or liability not founded upon an instrument of writing." [*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 C3d 176, 182, 98 CR 837, 840].

      1.    Any Damages Under Wolf's Copyright Claim are Limited to the 3 Years Prior to Filing.

The Copyright Act's statute of limitations provides: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A claim for copyright infringement "accrues when one has knowledge of *788 a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.,* 19 F.3d 479, 481 (9th Cir.1994). Actual or constructive knowledge of facts giving rise to the alleged infringement is sufficient; knowledge of the legal theory is not required. *See Gutierrez v. Mofid,* 39 Cal.3d 892, 897–98, 218 Cal.Rptr. 313, 705 P.2d 886 (1985) ("[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his claim," and therefore "[i]t is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action") (emphasis in original).

A defendant is only liable for "his acts of infringement committed within three years prior to [a plaintiff's] lawsuit." *Makedwde Publ'g Co. v. Johnson,* 37 F.3d 180, 181 (5th Cir.1994) ("We are persuaded by the Ninth, Sixth, and Second Circuits' interpretation of section 507(b). [A defendant] is only liable for *his* acts of

infringement committed within three years prior to [a plaintiff's] lawsuit.") (emphasis in original); *see Roley,* 19 F.3d at 481–82. Accordingly, recovery "is allowed only for those acts occurring within three years of suit and is disallowed for earlier infringing acts." *Stone v. Williams,* 970 F.2d 1043, 1049–50 (2d Cir.1992).

Here, as early as 2006, Plaintiff Wolf (the only owner of the copyrights at issue) was aware of harm she suffered due to Defendant Travolta's copying of her ideas, knew that he had a computer with copies of her works, and that he was creating a "program identical" to the one she submitted to the Lanterman Regional Center. Wolf sought legal advice on the copying of "her" program, asserted to the Lanterman Regional Center that the documents she had submitted were copy written and registered with the US Government. Clearly, Wolf not only had reason to believe that Travolta had harmed her, but specifically believed that he had done so by copying the works she claims. As such, any and all claims for copyright infringement or resulting damages occurring more than three years before the date of filing of the suit cannot survive the statute of limitation.

2.      Plaintiffs' State Law Claims are all in Violation of the Applicable Statutes of Limitation.

Unlike the Copyright Statute, each of Plaintiffs' state law claims are based on violations that occurred no later than 2006 and 2007 in the wake of Travolta's resignation from Actors for Autism.

The only economic relationship that Plaintiffs have provided any evidence that Defendants interfered with is the original vendorization of the filmmaking program with the Lanterman Regional Center, which occurred in 2006 and 2007. Plaintiffs knew of and complained to the Regional Center of Travolta's vendorization in 2007, and resolved this issue by agreeing to submit a similar two year program that included other media program, which was subsequently vendorized. Because Plaintiffs clearly knew of the alleged wrongdoing - the usurpation of an economic opportunity with Lanterman, as well as the harm - the

*Wolf v. Travolta, et al.*                                   12                  **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                              **SUMMARY JUDGMENT**

91,577v1

loss of Plaintiffs' ability to vendorize the same program, as early as December 2006, these claims are subject to the statute of limitations and judgment should enter in Defendants' favor.

Plaintiffs' Trade Secrets claim is based on secrets that Travolta allegedly had access to as a board member of Actors for Autism.  It is undisputed that Travolta left Actors for Autism in 2006, and there is no factual basis presented by Plaintiff that he had access to any alleged trade secrets after that time.  Because a trade secret claim accrues at the time of the alleged misappropriation, and Plaintiffs knew that Travolta was proceeding to vendorize with the Lanterman Center in 2006, the claim accrued then and is now barred by the statute of limitations.

Plaintiffs' Unfair Competition claim is based on the alleged infringement and exploitation of the works and the alleged (and unspecified) trade secrets.  Because the trade secret claim is time barred, the only potential grounds for the claim is the alleged infringement of the works.  To the extent that the claim is not preempted by the infringement claim, the only alleged copying of the works occurred no later than 2007, and the claim is time barred.

Plaintiffs' Breach of Fiduciary Duty against Travolta for his taking of business opportunities that allegedly belonged to AFA and his use of knowledge gained while on the board of directors of AFA is entirely predicated on allegedly wrongful acts that occurred in 2006 - the alleged taking of Plaintiffs' knowledge to usurp the vendorization opportunity with the Lanterman Regional Center.  Travolta's fiduciary duty to AFA ended on his resignation from the organization, and he could not misuse any information gained after that point.  The claim is more than barred by even the four year statute of limitations.

Plaintiffs' unclear conversion claim is possibly directed at money, physical property, and/or ideas allegedly belonging to Plaintiffs at the time that Travolta left his association with AFA.  Plaintiffs admit they were aware all such items were taken in 2006.  Thus, this claim is barred by the statute of limitations.

*Wolf v. Travolta, et al.*                                    13                    **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                        **SUMMARY JUDGMENT**

91,577v1

1    *B.*    *Lack of Originality.*

2        As set forth above, the Works Registered by Plaintiff Wolf show substantial

3    copying of third party works, despite her adamant denial of using the third party

4    sources to generate them.

