**JOHN S. CHA, ESQ. (SBN 129115)**
jcha@raineslaw.com
**STEVEN T. GEBELIN (SBN 261507)**
sgebelin@raineslaw.com
**RAINES FELDMAN LLP**
9720 Wilshire Boulevard, 5th Floor
Beverly Hills, California 90212
Telephone: (310) 440-4100
Facsimile: (424) 239-1613

Attorneys for Defendants JOSEPH "JOEY" TRAVOLTA, d/b/a INCLUSION FILMS, INCLUSION WEAR, LLC, and LITTLE DOCUMENTARY FILMS, LLC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA WOLF, *et al.*<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>JOSEPH "JOEY" TRAVOLTA, *et al.*<br><br>　　　　　Defendants. | **CASE NO. 14-CV-00938-CAS (PJWx)**<br>[Hon. Christina A. Snyder]<br>[Courtroom 5-2nd Floor]<br><br>Action Filed:　February 6, 2014<br>4AC Filed:　　August 5, 2015<br>Trial Date:　　February 9, 2016<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>　DATE: January 11, 2016<br>　TIME: 10:00 A.M.<br>　DEPT.: Court Room 5 |

## I. Introduction.

Plaintiffs Alisa Wolf and her organization Actors for Autism admit that Defendant Travolta was the first to come up with the idea for a practical film school, that he first obtained the funding commitment for such a program with the local Regional Center, that he was the first to be vendored for such a program, and that Plaintiffs knew his program was "identical" to the one copyrighted by Wolf and "suspected Defendant Travolta had merely changed the cover sheet" for his submission to the Regional Center. Rather than pursue claims based on misappropriation of business opportunities or of program materials at that time in 2006 and 2007, Plaintiffs decided to "not pursue a lawsuit at this time, rather to write a different program to submit to the regional center," despite believing that "it seemed clear that Defendant Travolta was using the program."

Plaintiffs attempt to argue that their delay in bringing suit is justified by efforts taken by Wolf to determine that the copyrighted program materials were not themselves being used. However, Plaintiffs admit that Wolf still believed Travolta was harming Plaintiffs by taking their business opportunities and ideas in violation of fiduciary duties. As a result, Plaintiffs were on more than sufficient notice of their claims against Defendants in 2007 such that they should have discovered the copying and all other claims related to Defendants' vendorization of the practical film school in 2007, and the statute of limitations has run on all claims except infringement within the three year look back.

In response to clear evidence of copying of third party materials by Plaintiff Wolf, such that the originality of the registered works is minimal, Plaintiffs rely solely on objections to the timeliness and quality of evidence that Wolf failed to produce and apparently let wither for years before bringing her claims for infringement. These objections should be overruled and the clear impact of the third party works should carry the day- Plaintiff's claimed and registered works lack sufficient originality to maintain a copyright or this infringement action.

*Wolf v. Travolta, et al.*  1  **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)     **SUMMARY JUDGMENT**

92,715v1

Defendants are entitled to summary judgment on all of Plaintiffs' claims.

## II. Undisputed Facts.

Plaintiffs admit that:

- Travolta had already described his vision for a "practical film school" and worked with disabled children prior to meeting Plaintiff (SGD 1);
- Wolf and Travolta then worked together to incorporate autistic children into Travolta's acting program (SGD 2);
- Travolta aided Wolf in setting up co-Plaintiff Actors for Autism (SGD 3);
- Travolta and Wolf both attended the 2005 meeting in which the practical filmmaking vocational program for disabled young adults was first presented to the Regional Center (SGD 4, 5);
- Travolta obtained the financing commitment for the practical filmmaking program from the Regional Center (SGI 7);
- Travolta (and not Wolf) sought to obtain a slate of films that would serve as the "backbone" for the practical film program being vendored by the Regional Center (SGI 8);
- Travolta parted ways with Plaintiffs in summer of 2006 (SGI 9);
- Travolta continued working with the Regional Center after parting with Plaintiffs, leading to his vendorization for a practical film making program in January 2007 (SGI 12);
- Plaintiffs submitted their own written application and one of the registered program design documents to the Regional Center in September 2006 (SGI 13);
- Plaintiffs were informed that the Regional Center was working with Travolta on a "program identical" to the one submitted by Plaintiffs (SGI 14);
- Plaintiff Wolf "suspected that Defendant Travolta had merely changed the cover sheet" to the program service design submitted by Plaintiffs in seeking vendorization of his program (SGI 14);