5        Copyright protection extends only to "original works of authorship." 17

6    U.S.C. § 102. "Although the amount of creative input by the author required to meet

7    the originality standard is low, it is not negligible." *Satava v. Lowry,* 323 F.3d 805,

8    810 (9th Cir.2003). "[A] combination of unprotectable elements is eligible for

9    copyright protection only if those elements are numerous enough and their selection

10   and arrangement original enough that their combination constitutes an original work

11   of authorship." *Id.* at 811.

12       The presumption of the validity of a registered copyright may be overcome by

13   the "offer [of] some evidence or proof to dispute or deny the plaintiff's prima facie

14   case of infringement." *Entm't Research Group, Inc. v. Genesis Creative Group, Inc*.,

15   122 F.3d 1211, 1217 (9th Cir.1997). "[T]he statutory presumption of validity can be

16   rebutted if the alleged infringer demonstrates that the plaintiff's work 'is not original

17   but copied from another's work.' " *Id.* at 1218 (quoting *N. Coast Indus. v. Jason*

18   *Maxwell, Inc*., 972 F.2d 1031, 1033 (9th Cir.1992)). "Originality is the

19   indispensable prerequisite for copyrightability." *N. Coast Indus.,* 972 F.2d at 1033. "

20   'Original in reference to a copyright work means that the particular work owes its

21   origin to the author. No large measure of novelty is required.' " *Id.* (quoting *Alfred*

22   *Bell & Co. v. Catalda Fine Arts,* 191 F.2d 99, 102–03 (2d Cir.1951) (quotation

23   marks omitted)). "When a work displays a significant element of compilation, that

24   element is [protectable] even though the individual components of the work may not

25   be, for originality may be found in taking the commonplace and making it into a

26   new combination or arrangement." *United States v. Hamilton,* 583 F.2d 448, 451

27   (9th Cir.1978) (citations omitted).

28

---

*Wolf v. Travolta, et al.*
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                14                **MEMO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

91,577v1

1    "The copyright in a compilation or derivative work extends only to the

2    material contributed by the author of such work, as distinguished from the

3    preexisting material employed in the work...." 17 U.S.C. § 103(b); *accord Entm't*

4    *Research Group,* 122 F.3d at 1220; *see also Lamps Plus, Inc. v. Seattle Lighting*

5    *Fixture Co.*, 345 F.3d 1140, 1145-46 (9th Cir. 2003) (combination of four

6    preexisting pieces into lamp did not create original work).

7         Even if a work can be copyrighted as a compilation, the "copyright protection

8    for a derivative work 'does not extend to any part of the work in which such

9    [preexisting] material has been used unlawfully'." *U.S. Auto Parts Network, Inc. v.*

10   *Parts Geek, LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012) (citing 15 U.S.C. § 103(a)).

11   "Thus, if a third party uses preexisting work in violation of the Copyright Act, the

12   resulting derivative work is not entitled to copyright protection. In short, § 103

13   provides that a derivative author may own the copyright in material the author

14   contributed to a preexisting work, but not in infringing material or material the

15   author did not create." *Id*.

16        Furthermore, where a preexisting work "pervades the derivative work,"

17   claimed by a plaintiff and the "Plaintiff used the previous work without

18   authorization, no copyright protection is afforded" to any remaining elements of the

19   plaintiff's derivative work. *Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234,

20   1239-41 (C.D. Cal. 2003) (no infringement of "spec" Jack in the Box commercial

21   that incorporated portions of preexisting commercials) (citing *Pickett v. Prince,* 207

22   F.3d 402 (7th Cir.2000); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d

23   27, 34 n. 6 (2d Cir.1982); 1–3 Nimmer on Copyright § 3.06 (2002) ("copyright

24   protection does not extend "to derivative works if the pre-existing work *tends to*

25   *pervade* the entire derivative work.")).

26        As described in section II.B above, Plaintiff's Registered Works are replete

27   with and pervaded by wholesale verbatim copying of pre-exiting works created by

28   third parties.  Plaintiff has specifically denied any copying of such works, such that

*Wolf v. Travolta, et al.*                              15          **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                              **SUMMARY JUDGMENT**

91,577v1

1  there is no evidence that the copying was authorized.  Even with the passage of

2  time, Defendants have been able to uncover paragraphs comprising majorities of the

3  works are derived from third parties.  As a result of the unauthorized derivative

4  nature of Plaintiff's works, their content is not original to her, she cannot receive

5  copyright protection, and therefore the works cannot support any infringement

6  claims against Defendants.

7  **V.    Conclusion.**

8        For the foregoing reasons, the Court should grant Defendants' Motion and

9  Grant Summary Judgment by finding each of the state law claims barred by the

10  applicable statutes of limitation, the copyright claims subject to a statute of

11  limitations cutoff of 3 years prior to filing this action, and by finding that Plaintiff's

12  Registered Works are unauthorized derivative works that lack sufficient originality

13  to support a copyright or infringement claim.

17  Dated: December 11, 2015                    Respectfully submitted,

18                                              **RAINES FELDMAN** LLP

21                                              By: _____

22                                                  JOHN S. CHA
                                                    STEVEN T. GEBELIN
23                                                  Attorneys for Defendants JOSEPH
                                                    "JOEY" TRAVOLTA, d/b/a
24                                                  INCLUSION FILMS, INCLUSION
                                                    WEAR, LLC, and LITTLE
25                                                  DOCUMENTARY FILMS, LLC