- At a December 2006 AFA Board Meeting, after receiving legal advice on possible infringement claims, Plaintiffs opted to forgo claims against Travolta for "taking the program" and instead it "was decided by the board of directors to not pursue a lawsuit at this time, rather to write a different program to submit to the regional center" over statements by Wolf that "it seemed clear that Defendant Travolta was using the program" (SGI 15);

- Plaintiffs subsequently asserted directly to the Regional Center that "All documents submitted" to the Regional Center were "copywritten by me [Wolf] and registered with the U.S. State Department," that "Mr. Travolta broke his fiduciary duty when he continued to have conversations with Lanterman Regional Center about our program for his own personal gain," that after Mr. Travolta left AFA "any further conversations regarding this program should have ceased," asserting that by law "any and all concepts, programs and services which are developed under a public charity belong to the charity" and that a "board member may not take an idea, concept, program, or service for personal gain." (SGI 16);

- Plaintiffs met with regional center representatives in person and agreed to withdraw their appeal and instead submit a different 2-year vocational program that would include film, television, and animation vocational training (SGI 17);

- Following this meeting, Plaintiff Wolf still believed that Travolta was harming Plaintiffs by taking their opportunities and ideas and breaching fiduciary duties to them, despite claiming to have received reassurances that the program service design was not copied (SUF 18).

In sum, it is undisputed that in 2006 Plaintiffs believed that Travolta had submitted the copyrighted materials to the Regional Center by just placing his name on them (i.e. making unauthorized copies of the works), had asserted such claims to the Regional Center by January 2007, accused Travolta of copying the program design materials at issue in this case in 2007 and asserting that his "breach of

*Wolf v. Travolta, et al.*     3     **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)     **SUMMARY JUDGMENT**
92,715v1

fiduciary duties" to Plaintiffs involved improperly taking their "copywritten" for his own use and submission to the Regional Center. Moreover, Plaintiffs admit that despite claims they were reassured by Travolta that he had not copied the materials[1], they continued to believe that Travolta was harming Plaintiffs by taking their opportunities and ideas and breaching fiduciary duties.

Plaintiffs also fail to factually dispute that multiple different documents published on the internet, including documents pre-dating the registered works and documents predating Defendants' internet publication of their program design materials, all include verbatim language appearing in the registered works. See SGI 32-34, 36-38.

**III.    Plaintiffs Knew of Their Claims in 2006-2007 and Did Not Act.**

It is undisputed that Plaintiffs demonstrated awareness of potential infringement by Defendants in December 2006 and made an explicit decision to not pursue claims at that time. It is further undisputed that despite allegedly being assured that Defendants were not using their program materials, Plaintiffs still believed they were being wronged by Travolta's alleged taking of business opportunities and ideas and his alleged breach of fiduciary duties. Plaintiffs knew they had claims against Defendants arising out of the same transactions and events in which they assert that Travolta made infringing copies of the works at issue in this case- the vendorization of the practical filmmaking program using program service design materials alleged to infringe Wolf's copyrights. Plaintiff also agree that rather than diligently pursue those claims, they opted to instead focus on starting a new competing program that would incorporate filmmaking into a larger curriculum.

At a minimum, Plaintiffs' claims accrued when they "demonstrated awareness of any purported" wrongdoing in their documents, especially where they have "opined that a suit should [or could] be filed against" Defendants. *Daly v. Pearl Spirits, Inc.*,

---

[1] Defendants dispute that any such assurances were ever made. Defendants' Response to Plaintiffs' Additional Material Facts 45, 47.

*Wolf v. Travolta, et al.*      4      **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)      **SUMMARY JUDGMENT**

92,715v1

438 F. App'x 644, 645 (9th Cir. 2011). Moreover, upon learning of the allegedly wrongful conduct by Defendant Travolta, Plaintiffs had "enough information to warrant an investigation" that should have uncovered the alleged infringement with a simple request for a copy of the vendored program design. *See id.* Plaintiff's consultation with an attorney that confirmed the viability of their claims further demonstrates their knowledge of their claims in 2006. *See id.*

Plaintiffs do not dispute that they were suspicious that Defendant Travolta had harmed them by infringing copyright(s), taking ideas, breaching fiduciary duties, and improperly taking business opportunities. As a result, Plaintiffs were required to "to take the steps a reasonably diligent plaintiff would take in investigating its claims" that would be based on their suspicion in 2006 and 2007. *Gabriel Techs. Corp. v. Qualcomm Inc.*, 857 F. Supp. 2d 997, 1006 (S.D. Cal. 2012). Plaintiffs could have easily discovered the alleged infringement at the time of the February 2007 meeting with Karen Ingram by simply asking to see a copy of the program service design used by Travolta to vendorize with the Regional Center. Instead, Plaintiff claims to have relied on (undocumented) representations from potentially infringing parties that they had not used her work, including an alleged representation by Ms. Ingram that does not appear in the letter confirming the February 2007 meeting's events. As such, Plaintiffs failed to take the steps a "reasonably diligent plaintiff would take in investigating its claims," and and their "failure either to proceed against [Defendants] based on the information known to it or to undertake readily available means of confirming [the infringement] was so unreasonable that summary judgment is appropriate." *Id.*

Additionally, where, as here, "testimony and corroborating documentary evidence establishes that Plaintiffs actually considered its potential claims against" Defendants, there can be no dispute that the statute of limitations began to run at that time. *Gabriel Techs. Corp.*, 857 F. Supp. 2d at 1008. Plaintiffs do not dispute that in 2006 they had received legal advice on potential claims based on the copying of

the program by Travolta, considered the advice, and decided not to pursue the claims.

Plaintiffs' citations to *William A. Graham Co. v. Haughey* are unavailing in preventing the obvious conclusion that Plaintiffs were suspicious of the alleged infringement and wrongdoing in 2006 and 2007, and should have reasonably uncovered the alleged infringement by undertaking a reasonable investigation. Unlike *Haughey*, "the storm warnings arose after the alleged wrongs" had already occurred; Plaintiffs became suspicious and were informed of the "identical program" after Travolta had already submitted documents for vendorization, and Plaintiff's meeting with the Regional Center in February 2007 occurred after Defendants were fully vendored in January of the same year. SGD 15-17; *c.f.* 568 F.3d 425, 439 (3d Cir. 2009) (no "duty to inquire into future wrongdoing," but potential plaintiff could be charged with knowledge when "inquiry notice arose for past wrongs.") Furthermore, Plaintiffs did not just have "evidence that a person is a bad actor in some general sense," but instead had specific suspicions that "Defendant Travolta had merely changed the cover sheet" to the program service design submitted by Plaintiffs, i.e. that Defendants were making unauthorized derivative works from the claimed work(s). SGD 14; *c.f. Haughey*, 568 F.3d at 440.

Nor is the citation to Docket 79 or *Aoki v. Gilbert*[2], helpful here. Plaintiffs claim that the breach of fiduciary duty claim survives, without identifying which, if any, "of Travolta's alleged breaches of fiduciary duty are not time-barred." Dkt. No. 79 at 16. By failing to do so, Plaintiffs have essentially conceded that the breach of fiduciary duty claim is time barred.

In short, there is no issue of material fact that saves any of Plaintiffs' state law claims or any infringement claims that occurred more than

---

[2] No. 2:11-CV-02797-TLN-CK, 2014 WL 3689345, at *1 (E.D. Cal. July 23, 2014)


### IV.  Plaintiffs Do Not Explain the Verbatim Copying Within the Works.

In addition to failing to create a material issue of fact regarding the time bar applicable to all of the state law claims, Plaintiffs make no attempt to explain how the registered works contain verbatim language from multiple sources on the internet and elsewhere predating the works or Defendants' internet publication of allegedly infringing works. Instead, Plaintiffs attempt to rely solely on objections to the admissibility of the clear evidence that Plaintiffs' claimed works are unoriginal.

Plaintiffs' objection to the disclosure of the materials demonstrating Wolf's copying of the works are without merit, they were disclosed to Plaintiffs well before the discovery cutoff. Defendants first disclosed the evidence of copying by Wolf to Plaintiffs on September 15, 2015. Supplemental Declaration of Steven T. Gebelin in Support of Summary Judgment, ¶ 2. Specifically, Defendants sent Plaintiffs an email and documentation referencing multiple works on the internet (with URLs) that clearly were verbatim copied by Wolf's claimed works. *Id.* Plaintiffs again received the evidence of copying when Defendants served the expert report of David Helfant, which also referenced each of the documents cited in the motion for summary judgment as containing verbatim language to Wolf's claimed works. *Id.* ¶ 3. Plaintiffs were placed on notice of the evidence, provided links to the evidence, and any alleged failure to produce the documents created no surprise that would warrant exclusion. *See, e.g. Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 626 (S.D. Cal. 2015) (no exclusion of undisclosed expert that "does not prejudice Defendant" based on "the interests of justice").

Next, Plaintiffs' argument about the "presumption of validity" based on the registration is not helpful. A "certificate of registration from the U.S. Copyright Office entitle[s] [plaintiff] to a 'rebuttable presumption of originality'." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000). "[T]he statutory presumption of validity can be rebutted if the alleged infringer demonstrates that the plaintiff's work 'is not original but copied from another's work.'" *Lamps Plus,*

1  *Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1145-46 (9th Cir. 2003)
2  (copyright in lamp design consisting of compilation derived from other works was
3  invalid) (citations omitted).  Here, as in Lamps Plus, the evidence demonstrates that
4  the Plaintiff's compilation lacks sufficient originality to merit a copyright of its own.
5        Finally, Plaintiffs' bare arguments that originality is a "question of fact
6  generally appropriate for the jury to decide," (Opposition at 22:7-9) ignores the clear
7  evidence of copying in the record on this motion that shows that preexisting works
8  "pervades the derivative work," claimed by a plaintiff and the "Plaintiff used the previous
9  work without authorization, no copyright protection is afforded" to any remaining
10 elements of the plaintiff's derivative work.  *Sobhani v. @Radical.Media Inc.*, 257 F. Supp.
11 2d 1234, 1239-41 (C.D. Cal. 2003) (no infringement of "spec" Jack in the Box commercial
12 that incorporated portions of preexisting commercials) (citing *Pickett v. Prince,* 207 F.3d
13 402 (7th Cir.2000); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 34 n. 6
14 (2d Cir.1982); 1–3 Nimmer on Copyright § 3.06 (2002) ("copyright protection does not
15 extend "to derivative works if the pre-existing work *tends to pervade* the entire derivative
16 work.")).
17       Plaintiff's bare assertion that she did not copy the works from other sources foes not
18 create a material issue of fact in the face of competent evidence that third party documents
19 predating the works she claims have verbatim language.  The works are unoriginal and not
20 entitled to copyright protection.
21 **V.    Conclusion.**
22       Plaintiffs have failed to make a dispute of material facts sufficient to prevent
23 summary judgment.  They admit suspicions of copyright infringement, breaches of
24 fiduciary duty, and taking of ideas in 2006 and 2007 that put them on notice, and
25 they chose not to pursue claims at that time and failed to even attempt to obtain a
26 copy of Travolta's program service design to determine whether it was actually
27 different from Wolf's claimed work.  Plaintiffs also fail to provide any explanation
28 for the rampant unauthorized copying within Wolf's claimed works, which

*Wolf v. Travolta, et al.*          8        **MEMO IN SUPPORT OF MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)        **SUMMARY JUDGMENT**
92,715v1

disproves Wolf's claim to have not copied from any source and overcomes the presumption of originality from the 2006 registration.

For the foregoing reasons, the Court should grant Defendants' Motion and Grant Summary Judgment by finding each of the state law claims barred by the applicable statutes of limitation, the copyright claims subject to a statute of limitations cutoff of 3 years prior to filing this action, and by finding that Plaintiff's Registered Works are unauthorized derivative works that lack sufficient originality to support a copyright or infringement claim.

Dated: December 28, 2015

Respectfully submitted,

**RAINES FELDMAN LLP**

By: /s/
JOHN S. CHA
STEVEN T. GEBELIN

Attorneys for Defendants JOSEPH "JOEY" TRAVOLTA, d/b/a INCLUSION FILMS, INCLUSION WEAR, LLC, and LITTLE DOCUMENTARY FILMS, LLC