**JOHN S. CHA, ESQ. (SBN 129115)**
jcha@raineslaw.com
**STEVEN T. GEBELIN (SBN 261507)**
sgebelin@raineslaw.com
**RAINES FELDMAN LLP**
9720 Wilshire Boulevard, 5th Floor
Beverly Hills, California 90212
Telephone:  (310) 440-4100
Facsimile:    (424) 239-1613

Attorneys for Defendants JOSEPH "JOEY"
TRAVOLTA, d/b/a INCLUSION FILMS,
INCLUSION WEAR, LLC, and LITTLE
DOCUMENTARY FILMS, LLC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA WOLF, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH "JOEY" TRAVOLTA, *et al.* <br><br> Defendants. | **CASE NO. 14-CV-00938-CAS (PJWx)** <br> [Hon. Christina A. Snyder] <br> [Courtroom 5-2nd Floor] <br><br> Action Filed:   February 6, 2014 <br> 4AC Filed:      August 5, 2015 <br> Trial Date:      February 9, 2016 <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3 TO PRECLUDE TESTIMONY AND REPORTS FROM DEFENDANTS' REBUTTAL EXPERT WITNESSES** <br><br>  **DATE: February 1, 2016** <br> **TIME: 11:00 A.M.** <br> **DEPT.: Court Room 5** |

**I.     Introduction.**

      Plaintiffs seek to avoid the limited expert testimony offered by Defendants' rebuttal experts that was crafted to specifically rebut expert testimony first disclosed by Plaintiffs.  Plaintiffs illogically argue that because Defendants did not first offer affirmative expert opinions, they cannot provide expert "evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party" in rebuttal, as expressly permitted by the Federal Rules.

      Plaintiffs also make several arguments regarding the opinions proffered by Defendants' copyright expert David Helfant.  Their arguments are somewhat extraordinary, considering that they are based solely on his report and not on any deposition of Mr. Helfant, and considering that they essentially argue that his opinion should be rejected in favor of their competing copyright expert, James Coupe.  None of their argument rise to a sufficient level to exclude Mr. Helfant's testimony, but instead should be argued to the jury.

      Plaintiffs further argue that the disclosure of the accountants for Defendants Inclusion Wear, LLC and for Little Documentary Films, LLC as limited rebuttal experts on the profits of those defendants is improper because they should have been disclosed earlier, without explaining why there was any harm caused by their disclosure as retained experts at least a month before the discovery cutoff. Moreover, Plaintiffs failed to use discovery (*i.e.* a deposition) to probe any of the alleged deficiencies in the accounts' reports confirming the profits of the entities they provide accounting services to, and instead attempts to poke holes at strawmen.

      Plaintiffs Motion *in Limine* Number 3 should be denied in all respects.

**II.    Background.**

      On September 30, 2015, counsel for Plaintiffs served three expert reports, including those from Mr. James Coupe, Esq. regarding copyright law issues, and from Dr. Barbara Luna, regarding an economic and accounting analysis of the profits of the defendants potentially attributable to the alleged infringement.

Declaration of Steven Gebelin, ¶ 2, Exs. A, B.   On November 4, 2015, following a stipulation of the parties extending the rebuttal deadline by one week, and an order from the Court confirming such stipulation and schedule modification,  counsel for Defendants timely served the rebuttal expert reports of David Helfant, Esq, responding to the report of Mr. James Coupe, and Mr. L. David Brandon, CPA (accountant for Inclusion Wear, LLC) and Ms. Susan Richman, CPA (accountant for Little Documentary Films, LLC), both of which rebutting in part the opinion of Dr. Barbara Luna.  Chisvin Decl. ¶¶ 4-5, Exs. A-C.

Mr. Coupe provided the following expert opinions on copyright issues:

1.    Work No. 1 and Work No. 2 (collectively the "Works") are copyrightable subject matter

2.    Plaintiff Alisa Wolf is the author and owner of the copyright in the Works

3.    Plaintiff Alisa Wolf has exclusive rights as the owner of the copyright in the Works

4.    The copyrights in the Works are valid and strong

5.    Defendants have copied substantial elements of the Works

6.    Defendants' Affirmative Defenses Lack Merit

7.    There Exists a Sufficient, Reasonable Causal Connection between Defendants' Infringement and Their Gross Revenue

(*See, e.g.* Gebelin Decl. Ex. A at p 2). In response, Mr. Helfant provided the following corresponding rebuttal expert opinions:

*Wolf v. Travolta, et al.*          2          **OPPOSITION TO PLAINTIFFS'**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)          **MOTION *IN LIMINE* NO. 3**

94,046v1

1.     Plaintiff's Works are not copyrightable subject matter.

2.     Even assuming Plaintiffs Works are subject to Copyright protection, Plaintiff is not the author and sole owner to the extent that the Works are a joint work and/or a work-made-for-hire

3.     Plaintiff's Works are not subject to Copyright protection as the originality requirement of the Copyright Act is not met

4.     Even assuming Plaintiffs Works are subject to Copyright protection, Defendants' allegedly infringing Work does not qualify as an infringement because it is not substantially similar to Plaintiffs Works

5.     Defendants' Affirmative Defenses are Meritorious

6.     There is No Causal Connection between Defendants' Alleged Infringement and Their Gross Revenues.

(*See, e.g.* Chisvin Decl., Ex. A at p. 2).

Dr. Barbara Luna, Plaintiffs' accounting expert, provided opinions regarding the "net profit margins for Inclusion Wear/Inclusion Films and Little Documentary Films." (Gebelin Decl. Ex. B, pages 11-12). In turn, Defendants' rebuttal experts provided opinions that Inclusion Films' reported tax information for the calendar years 2012, 2013, and 2014 are accurate and not subject to changes assumed by Dr. Luna (Chisvin Decl. Ex. B at p 1-2), and that the income, expenses, and net ordinary income for Little Documentary Films' LLC's operations connected to the Inclusion Films Vocational Program was substantially less than Dr. Luna opined based on the combined tax filing of the Vocational Program and the Joey Travolta Film Camps programs, and as supported by the general ledgers for both entities (Chisvin Decl. Ex. C at pp. 2-3).

## III.   Defendants' Rebuttal Experts Properly Rebut the Opinions of Plaintiffs' Initial Experts.

Pursuant to Rule 26(a)(2)(D)(ii), "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party"

1    a party may disclose their testifying rebuttal experts "after the other party's

2    disclosure."  "The function of rebuttal is to explain, repel, counteract or disprove

3    evidence of the adverse party," and the decision to admit rebuttal testimony "is

4    entrusted to the sound discretion of the district court."  *United States v. Lamoreaux*,

5    422 F.3d 750, 755 (8th Cir. 2005) (citing *United States v. Luschen*, 614 F.2d 1164,

6    1170 (8th Cir. 1980)).  "The proper function of rebuttal evidence is to contradict,

7    impeach or defuse the impact of the evidence offered by an adverse party."  *Peals v.*

8    *Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008).  Only "[w]here a party

9    attempts to designate as a 'rebuttal' expert someone whose proposed testimony is

10   beyond the scope of appropriate rebuttal," and instead provides opinions on separate

11   topics and issues, should the improperly labeled "rebuttal expert" be disclosed.  *See*

12   *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 18 (D.D.C. 2013).

13         Here, as clearly outlined above, Defendants' rebuttal experts offered opinion

14   testimony clearly designed to "contradict or rebut evidence on the same subject

15   matter" set forth in the expert opinions of Plaintiffs' corresponding experts.  The

16   witnesses disclosure at the rebuttal expert deadline was timely, and their reports

17   should not be excluded.  These experts were disclosed a month before the discovery

18   cutoff, providing Plaintiffs ample opportunity to cure any claimed surprise at a

19   rebuttal to their proffered expert opinions.  Indeed, as the party with the burden of

20   proof on their claims, Plaintiffs should not be surprised that Defendants offered

21   expert opinion limited to rebutting the expert evidence first identified by Plaintiffs.

22   **IV.    Plaintiffs' Challenges to the Opinions of the Experts are Insufficient to**

23   **Exclude their Testimony.**

24         A.    <u>Expert Helfant.</u>

25         Plaintiffs challenge Mr. Helfant's opinion on the basis of his alleged lack of

26   expertise in comparing literary works, his reliance on widely available internet

27   sources to support his conclusion that Wolf copied text in her claimed works from

28

---

*Wolf v. Travolta, et al.*                    4              **OPPOSITION TO PLAINTIFFS'**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                **MOTION *IN LIMINE* NO. 3**

94,046v1

third party sources, and a supposed lack of detail supporting his opinions.  None of these should preclude the jury from hearing Mr. Helfant's testimony.

First, Plaintiffs' challenge under *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 835 (C.D. Cal. 2010) to Mr. Helfant's experience in comparing textual works of the nature is either completely inapplicable to this case, or would apply equally to Plaintiffs' expert Mr. Coupe.  In Gable, the Court recognized that although Mr. David Nimmer (the author of Nimmer on Copyright) was an expert on copyright law, he did not demonstrate experience in performing a "literary analysis of two fiction works" that would analyze the "substantial similarity in the objective elements of theme, plot, dialogue, characters, sequence of events, mood, pace, and setting between" the works at issue in that case.  *Gable*, 727 F. Supp. 2d at 833. Here, Mr. Helfant also establishes his expertise in copyright law, but his analysis of substantial similarity does not look at literary elements in different screenplays for television shows, but at direct textual comparisons between relatively short non-fiction documents.  *See, e.g.*  Chisvin Decl. Ex. A at 13-17 (discussing verbatim language in Wolf's claimed works and third party documents); 19-20 (discussing differences in language between Wolf's claimed works and Defendants' works section by section).  Moreover, Mr. Helfant's expertise includes substantial legal experience in (1) the motion picture industry (*i.e.* works relying on screenplays) as counsel for Sony Pictures Entertainment, The Walt Disney Studios, Paramount Pictures Corporation, Spyglass Entertainment, and 20th Century Fox, Senior Vice President of Paramount Pictures Corporation, and (2) the recording industry (*i.e.* works relying on lyrical compositions) "representing producers, recording artists, music publishing companies," head of "Music Business and Legal Affairs Department," "advised and counseled filmmakers and creative executives regarding production music and chain of title," "outside music counsel for The Weinstein Company."  Chisvin Decl. Ex. A pp. 3-5. Mr. Helfant's experience demonstrates sufficient expertise to be able to compare the relatively straightforward works at

*Wolf v. Travolta, et al.*                                          5                         **OPPOSITION TO PLAINTIFFS'**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                             **MOTION *IN LIMINE* NO. 3**

94,046v1

1  issue, at least equal to the qualifications of Mr. Coupe, whose prior experience

2  appears to be directed towards screenplays, and recent experience is in production

3  disputes, neither of which encompass educational program designs such as the

4  works at issue in this case.  Gebelin Decl. Ex. A, p.3-4, 22.

5      Plaintiffs' challenge to the sufficiency of the specific opinions stated by Mr.

6  Helfant are not issues for exclusion of his testimony, but instead grounds to

7  challenge whether the jury should accept his conclusions.  Weaknesses in the factual

8  basis of an expert witness' opinion "bear on the weight of the evidence rather than

9  on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224 F3d 797, 801 (6th Cir.

10 2000) (emphasis added; internal quotes omitted); *see also Amorgianos v. National*

11 *R.R. Passenger Corp.*, 303 F3d 256, 267 (2nd Cir. 2002); *Bocanegra v. Vicmar*

12 *Services, Inc.*, 320 F3d 581, 589 (5th Cir. 2003). Even if an expert's testimony may

13 be tentative or even speculative does not mean it must be excluded, instead the

14 evidence may be admitted so long as opposing counsel has an opportunity to attack

15 the expert's credibility.  *Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F3d 15, 22-

16 23 (1st Cir. 1994).  None of the challenges to the specific opinions of Mr. Helfant

17 demonstrate that there is no factual basis for the opinion, but that Plaintiffs disagree

18 with the opinions and conclusions.

19      B.    *Experts Brandon and Richman.*

20      Plaintiffs challenge Plaintiffs challenge the sufficiency of the limited opinions

21 stated by Defendants' Economic Experts based on supposed incomplete opinions.

22 However these too are not issues for exclusion of expert testimony, but instead

23 grounds to challenge whether the jury should accept their limited conclusions.

24 Weaknesses in the factual basis of an expert witness' opinion "bear on the weight of

25 the evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224

26 F3d 797, 801 (6th Cir. 2000) (emphasis added; internal quotes omitted); *see also*

27 *Amorgianos v. National R.R. Passenger Corp.*, 303 F3d 256, 267 (2nd Cir. 2002);

28 *Bocanegra v. Vicmar Services, Inc.*, 320 F3d 581, 589 (5th Cir. 2003). Even if an

*Wolf v. Travolta, et al.*                                        6                    **OPPOSITION TO PLAINTIFFS'**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                                **MOTION *IN LIMINE* NO. 3**

94,046v1

expert's testimony may be tentative or even speculative does not mean it must be excluded, instead the evidence may be admitted so long as opposing counsel has an opportunity to attack the expert's credibility. *Newell Puerto Rico, Ltd. v. Rubbermaid Inc.*, 20 F3d 15, 22-23 (1st Cir. 1994).  None of the challenges to the specific opinions of Mr. Helfant demonstrate that there is no factual basis for the opinion, but that Plaintiffs disagree with the opinions and conclusions.of the internet documents and argue that it would be impossible to lay proper foundation for their admission at trial without actually identifying each document and the supposed foundational problems for those documents.  Motion at 8:13-9:22.

Mr. Brandon has been a certified CPA since 1979 and based on that professional experience and the related experience set forth in his rebuttal report prepared the tax returns for Inclusion Wear at issue in his rebuttal opinion.  Chisvin Decl. Ex. B, page 1, 4.  In addition, Mr. Brandon has testified in numerous cases as an expert accountant.  Id. page 5.  His expertise to render his opinion that the tax retuns are accurate representations of the net income of Inclusion Wear and the resulting distribution of profits to Mr. Travolta is clearly within that expertise.

Ms. Richman has been a certified CPA since 1986 and based on that professional experience actually prepared the accounting documents and tax returns for Little Documentary Films, LLC.  Based on that experience, and the records produced with her report, Ms. Richman is more than qualified to present an opinion regarding the net profits for the Inclusion Films Vocational Program portion of Little Documentary Films, LLC, as opposed to the portion of that company keeping separate books and operating a separate business.

**V.    Conclusion.**

Plaintiffs' Rebuttal Witnesses provide only proper rebuttal testimony to Plaintiffs' Experts.  There is no legitimate reason to exclude their rebuttal testimony, and Plaintiffs may challenge their conclusions and opinions at trial. Plaintiffs

*Wolf v. Travolta, et al.*                              7                    **OPPOSITION TO PLAINTIFFS'**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                    **MOTION *IN LIMINE* NO. 3**

94,046v1

1  Motion *in Limine* Number 3 to exclude Defendants' Rebuttal Experts should be

2  denied in its entirety.

3

4  Dated: January 11, 2016                  Respectfully submitted,

5                                           **RAINES FELDMAN LLP**

6

7                                           By:  /s/

8                                           STEVEN T. GEBELIN

9                                           JOHN S. CHA

10                                          Attorneys for Defendants JOSEPH "JOEY"

11                                          TRAVOLTA, d/b/a INCLUSION FILMS,

12                                          INCLUSION WEAR, LLC, and LITTLE

13                                          DOCUMENTARY FILMS, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Wolf v. Travolta, et al.*                        8              **OPPOSITION TO PLAINTIFFS'**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                  **MOTION *IN LIMINE* NO. 3**

94,046v1

**JOHN S. CHA, ESQ. (SBN 129115)**
jcha@raineslaw.com
**STEVEN T. GEBELIN (SBN 261507)**
sgebelin@raineslaw.com
**RAINES FELDMAN LLP**
9720 Wilshire Boulevard, 5th Floor
Beverly Hills, California 90212
Telephone:  (310) 440-4100
Facsimile:    (424) 239-1613

Attorneys for Defendants JOSEPH "JOEY"
TRAVOLTA, d/b/a INCLUSION FILMS,
INCLUSION WEAR, LLC, and LITTLE
DOCUMENTARY FILMS, LLC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA WOLF,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOSEPH "JOEY" TRAVOLTA, *et al.*<br><br>          Defendants. | **CASE NO. 14-CV-00938-CAS (VBKx)**<br>[Hon. Christina A. Snyder]<br>[Courtroom 5-2nd Floor]<br><br>Action Filed:      February 6, 2014<br>4AC Filed:         August 5, 2015<br>Trial Date:         February 9, 2016<br><br>**DECLARATION OF STEVEN T. GEBELIN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* NO. 3**<br><br> **DATE: February 1, 2016**<br>**TIME: 11:00 A.M.**<br>**DEPT.: Court Room 5** |

I, STEVEN T. GEBELIN, declare as follows:

1.    I am an attorney at law, duly licensed to practice before all courts of the State of California.  I am an associate at the law firm Raines Feldman, LLP, counsel of record in this matter for Defendants JOSEPH "JOEY" TRAVOLTA, d/b/a INCLUSION FILMS, INCLUSION WEAR, LLC, and LITTLE DOCUMENTARY FILMS, LLC ("Defendants").  I make this Declaration in support of **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**.  Based on a review of the case file for this matter and my personal knowledge, I have knowledge of all of the facts contained in this Declaration and, if called as a witness, I could and would competently testify to all said facts.

2.    Attached hereto as Exhibit A is a true and accurate copy of the Expert Report of James Coupe, Esq., served by Plaintiffs' Counsel on September 30, 2015.

3.    Attached hereto as Exhibit B is a true and accurate copy of the Expert Report of Dr. Barbara Luna, served by Plaintiffs' Counsel on September 30, 2015.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 11th day of January 2016 at Beverly Hills, California.

_____

By:   Steven T. Gebelin

# EXHIBIT A

**DR. ALISA WOLF, ET AL. V. JOSEPH TRAVOLTA, ET AL.**

**U.S. District Court, Central District of California, Case No. 14-CV-00938-CAS (VBK)**

**EXPERT REPORT OF JAMES COUPE, ESQ.**

**September 30, 2015**

*CONFIDENTIAL* – FOR USE IN THIS LITIGATION ONLY

# DR. ALISA WOLF

# V.

# JOSEPH TRAVOLTA, ET AL.

U.S. District Court, Central District of California,
Case No. 14-CV-00938-CAS (VBK)

**EXPERT REPORT OF DR. BARBARA C. LUNA**

**September 30, 2015**

*CONFIDENTIAL – FOR USE IN THIS LITIGATION ONLY*

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                    *Expert Report of Dr. Barbara C. Luna*

# Table of Contents

1- Background and Qualifications ........................................................................... 1

2- Assignment .................................................................................................... 1

3- Information Relied Upon ................................................................................. 2

4- Background of the Case .................................................................................. 3

5- Dr. Wolf's Copyrighted Works ........................................................................ 4

6- Travolta Entities ............................................................................................ 5

7- Damage Claims .............................................................................................. 7

8- Plaintiffs' Damages ........................................................................................ 7

     8.1- Travolta and Related Entities' Infringing Revenue ...................................... 8

     8.2- Net Profit Margin ...................................................................................... 9

     8.3- Unjust Enrichment ................................................................................... 12

     8.4- Alternative Scenario Based on Gross Profit Margin ................................... 13

9- Rebuttal Report ........................................................................................... 15

10 - Conclusion and Testimony .......................................................................... 16

## 1- BACKGROUND AND QUALIFICATIONS

I am a Senior Partner with the accounting and litigation services firm of White, Zuckerman, Warsavsky, Luna & Hunt ("White Zuckerman").  My practice focuses on accounting, financial analysis, fraud investigation, damages analysis and business valuation issues relating to liability and damages in litigation matters.  I have been retained, and testified, as an expert witness on numerous occasions.  I have opined on financial analysis, fraud investigation, economic damages and business valuation in litigation matters many times.

I have an M.S. and a Ph.D. in Applied Math from Harvard University and a B.A. from Wellesley College.  I am a CPA, a Certified Fraud Examiner, Certified in Financial Forensics, a Master Analyst in Financial Forensics, an Accredited Senior Appraiser in Business Valuation, a Certified Valuation Analyst and Accredited in Business Valuation, and have additional certifications.  I have testified as a forensic accounting, valuation and damages expert witness over 500 times at trials and arbitrations and well over 500 times at depositions during the past 30 years.  A copy of my current curriculum vitae is attached to the report as Appendix 1.  Listings of my trial and deposition testimony for the past four years to the best of my recollection are attached to my report as Appendix 2.  A listing of my publications and articles for the past ten years is attached to the report as Appendix 3.

Fees for my firm, White Zuckerman, for this report and analysis range from $125 per hour to $495 per hour depending on the level of experience of personnel.  My fees for time spent testifying at trial and deposition are $495 per hour.  Our compensation is not contingent upon the contents or provisions of my testimony, or upon any outcomes or court proceedings.  I have no interest, either present or contemplated, in the parties or claims in the Action on which the report, analysis and testimony may be based.

## 2- ASSIGNMENT

I have been engaged by Dr. Alisa Wolf and Actors for Autism ("AFA") to provide expert testimony in *Alisa Wolf, et al v. Joseph Travolta, et al.*, United States District Court for the Central District of California, case no. 14-CV-00938-CAS(VBKx) (the "Action").  Specifically, Dr. Wolf has asked me to calculate damages due and owing to her and AFA because of the alleged infringement by Defendants of U.S. Copyright Reg. No. TX006421919 and Dr. Wolf's

derivative work created in September 2006 and for which she is awaiting copyright registration (collectively herein, the "copyrights"), and because of Defendants' liability on AFA's state law claims.  I have no opinions as to ownership, validity, enforceability, or infringement of the copyrights, or the liability of Defendants for AFA's claims.  For the purposes of completing my analysis and preparing this report, however, I have assumed that Dr. Wolf owns the copyrights, that they are valid and enforceable, and that Defendants are liable for infringement of them and for AFA's state law claims.

I was retained specifically to:

a) Determine the damages suffered by Wolf in the Action for: (1) copyright infringement (2) unfair competition; (3) interference with economic relationships; (4) breach of fiduciary duty; (5) misappropriation of trade secrets; and (6) conversion.

b) Analyze and critique the report of Defendants' Expert(s), and prepare rebuttal reports, if necessary;

c) Supplement my report as necessary for additional information provided after the date of my report and update my report accordingly; and

d) Provide expert testimony on my findings.

## 3- INFORMATION RELIED UPON

In connection with the preparation of my report, I, or individuals working under my supervision, reviewed numerous documents produced in this case, as well as, publicly available information deemed pertinent to my analysis.  My analysis and conclusions are based on the information available and discovered to date. If additional relevant documents or other information subsequently become available, I will update my analysis and this report and any rebuttal report as appropriate.

Exhibit A of this report contains a list of materials utilized in forming my opinions and conclusions.

# 4- BACKGROUND OF THE CASE[1]

Plaintiff Dr. Wolf has a Bachelor's Degree in Psychology, a Master's Degree in Special Education, a Doctorate in Education plus extensive additional education, training and certifications to work with and design educational and vocational programs for people with developmental disabilities. Dr. Wolf is the founder and Chief Executive Officer of AFA, a non-profit organization, which was formed to seek grants and funding in order to provide educational and vocational training programs, including a course on filmmaking, specifically designed for young people on the autism spectrum or with special needs. AFA programs include filmmaking, animation, Claymation, dance, music, video game design, performing arts academy and vocational training in filmmaking. Dr. Wolf entered, or planned to enter, into a License Agreement with AFA to offer her programs and curriculum. In addition to the AFA, Dr. Wolf also served as the Director of Program Development for PAUSE4kids, a non-profit organization advocating for children with special needs. Dr. Wolf uses her specialized background, knowledge, and expertise to develop and write her own program designs and curriculum for the education and vocational training of young people with disabilities.

Defendant Joseph Travolta ("Travolta") is in the business of offering vocational training programs for young people with autism and other specials needs through his fictitious business name "Inclusion Films," and his entities defendants Inclusion Wear, LLC and Little Documentary Films, LLC. Travolta also served as the President of AFA, but not a teacher of AFA programs, briefly in 2006.

In 2006, Dr. Wolf and AFA sought to obtain vendorization with the Frank D. Lanterman Regional Center for AFA acting classes for students with disabilities. "Vendorization" is the process for California regional center identification, selection, and utilization of service providers based on the qualifications and other requirements necessary in order to provide services to consumers. The vendorization process allows regional centers to verify, prior to the provision of services to consumers, that an applicant meets all of the requirements and standards specified in regulations.[2] By obtaining vendorization, regional centers of the

---

[1] Based on information from the Verified Third Amended Complaint and Fourth Amended Complaint.

[2] State of California Department of Development Services website: http://www.dds.ca.gov/Rates/Vendor_FAQ.cfm. September 23, 2015.

Department of Developmental Services ("DDS") grant government funding to entities that offer programs that meet their qualifications.  In 2006, Dr. Wolf, Travolta, Karen Ingram (Lanterman Regional Center Director of Community Services) and Diane Anand (Lanterman Regional Center Executive Director), met and discussed AFA offering a program and curriculum for young people and an additional practical filmmaking program for adults on the autistic spectrum.  On April 1, 2006, Dr. Wolf's original practical filmmaking program was vendored with the Lanterman Regional Center, and AFA received approval for $10,000 per month in the first year of its program.[3]  At this point, Travolta volunteered to serve as the liaison between AFA and the Lanterman Regional Center, and AFA appointed him to serve as such.

In early May 2006, Dr. Wolf revised her practical filmmaking curriculum and program design under the title "Practical Film Vocational Program" and she registered it with the United States Copyright Office on August 11, 2006.[4]  Dr. Wolf subsequently submitted her program to Ms. Ingram, who stated some further revisions were needed for compliance with Title 17 of the California Code of Regulations, which was required by the DDS for vendorization.  Dr. Wolf made the requested revisions and re-submitted her revised program design dated September 5, 2006 to the Lanterman Regional Center.[5]

In July 2006, Travolta was asked to resign as President of AFA.  Following his resignation, he removed various organizational equipment, including equipment that contained Dr. Wolf's copyrighted program designs and curriculum.  Subsequently, Dr. Wolf submitted her revised September 2006 program design to the Lanterman Regional Center, but she was informed that the Lanterman Regional Center would instead be contracting with Travolta for a similar program.  Dr. Wolf was not aware at the time that Travolta was using her copyrighted program and curriculum to solicit business from the regional centers.

## 5- DR. WOLF'S COPYRIGHTED WORKS

The copyrighted works at issue in this matter are two separate program designs and curriculum for teaching filmmaking to people with developmental disabilities.  The original

---

[3] April 23, 2006 letter from Ms. Ingram.

[4] U.S. Copyright Office Certificate of Registration No. TX 6-421-919.

[5] Revised proposal is titled "Actors for Autism Practical Film Program Proposal."

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                    *Expert Report of Dr. Barbara C. Luna*

program design was created in May 2006, and its derivative and the longer program design
was created in September 2006.   In early 2006, Dr. Wolf wrote a draft practical filmmaking
program design and curriculum with the goal of obtaining vendorization for AFA and, thus
compensation from the Regional Centers, to provide the program and curriculum through AFA
to people with developmental disabilities.  On March 23, 2006, Dr. Wolf submitted her program
design and curriculum to Lanterman Regional Center seeking vendorization.  On April 1, 2006,
the program received vendorization from Lanterman Regional Center.  In May 2006, Dr. Wolf
authored a revised design and curriculum for the AFA filmmaking program.[6]  This program
design was registered with the United States Copyright Office on August 11, 2006.[7]  Dr. Wolf's
program and curriculum was further revised in September 2006 as part of discussion with the
Lanterman Regional Center in order to meet regulations within Title 17 of the California Code
of Regulations pertaining to the DDS.  This revised program was labeled with the copyright
symbol "©" after Dr. Wolf's name[8].  It is these latter two copyrighted program designs that
Defendants have allegedly infringed and continue to infringe by offering classes and training
camps through their entities that have been vendorized by several California Regional Centers,
who receive their funding from the DDS.

## 6- TRAVOLTA ENTITIES

When Dr. Wolf first met Travolta, he was working with The Entertainment Experience.
Travolta then joined Dr. Wolf at AFA serving as its President, a member of the AFA board of
directors, and the AFA representative negotiating with the Lanterman Regional Center, until he
was asked to resign on July 11, 2006.  Following his resignation, Travolta began using Dr.
Wolf's copyrighted program and curriculum to seek vendorization with the Lanterman Regional
Center and various other regional centers of the DDS.  It is not known in what legal capacity
Travolta conducted business prior to January 1, 2008, when Little Documentary Films, LLC
began operations.[9]  Travolta and his wife, Wendy Travolta, are 50/50 owners of Little

---

[6] The Practical Film Vocational Program for People with Developmental Disabilities (Program Service Design) dated May 10, 2006.

[7] Certificate of Registration No. TX 6-421-919 dated August 11, 2006.

[8] Actors for Autism Practical Film Program Proposal dated September 5, 2006.

[9] Per Little Documentary Films, LLC's U.S. Tax Returns.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                    *Expert Report of Dr. Barbara C. Luna*

Documentary Films.[10]  Travolta also established Inclusion Wear, LLC, which was incorporated on February 22, 2011[11], and he serves as its sole owner.  Defendants are also doing business as "Inclusion Films."  It is through these entities, and possibly others, that Travolta is offering his version of Dr. Wolf's copyrighted program and curriculum.  Inclusion Films has also partnered with an entity called Futures Explored to offer a version of Dr. Wolf's copyrighted program and curriculum to customers in the San Francisco Bay and Sacramento California areas.  The full extent of Defendants' involvement in Futures Explored is not currently known, but evidence, including an unsigned Memorandum of Understanding, suggests that one or more of the Defendants may have licensed their competing design to Futures Explored.

Information obtained from the DDS indicates that approximately $7.2 million has been paid to Travolta and his associated entities from January 1, 2007, through approximately July 6, 2015.[12]  DDS receives these financial figures from all regional centers that contract with the Defendants and pay them revenue. I am informed and believe that, from 2007 to the present, the Defendants' sole source of revenue is from offering their competing version of AFA and Dr. Wolf's practical filmmaking program.

I am also informed from Plaintiffs' complaints that to provide for-profit services to customers, Defendants must first become vendorized with the California Regional Center system.  To become vendorized, California law requires Defendants to submit a program design that must be approved by a regional center as part of the contracting process.  Only after the regional center has approved the program design and a party has met other state requirements, may that party begin offering services to customers at rates that are paid by the regional centers.  In other words, my determination of Defendants' revenue and net profits from 2007-2015 is premised on the fact that they have submitted infringing copies of Dr. Wolf's copyrighted works to the Regional Centers in exchange for approval of their infringing program design and the state-sanctioned ability to charge for operating their competing program based thereon. I also base my opinion on the fact that all of Defendants' revenues from 2007-2015

---

[10] 2011 – 2014 Little Documentary Films, LLC U.S. Return of Partnership Income.

[11] Inclusion Wear, LLC is an S-Corporation.  It is unknown when the LLC began operations, but was incorporated on February 22, 2011.

[12] Letter from DDS staff attorney and Excel spreadsheet prepared by the California Department of Developmental Services dated July 6, 2015.

have come from sale of their competing program.  I am not aware that defendants have any other sources of revenue during that period.

## 7- DAMAGE CLAIMS

Plaintiff Dr. Wolf is seeking damages for alleged claims of Copyright Infringement of her copyrighted works.  AFA is seeking damages for alleged claims of Unfair Competition, Interference with Economic Relationship, Breach of Fiduciary Duty, Misappropriation of Trade Secrets, and Conversion.

## 8- PLAINTIFFS' DAMAGES

My opinions of the Plaintiffs' damages in this case are based solely on a "net profits" calculation and do not take into account any potential "actual" damages under copyright law that the trier of fact may award.  My opinions concerning damages are also based on an unjust enrichment theory of damages awardable on all claims, both Dr. Wolf's copyright infringement claims and AFA's state law claims.  As previously discussed, Travolta has allegedly infringed on Dr. Wolf's copyrighted program designs and curriculum by using them to become vendorized and then offering a competing program for his own financial gain.  I have prepared an analysis addressing Dr. Wolf's damages based on Travolta and his related entities' unjust enrichment derived from using Dr. Wolf's copyrighted works.  I have also prepared an alternative analysis based on a finding of willful copyright infringement that excludes defendants' potential deduction of overhead and taxes.  My damages are discussed below and my calculations and analysis are attached as Exhibit B to this report.

My opinions of Dr. Wolf's damages in this case are based on all of Defendants' gross revenue at issue being attributable to their alleged copyright infringement. Further, my analysis and opinions concerning damages and net profits are subject to revision and supplementation, because Plaintiffs' damages are ongoing.

Further, our analysis of Plaintiffs' damages are incomplete at this time because we were unable to review Defendants' tax returns from 2007-2010 and were unable to review Inclusion Wear's 2011 K-1s, Little Documentary Films' 2011-2013 K-1s, both entities' detailed ledgers for 2011-2015, and all of the entities' profit and loss statements.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                    *Expert Report of Dr. Barbara C. Luna*

### 8.1- *Travolta and Related Entities' Infringing Revenue*

In assessing the revenue Travolta and his related entities have received from infringing Dr. Wolf's copyrighted program designs and curriculum, we analyzed several sources of information produced.  We were provided with the following information for limited periods:

- U.S. Tax Returns for Inclusion Wear for 2012 through 2014;
- U.S. Tax Returns for Little Documentary Films for 2011 through 2014;
- Internal profit and loss statements for Little Documentary Films for 2009 and 2011 through 2014.  2010 was not produced;
- 1099 forms for Inclusion Films for 2012 through 2014;
- 1099 forms for Little Documentary Films for 2009 and 2011 through 2014.  2010 forms were not produced;
- Information from the DDS regarding vendorization amounts paid to Travolta and related entities for January 1, 2007 through July 6, 2015.

However, none of these sources of financial information are in agreement.  Table 1 below summarizes by year the reported revenue received by Travolta and/or his related entities.

### Table 1 – Comparison of Revenue from Various Sources[13]

|  | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|
| *U.S. Tax Returns* | | | | | | | | | |
| Little Documentary Films | n/a | n/a | n/a | n/a | $546,203 | $558,602 | $507,962 | $494,494 | n/a |
| Inclusion Films | n/a | n/a | n/a | n/a | | 426,193 | 505,306 | 616,921 | n/a |
| Total | $0 | $0 | $0 | $0 | $546,203 | $984,795 | $1,013,268 | $1,111,415 | $0 |
| | | | | | | | | | |
| *Profit and Loss Statements* | | | | | | | | | |
| Little Documentary Films | n/a | n/a | $398,853 | n/a | $257,551 | $270,070 | $216,885 | $128,547 | n/a |
| Inclusion Films | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| Total | $0 | $0 | $398,853 | $0 | $257,551 | $270,070 | $216,885 | $128,547 | $0 |
| | | | | | | | | | |
| *Form 1099s* | | | | | | | | | |
| Little Documentary Films | n/a | n/a | $396,853 | n/a | $305,938 | $229,966 | $171,030 | $195,000 | n/a |
| Inclusion Films | n/a | n/a | n/a | n/a | n/a | 394,393 | 505,306 | 544,736 | n/a |
| Total | $0 | $0 | $396,853 | $0 | $305,938 | $624,359 | $676,336 | $739,736 | $0 |
| | | | | | | | | | |
| *Department of Developmental Services* | $67,969 | $570,724 | $937,468 | $948,265 | $720,771 | $711,062 | $839,597 | $1,104,615 | $1,294,732 |

---

[13] See Exhibit B Schedule 1.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                                    *Expert Report of Dr. Barbara C. Luna*

It should be noted that for 2009 and 2011, the revenue reported by the DDS, which is an independent third party, is significantly higher than the data provided directly from Travolta.

In assessing the infringing revenue received by Travolta and related entities from infringing Dr. Wolf's copyright, we have relied on the information provided by the DDS, which reports total amounts paid to Travolta and related entities from January 1, 2007 through July 6, 2015 of $7,195,203.  In addition, for years 2012 through 2014, the revenue reported on the U.S. Tax Returns for Inclusion Wear/Inclusion Films and Little Documentary Films was greater than that reported by the DDS by $438,246.  Therefore, this $438,246 excess amount is considered additional infringing revenue over and above any amounts received by Travolta and his related entities from the DDS.

Total infringing revenue from January 1, 2007 through July 6, 2015 is $7,633,449.  See Table 2 below for the Travolta and related entities infringing revenue by year.  This is also summarized on the Summary of Exhibit B.

## Table 2 – Infringing Revenue[14]

| Year | DDS Revenue | Additional Revenue | Total Revenue |
|------|-------------|--------------------|---------------|
| 2007 | $67,969 | $0 | $67,969 |
| 2008 | 570,724 | 0 | 570,724 |
| 2009 | 937,468 | 0 | 937,468 |
| 2010 | 948,265 | 0 | 948,265 |
| 2011 | 720,771 | 0 | 720,771 |
| 2012 | 711,062 | 273,733 | 984,795 |
| 2013 | 839,597 | 157,713 | 997,310 |
| 2014 | 1,104,615 | 6,800 | 1,111,415 |
| 2015 | 1,294,732 | 0 | 1,294,732 |
| Total | $7,195,203 | $438,246 | $7,633,449 |

### 8.2- Net Profit Margin

In determining the Travolta and related entities' unjust enrichment from infringing Dr. Wolf's copyrighted works, we have utilized a net profit margin before owner's compensation

---

[14] See Exhibit B Schedule 1.

and benefits, when identified.  In some instances, an incremental profit margin is more appropriate, since an incremental profit margin only considers expenses that are variable, or incremental, in comparison with changes in revenue.  However, in this case, all of the revenue received by Travolta and related entities was derived from infringing Dr. Wolf's copyrighted programs and curriculum through submission of the Defendants' infringing work to the regional centers and Futures Explored as part of the vendorization process.  Therefore, all revenue is at issue and accordingly, all costs before owner's compensation and benefits are ultimately variable.  This results in a conservative measure of damages.

The financial information provided for Inclusion Wear/Inclusion Films and Little Documentary Films is primarily summary financial information from U.S. Tax Returns.  We reviewed this summary financial information and noted that we are unable to determine if Travolta, or his wife, received any wages, compensation or perquisites from these entities.  There are some expense items that warrant further scrutiny, i.e. personnel costs, labor, travel, outside services, etc.,[15] and we will address these issues should additional financial information be produced by Defendants.  As previously noted, no information was produced by the Defendants prior to 2011.  In addition, we obtained industry financial information for years 2011 through 2015, [16] which shows comparative profit and loss, balance sheet, and profitability data for the industry.

In determining an appropriate net profit margin, the profit margin should be before subtraction of any compensation and benefits received by Travolta, or his wife, from the related entities.  Therefore, the net profit margin from these entities includes any potential compensation and benefits to Travolta.  This is an appropriate profit margin since any compensation and benefits paid to Travolta, and/or his wife, should be considered in any calculation of unjust enrichment; they have benefited personally from the infringement.  As discussed above, however, the compensation and benefits received by Travolta, and/or his wife, are not separately broken out, so future adjustments may be necessary to our calculations once this information is provided.

---

[15] See Exhibit B Schedules 5, 7 and 8.

[16]  Prime Industry Reports.  SIC code 8331: Job Training and Vocational Rehabilitation Services.

Table 3 below illustrates the net profit margins for Inclusion Wear/Inclusion Films and Little Documentary Films based on their U.S. Tax Returns and also Little Documentary Films based on its profit and loss statements for the years information was produced.  In addition, net profit margins from industry data are shown.  For the industry data, owner compensation has been added to the net profit margin to derive a net profit margin that includes officer compensation.

The net profit margins for Little Documentary Films from its profit and loss statements is materially lower than the net profit margins reported in U.S Tax returns.  They are also materially lower than the net profit margins for Inclusion Wear/Inclusion Films and the industry net profit margins.  Therefore, for years 2011 through 2015, we utilized an average net profit margin based on the U.S. Tax Returns and Industry data for those years.  For years 2007 through 2010, the period that no data was produced, we utilized the average net profit margin for 2011 through 2015.

The average net profit margin before owner's compensation and benefits utilized for the damage period January 1, 2007 through July 6, 2015, is 30.3%.[17] This net profit margin is applied to the infringing revenue to determine the Travolta and related entities' unjust enrichment for each respective year.  As shown below, the net profit margins from the industry data and U.S. Tax Returns for Inclusion Wear and Little Documentary Films are fairly consistent.

---

[17] See Exhibit B Summary.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                                    *Expert Report of Dr. Barbara C. Luna*

**Table 3 – Net Profit Margin[18]**

|       | U.S. Tax Returns | | Profit & Loss Statements | | | |
|-------|-----------------------|----------------------------|-----------------------|----------------------------|------------------|---------|
| Year  | Inclusion Wear/Films | Little Documentary Films | Inclusion Wear/Films | Little Documentary Films | Industry Data | Average |
| 2007  | n/a   | n/a   | n/a   | n/a    | n/a    | 30.2%  |
| 2008  | n/a   | n/a   | n/a   | n/a    | n/a    | 30.2%  |
| 2009  | n/a   | n/a   | n/a   | 26.0%  | n/a    | 30.2%  |
| 2010  | n/a   | n/a   | n/a   | n/a    | n/a    | 30.2%  |
| 2011  | n/a   | 27.0% | n/a   | 23.8%  | 32.0%  | 29.5%  |
| 2012  | 30.0% | 33.7% | n/a   | 11.2%  | 32.2%  | 31.9%  |
| 2013  | 24.8% | 28.2% | n/a   | 13.3%  | 30.8%  | 27.9%  |
| 2014  | 23.3% | 41.1% | n/a   | 3.8%   | 30.5%  | 31.7%  |
| 2015  | n/a   | n/a   | n/a   | n/a    | 30.2%  | 30.2%  |

## 8.3- Unjust Enrichment

I have determined damages for Travolta and related entities' alleged infringement of Dr. Wolf's copyrighted program and curriculum based on unjust enrichment. Damages cover the period January 1, 2007 through July, 6, 2015. As previously discussed, total alleged infringing revenue is $7,633,449, and the average net profit margin over the period is 30.3%. This results in total unjust enrichment damages of $2,310,732. I have also determined prejudgment interest on total unjust enrichment damages of $4,584[19]. Total damages for unjust enrichment and prejudgment interest are $2,315,316. This calculation of unjust enrichment and prejudgment interest, by year, is detailed in Table 4 below.

---

[18] See Schedule 3 of Exhibit B.

[19] Prejudgment interest is compounded annually based on the average annual 1-Year U.S Treasury rate.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                              *Expert Report of Dr. Barbara C. Luna*

**Table 4 – Summary of Unjust Enrichment and Prejudgment Interest Damages[20]**

| Year | Total Revenue | Net Profit Margin | Unjust Enrichment | Prejudgment Interest | Total |
|------|--------------|-------------------|-------------------|---------------------|-------|
| 2007 | $67,969 | 30.2% | $20,527 | $465 | $20,992 |
| 2008 | 570,724 | 30.2% | 172,359 | 1,586 | 173,945 |
| 2009 | 937,468 | 30.2% | 283,115 | 675 | 283,790 |
| 2010 | 948,265 | 30.2% | 286,376 | 467 | 286,843 |
| 2011 | 720,771 | 29.5% | 212,627 | 197 | 212,824 |
| 2012 | 984,795 | 31.9% | 314,150 | 273 | 314,423 |
| 2013 | 997,310 | 27.9% | 278,250 | 186 | 278,436 |
| 2014 | 1,111,415 | 31.7% | 352,319 | 216 | 352,535 |
| 2015 | 1,294,732 | 30.2% | 391,009 | 519 | 391,528 |
| Total | $7,633,449 | 30.3% | $2,310,732 | $4,584 | $2,315,316 |

## 8.4- Alternative Scenario Based on Gross Profit Margin

It is my understanding that in copyright infringement matters where the infringement is shown to be willful, the defendants are precluded from deducting their overhead and taxes from their gross revenue in calculating net profits. Therefore, I have prepared an alternative scenario based on this premise and used a gross profit margin.

In determining Defendants' gross profit margin, I have relied on the financial information provided by the Defendants, primarily the U.S. Income Tax returns. Inclusion Films did not report any cost of goods sold expenses. However, I reclassified some expenses from operating expenses to cost of goods sold expenses in order to be conservative and consistent with Little Documentary Films. I reserve the right to change my analysis should additional information be produced by Defendants. Table 5 below illustrates the gross margins for Inclusion Wear/Inclusion Films and Little Documentary Films based on their U.S. Income Tax Returns.

---

[20] See Exhibit B Summary.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                                    *Expert Report of Dr. Barbara C. Luna*

**Table 5 – Gross Profit Margin[21]**

| Year | U.S. Tax Returns | | Average |
| --- | --- | --- | --- |
| | Inclusion Wear/Films | Little Documentary Films | |
| 2007 | n/a | n/a | 54.0% |
| 2008 | n/a | n/a | 54.0% |
| 2009 | n/a | n/a | 54.0% |
| 2010 | n/a | n/a | 54.0% |
| 2011 | n/a | 52.3% | 52.3% |
| 2012 | 40.7% | 53.4% | 47.9% |
| 2013 | 52.4% | 54.6% | 53.5% |
| 2014 | 58.7% | 67.0% | 62.4% |
| 2015 | n/a | n/a | 62.4% |

Applying the gross margins determined in Table 5 above to the infringing revenue from Table 2 results in damages for Travolta and his related entities' alleged infringement of Dr. Wolf's copyrighted program and curriculum based on unjust enrichment. Damages for Alternative 1 also cover the period January 1, 2007 through July, 6, 2015. As previously discussed, total alleged infringing revenue is $7,633,449, and the average gross profit margin over the period is 55.6%. This results in total unjust enrichment damages of $4,247,012. I have also determined prejudgment interest on total unjust enrichment damages of $8,318[22]. Total damages for unjust enrichment and prejudgment interest are $4,255,330. This calculation of unjust enrichment and prejudgment interest, by year, is detailed in Table 6 below.

---

[21] See Exhibit B Schedule 3A.

[22] Prejudgment interest is compounded annually based on the average annual 1-Year U.S Treasury rate.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                                        *Expert Report of Dr. Barbara C. Luna*

**Table 6 – Alternative Summary of Unjust Enrichment and Prejudgment Interest Damages[23]**

| Year | Total Revenue | Gross Profit Margin | Unjust Enrichment | Prejudgment Interest | Total |
|------|------|------|------|------|------|
| 2007 | $67,969 | 54.0% | $36,703 | $832 | $37,535 |
| 2008 | 570,724 | 54.0% | 308,191 | 2,835 | 311,026 |
| 2009 | 937,468 | 54.0% | 506,233 | 1,207 | 507,440 |
| 2010 | 948,265 | 54.0% | 512,063 | 835 | 512,898 |
| 2011 | 720,771 | 52.3% | 376,881 | 349 | 377,230 |
| 2012 | 984,795 | 47.9% | 471,788 | 411 | 472,199 |
| 2013 | 997,310 | 53.5% | 533,129 | 355 | 533,484 |
| 2014 | 1,111,415 | 62.4% | 693,795 | 424 | 694,219 |
| 2015 | 1,294,732 | 62.4% | 808,229 | 1,070 | 809,299 |
| Total | $7,633,449 | 55.6% | $4,247,012 | $8,318 | $4,255,330 |

# 9- REBUTTAL REPORT

I have not been provided any expert reports from Defendants' expert witnesses. If I am provided any reports, I will analyze those and prepare and submit a rebuttal report to the Defendants.

---

[23] See Exhibit B Summary A.

*Dr. Alisa Wolf v. Joseph Travolta, et al.*                    *Expert Report of Dr. Barbara C. Luna*

## 10 - CONCLUSION AND TESTIMONY

This report sets forth my opinions, based on information currently available to me as of September 30, 2015. I may supplement or amend this report based upon additional pertinent information. I am prepared to testify on my findings and conclusions in this report and attached exhibits. I will be prepared to testify on any corresponding reports by Defendants' experts. In testifying at trial, I expect to use various graphics and demonstratives to describe and illustrate my testimony, including enlargements of the documents I have reviewed or relied upon as exhibits to this report and other demonstratives to be prepared in advance of trial.

Dated this 30th day of September 2015, at Sherman Oaks, California.


DR. BARBARA C. LUNA

# EXHIBIT A

Dr. Alisa Wolf v. Joseph Travolta, et al.
# Document Inventory

1. Plaintiffs' Fourth Amended Complaint;

2. Defendant Joseph Travolta's Answer to Fourth Amended Complaint;

3. Stipulated Protective Order for Production of Tax Returns;

4. Information on Payments from the California Department of Developmental Services to Joseph Travolta or related entities;

5. May 10, 2006 Certification of Registration for Practical Film Vocational Program;

6. May 10, 2006 Practical Film Vocational Program;

7. September 5, 2006 Practical Film Program Proposal;

8. Various 1099-Misc forms for Little Documentary Films for 2009 and 2011 - 2014;

9. Various 1099-Misc forms for Inclusion Films for 2012 - 2014;

10. Little Documentary Films Profit & Loss Statements for 2009 and 2011 through 2014;

11. Industry information, SIC Code 8331;

12. Treasury rates from the Federal Reserve;

13. Memorandum of Understanding between Futures Explored and Joseph Travolta.

# EXHIBIT B

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Summary of Travolta's Unjust Enrichment and Prejudgment Interest**
*Based on Net Profit Margin*

| Year | Department of Developmental Services | Additional Revenue Sources | Total Revenue | Average Net Profit Margin | Unjust Enrichment | Cumulative Unjust Enrichment | Prejudgment Interest | Total | Cumulative Total |
|------|------|------|------|------|------|------|------|------|------|
| | [1] | [1] | | [2] | | | [3] | | |
| 2007 | $67,969 | $0 | $67,969 | 30.2% | $20,527 | $20,527 | $465 | $20,992 | $20,992 |
| 2008 | 570,724 | 0 | 570,724 | 30.2% | 172,359 | 192,886 | 1,586 | 173,945 | 194,937 |
| 2009 | 937,468 | 0 | 937,468 | 30.2% | 283,115 | 476,001 | 675 | 283,790 | 478,727 |
| 2010 | 948,265 | 0 | 948,265 | 30.2% | 286,376 | 762,377 | 467 | 286,843 | 765,570 |
| 2011 | 720,771 | 0 | 720,771 | 29.5% | 212,627 | 975,004 | 197 | 212,824 | 978,394 |
| 2012 | 711,062 | 273,733 | 984,795 | 31.9% | 314,150 | 1,289,154 | 273 | 314,423 | 1,292,817 |
| 2013 | 839,597 | 157,713 | 997,310 | 27.9% | 278,250 | 1,567,404 | 186 | 278,436 | 1,571,253 |
| 2014 | 1,104,615 | 6,800 | 1,111,415 | 31.7% | 352,319 | 1,919,723 | 216 | 352,535 | 1,923,788 |
| 2015 | 1,294,732 | 0 | 1,294,732 | 30.2% | 391,009 | 2,310,732 | 519 | 391,528 | 2,315,316 |
| Total | $7,195,203 | $438,246 | $7,633,449 | 30.3% | $2,310,732 | | $4,584 | $2,315,316 | |

**Notes and Sources:**
[1]   See Schedule 1.
[2]   See Schedule 3.
[3]   Prejudgment interest is compounded annually based on the 1-Year U.S. Treasury rate and assuming a mid-period convention.  See Schedule 5 for rates.

Summary A

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Summary of Travolta's Unjust Enrichment and Prejudgment Interest**
*Based on Gross Profit Margin*

| Year | Department of Developmental Services | Additional Revenue Sources | Total Revenue | Average Gross Profit Margin | Unjust Enrichment | Cumulative Unjust Enrichment | Prejudgment Interest | Total | Cumulative Total |
|------|------|------|------|------|------|------|------|------|------|
| | [1] | [2] | | [3] | | | [4] | | |
| 2007 | $67,969 | $0 | $67,969 | 54.0% | $36,703 | $36,703 | $832 | $37,535 | $37,535 |
| 2008 | 570,724 | 0 | 570,724 | 54.0% | 308,191 | 344,894 | 2,835 | 311,026 | 348,561 |
| 2009 | 937,468 | 0 | 937,468 | 54.0% | 506,233 | 851,127 | 1,207 | 507,440 | 856,001 |
| 2010 | 948,265 | 0 | 948,265 | 54.0% | 512,063 | 1,363,190 | 835 | 512,898 | 1,368,899 |
| 2011 | 720,771 | 0 | 720,771 | 52.3% | 376,881 | 1,740,071 | 349 | 377,230 | 1,746,129 |
| 2012 | 711,062 | 273,733 | 984,795 | 47.9% | 471,788 | 2,211,859 | 411 | 472,199 | 2,218,328 |
| 2013 | 839,597 | 157,713 | 997,310 | 53.5% | 533,129 | 2,744,988 | 355 | 533,484 | 2,751,812 |
| 2014 | 1,104,615 | 6,800 | 1,111,415 | 62.4% | 693,795 | 3,438,783 | 424 | 694,219 | 3,446,031 |
| 2015 | 1,294,732 | 0 | 1,294,732 | 62.4% | 808,229 | 4,247,012 | 1,070 | 809,299 | 4,255,330 |
| Total | $7,195,203 | $438,246 | $7,633,449 | 55.6% | $4,247,012 | | $8,318 | $4,255,330 | |

**Notes and Sources:**
[1]   See Schedule 1.
[2]   See Schedule 1.
[3]   See Schedule 3A.
[4]   Prejudgment interest is compounded annually based on the 1-Year U.S. Treasury rate and assuming a mid-period convention.  See Schedule 5 for rates.

Schedule 1

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Reported Revenue from Various Sources** [1]

| | | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| *Department of Developmental Services* | [1] | $67,969 | $570,724 | $937,468 | $948,265 | $720,771 | $711,062 | $839,597 | $1,104,615 | $1,294,732 | $7,195,203 |
| *U.S. Tax Returns* | | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | [2] | n/a | n/a | n/a | n/a | n/a | $426,193 | $489,348 | $616,921 | n/a | $1,532,462 |
| Little Documentary Films | [3] | n/a | n/a | n/a | n/a | 546,203 | 558,602 | 507,962 | 494,494 | n/a | 2,107,261 |
| Total | | $0 | $0 | $0 | $0 | $546,203 | $984,795 | $997,310 | $1,111,415 | $0 | $3,639,723 |
| *Profit and Loss Statements* | | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | [4] | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | $0 |
| Little Documentary Films | [5] | n/a | n/a | 398,853 | n/a | 257,551 | 270,070 | 216,885 | 128,547 | n/a | 1,271,906 |
| Total | | $0 | $0 | $398,853 | $0 | $257,551 | $270,070 | $216,885 | $128,547 | $0 | $1,271,906 |
| *Form 1099s* | | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | [6] | n/a | n/a | n/a | n/a | n/a | $394,393 | $505,306 | $544,736 | n/a | $1,444,435 |
| Little Documentary Films | [7] | n/a | n/a | 396,853 | n/a | 305,938 | 229,966 | 171,030 | 195,000 | n/a | 1,298,786 |
| Total | | $0 | $0 | $396,853 | $0 | $305,938 | $624,359 | $676,336 | $739,736 | $0 | $2,743,221 |
| *Additional Revenue* | [8] | $0 | $0 | $0 | $0 | $0 | $273,733 | $157,713 | $6,800 | $0 | $438,246 |

**Notes and Sources:**
[1]  See Schedule 2.
[2]  See Schedule 6.
[3]  See Schedule 8.
[4]  No profit and loss statements were produced for Inclusion Wear/Inclusion Films.
[5]  See Schedule 9.
[6]  See Schedule 7.
[7]  See Schedule 10.
[8]  Calculated as reported revenue for Little Documentary Films and Inclusion Wear/Inclusion Films revenue in excess of the revenue reported by the Department of Developmental Services.  If negative, then no additional revenue.

Schedule 2

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Reported Revenue from Department of Developmental Services** [1]

| Name | Regional Center | Total | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| VTE/FUTURES EXPLORED INC. | 364-Alta California | $597,555 | | | | | | | | $213,812 | $383,744 |
| FILM WORKSHOP-FUTURES | 380-East Bay | 590,603 | | | | | | | $48,121 | 222,981 | 319,501 |
| FILM WORKSHOP-FUTURES | 377-Valley Mountain | 14,006 | | | | | | | | | 14,006 |
| INCLUSION FILMS | 360-Lanterman | 603,274 | $40,000 | $353,300 | $209,974 | | | | | | |
| INCLUSION FILMS | 375-Harbor | 33,609 | 3,334 | 14,335 | 15,940 | | | | | | |
| INCLUSION FILMS | 378-North Los Angeles | 10,000 | 2,444 | 7,556 | | | | | | | |
| INCLUSION FILMS | 379-San Gabriel-Pomona | 6,640 | 3,320 | 3,320 | | | | | | | |
| INCLUSION FILMS WORKSHOP | 373-Eastern Los Angeles | 33,053 | | | | $1,940 | $19,598 | $11,515 | | | |
| INCLUSION FILMS WORKSHOP | 360-Lanterman | 1,334,133 | | | 203,974 | 446,002 | 167,932 | 229,241 | 170,140 | 97,370 | 19,474 |
| INCLUSION FILMS WORKSHOP | 375-Harbor | 28,784 | | | 5,820 | 1,940 | 18,771 | 2,253 | | | |
| INCLUSION FILMS WORKSHOP | 378-North Los Angeles | 42,516 | | | 9,760 | 6,383 | 9,706 | | | 13,704 | 2,963 |
| INCLUSION FILMS WORKSHOP | 374-South Central LA | 7,889 | | | | | | 4,508 | 3,381 | | |
| INCLUSION FILMS WORKSHOP | 362-San Diego | 19,474 | | | | | | | | 10,058 | 9,416 |
| INCLUSION FILMS WORKSHOP | 379-San Gabriel-Pomona | 22,347 | | | | | 12,763 | 9,584 | | | |
| INCLUSION FILMS WORKSHOP | 376-Westside | 66,091 | | | | | 0 | | 37,609 | 28,482 | |
| ARTS COUNCIL OF KERN | 372-Kern | 1,977,473 | 18,871 | 192,213 | 492,000 | 492,000 | 492,000 | 290,389 | 0 | | |
| INCLUSION FILMS | 372-Kern | 1,807,757 | | | | | | 163,573 | 580,347 | 518,209 | 545,628 |
| | | $7,195,203 | $67,969 | $570,724 | $937,468 | $948,265 | $720,771 | $711,062 | $839,597 | $1,104,615 | $1,294,732 |

**Notes and Sources:**
[1]   Based on information provided by the Department of Developmental Services.

Schedule 3

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Net Profit Percentage**

| | | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|
| *U.S. Tax Returns* | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | [1] | n/a | n/a | n/a | n/a | n/a | 30.0% | 24.8% | 23.3% | n/a |
| Little Documentary Films | [2] | n/a | n/a | n/a | n/a | 27.0% | 33.7% | 28.2% | 41.1% | n/a |
| | | | | | | | | | | |
| *Profit and Loss Statements* | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | [3] | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| Little Documentary Films | [4] | n/a | n/a | 26.0% | n/a | 23.8% | 11.2% | 13.3% | 3.8% | n/a |
| | | | | | | | | | | |
| *Industry Data* | [5] | n/a | n/a | n/a | n/a | 32.0% | 32.2% | 30.8% | 30.5% | 30.2% |
| | | | | | | | | | | |
| Selected Net Profit Percentgage | [6] | 30.2% | 30.2% | 30.2% | 30.2% | 29.5% | 31.9% | 27.9% | 31.7% | 30.2% |

**Notes and Sources:**
[1]   See Schedule 6.
[2]   See Schedule 5.
[3]   No profit and loss statements were produced for Inclusion Wear/Inclusion Films.
[4]   See Schedule 9.
[5]   See Schedule 11.
[6]   For 2011 through 2015, the average net profit margin from the U.S. Tax returns and the Industry Statistics was used for each respective year.  For 2007 through 2010, the average net profit margin for 2011 through 2015 was used.

Schedule 3A

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Gross Profit Margin**

| | | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 |
|---|---|---|---|---|---|---|---|---|---|---|
| *Revenue - U.S. Tax Returns* | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | [1] | n/a | n/a | n/a | n/a | n/a | 426,193 | 505,306 | 616,921 | n/a |
| Little Documentary Films | [2] | n/a | n/a | n/a | n/a | 546,203 | 558,602 | 507,962 | 494,494 | n/a |
| | | 0 | 0 | 0 | 0 | 546,203 | 984,795 | 1,013,268 | 1,111,415 | 0 |
| *Cost of Goods Sold - U.S. Tax Returns* | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | [1] | n/a | n/a | n/a | n/a | n/a | 252,660 | 240,763 | 254,680 | n/a |
| Little Documentary Films | [2] | n/a | n/a | 0 | n/a | 260,601 | 260,347 | 230,846 | 162,940 | n/a |
| | | 0 | 0 | 0 | 0 | 260,601 | 513,007 | 471,609 | 417,620 | 0 |
| *Gross Profit* | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | | n/a | n/a | n/a | n/a | n/a | 173,533 | 264,543 | 362,241 | n/a |
| Little Documentary Films | | n/a | n/a | n/a | n/a | 285,602 | 298,255 | 277,116 | 331,554 | n/a |
| | | 0 | 0 | 0 | 0 | 285,602 | 471,788 | 541,659 | 693,795 | 0 |
| *Gross Profit Percentgage* | | | | | | | | | | |
| Inclusion Wear/Inclusion Films | | n/a | n/a | n/a | n/a | n/a | 40.7% | 52.4% | 58.7% | n/a |
| Little Documentary Films | | n/a | n/a | n/a | n/a | 52.3% | 53.4% | 54.6% | 67.0% | n/a |
| | | n/a | n/a | n/a | n/a | 52.3% | 47.9% | 53.5% | 62.4% | n/a |
| Selected Net Profit Percentgage | [3] | 54.0% | 54.0% | 54.0% | 54.0% | 52.3% | 47.9% | 53.5% | 62.4% | 62.4% |

**Notes and Sources:**
[1]   See Schedule 6.
[2]   See Schedule 8.
[3]   See Schedule 9.
[4]   For 2011 through 2014, the average cost of goods sold margin from the U.S. Tax returns was used for each respective year.  For 2007
      through 2010, the average annual net profit margin for years 2011 through 2014 was used.  For 2015, the margin for 2014 was used.

Schedule 4

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Summary of Tax Return Data** [1]

|  |  | 2011 | 2012 | 2013 | 2014 | Total |
|---|---|---|---|---|---|---|
| ***Little Documentary Films LLC*** | | | | | | |
| Revenue | | $546,203 | $558,602 | $507,962 | $494,494 | $2,107,261 |
| Net Income | | 152,510 | 189,553 | 143,942 | 207,674 | 693,679 |
| Net Income % | | 27.9% | 33.9% | 28.3% | 42.0% | 32.9% |
| | | | | | | |
| Distributions: | | | | | | |
| Joseph Travolta | 50% | $77,490 | $79,882 | $72,567 | $107,166 | $337,105 |
| Wendy Travolta | 50% | 77,485 | 79,881 | 72,567 | 107,166 | 337,099 |
| Total Distributions | | $154,975 | $159,763 | $145,134 | $214,332 | $674,204 |
| ***Inclusion Wear/Films LLC*** | | | | | | |
| Revenue | | | $426,193 | $505,306 | $616,921 | $1,548,420 |
| Net Income | | | 127,741 | 121,458 | 142,146 | 391,345 |
| Net Income % | | | 30.0% | 24.0% | 23.0% | 25.3% |
| | | | | | | |
| Distributions: | | | | | | |
| Joseph Travolta | 100% | | $127,000 | $115,044 | $165,326 | $407,370 |

**Notes and Sources:**
[1]   Based on Tax return data.

Schedule 5

Dr. Alisa Wolf v. Joseph Travolta, et al.
**1 Year U.S. Treaury Rates** [1]

|  | Annual Rate |
|---|---|
| 2007 | 4.53% |
| 2008 | 1.83% |
| 2009 | 0.47% |
| 2010 | 0.32% |
| 2011 | 0.18% |
| 2012 | 0.17% |
| 2013 | 0.13% |
| 2014 | 0.12% |
| | |
| Jan-15 | 0.20% |
| Feb-15 | 0.22% |
| Mar-15 | 0.25% |
| Apr-15 | 0.23% |
| May-15 | 0.24% |
| Jun-15 | 0.28% |
| Jul-15 | 0.30% |
| Aug-15 | 0.38% |
| | 0.26% |

**Notes and Sources:**
[1]   Per the U.S Federal Reserve.

# Inclusion Wear, LLC

Schedule 6

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Inclusion Wear/Films S-Corp. - U.S. Tax returns** [1]

| | 2012 | % | 2013 | % | 2014 | % | Total | % |
|---|---|---|---|---|---|---|---|---|
| Sales | $426,193 | 100.0% | $505,306 | 100.0% | $616,921 | 100.0% | $1,548,420 | 100.0% |
| Sales Returns | 0 | 0.0% | 15,958 | 3.2% | 0 | 0.0% | 15,958 | 1.0% |
| Net Sales | 426,193 | 100.0% | 489,348 | 96.8% | 616,921 | 100.0% | 1,532,462 | 99.0% |
| Cost of Goods Sold [2] | | | | | | | | |
| Craft Services | 0 | 0.0% | 0 | 0.0% | 1,342 | 0.2% | 1,342 | 0.1% |
| Film Expenses | 0 | 0.0% | 0 | 0.0% | 14,961 | 2.4% | 14,961 | 1.0% |
| **Personnel Costs** | **173,533** | **40.7%** | **167,785** | **33.2%** | **0** | **0.0%** | **341,318** | **22.0%** |
| Production Costs | 0 | 0.0% | 80,800 | 16.0% | 0 | 0.0% | 80,800 | 5.2% |
| **Outside Service** | **0** | **0.0%** | **0** | **0.0%** | **345,938** | **56.1%** | **345,938** | **22.3%** |
| Cost of Goods Sold | 173,533 | 40.7% | 248,585 | 49.2% | 362,241 | 58.7% | 784,359 | 50.7% |
| Gross Profit | 252,660 | 59.3% | 240,763 | 47.6% | 254,680 | 41.3% | 748,103 | 48.3% |
| Operating Expenses: | | | | | | | | |
| Repairs and Maintenance | 6,700 | 1.6% | 0 | 0.0% | 0 | 0.0% | 6,700 | 0.4% |
| Rent Expense | 47,275 | 11.1% | 49,450 | 9.8% | 58,728 | 9.5% | 155,453 | 10.0% |
| Taxes & Licenses | 0 | 0.0% | 1,757 | 0.3% | 1,082 | 0.2% | 2,839 | 0.2% |
| Advertising | 0 | 0.0% | 0 | 0.0% | 134 | 0.0% | 134 | 0.0% |
| Automobile & Truck Expense | 0 | 0.0% | 0 | 0.0% | 1,520 | 0.2% | 1,520 | 0.1% |
| Legal & Professional [3] | 0 | 0.0% | 7,700 | 1.5% | 5,214 | 0.8% | 12,914 | 0.8% |
| Meals & Entertainment [4] | 0 | 0.0% | 0 | 0.0% | 2,103 | 0.3% | 2,103 | 0.1% |
| Office Expense | 15,665 | 3.7% | 3,831 | 0.8% | 19,687 | 3.2% | 39,183 | 2.5% |
| Telephone | 0 | 0.0% | 1,863 | 0.4% | 3,029 | 0.5% | 4,892 | 0.3% |
| **Travel** | **48,652** | **11.4%** | **49,613** | **9.8%** | **14,799** | **2.4%** | **113,064** | **7.3%** |
| Utilities | 6,627 | 1.6% | 5,091 | 1.0% | 7,289 | 1.2% | 19,007 | 1.2% |
| Total Operating Expenses | 124,919 | 29.3% | 119,305 | 23.6% | 113,585 | 18.4% | 357,809 | 23.1% |
| Net Income | $127,741 | 30.0% | $121,458 | 24.0% | $141,095 | 22.9% | $390,294 | 25.2% |
| Adjustments: | | | | | | | | |
| Legal & Professional [3] | $0 | 0.0% | $3,850 | 0.8% | $2,607 | 0.4% | $6,457 | 0.4% |
| Total Adjustments | 0 | 0.0% | 3,850 | 0.8% | 2,607 | 0.4% | 6,457 | 0.4% |
| Adjusted Net Profit | $127,741 | 30.0% | $125,308 | 24.8% | $143,702 | 23.3% | $396,751 | 25.6% |

**Notes and Sources:**
[1]   Based on Little Documentary Films US Tax Returns.
[2]   Cost of goods sold were not broken out separately on the U.S. Tax Returns.  WZ considered these items as cost of goods sold
[3]   An adjustment was made to add back 50% of legal & professional fees for 2013 and 2014 assumed to be related to the lawsuit with Dr. Wolf.
[4]   Meals and entertainment include the 50% that is disallowed for tax purposes.

Schedule 7

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Inclusion Films - 1099s** [1]

| Year | 1099 Payer | Amount |
|------|------------|--------|
| 2012 | Kern Regional Center | $394,393 |
| 2013 | Kern Regional Center | 505,306 |
| 2014 | Kern Regional Center | 544,736 |

**Notes and Sources:**
[1]   Based on Inclusion Films Form 1099's.

# Little Documentary Films, LLC

Schedule 8

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Little Documentary Films - U.S. Tax Returns** [1]

| | 2011 | % | 2012 | % | 2013 | % | 2014 | % | Total | % |
|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $546,203 | 100.0% | $558,602 | 100.0% | $507,962 | 100.0% | $494,494 | 100.0% | $2,107,261 | 100.0% |
| Cost of Goods Sold: | | | | | | | | | | |
| **Labor** | **207,311** | **38.0%** | **203,573** | **36.4%** | **161,866** | **31.9%** | **124,207** | **25.1%** | **696,957** | **33.1%** |
| Filming Expenses | 2,664 | 0.5% | 30,474 | 5.5% | 18,044 | 3.6% | 8,361 | 1.7% | 59,543 | 2.8% |
| Day Camp Expenses | 35,618 | 6.5% | 25,633 | 4.6% | 50,936 | 10.0% | 30,372 | 6.1% | 142,559 | 6.8% |
| Equipment Rental | 8,008 | 1.5% | 667 | 0.1% | 0 | 0.0% | 0 | 0.0% | 8,675 | 0.4% |
| DGA Contribution | 7,000 | 1.3% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 7,000 | 0.3% |
| Cost of Goods Sold | 260,601 | 47.7% | 260,347 | 46.6% | 230,846 | 45.4% | 162,940 | 33.0% | 914,734 | 43.4% |
| Gross Profit | 285,602 | 52.3% | 298,255 | 53.4% | 277,116 | 54.6% | 331,554 | 67.0% | 1,192,527 | 56.6% |
| Operating Expenses: | | | | | | | | | | |
| Repairs and Maintenance | 3,948 | 0.7% | 2,261 | 0.4% | 2,759 | 0.5% | 955 | 0.2% | 9,923 | 0.5% |
| Rent Expense | 30,978 | 5.7% | 27,657 | 5.0% | 32,853 | 6.5% | 10,858 | 2.2% | 102,346 | 4.9% |
| Taxes & Licenses | | | | | | | | | | |
| California Taxes | 3,300 | 0.6% | 3,300 | 0.6% | 3,300 | 0.6% | 4,100 | 0.8% | 14,000 | 0.7% |
| Licenses and Permits | 592 | 0.1% | 201 | 0.0% | 288 | 0.1% | 269 | 0.1% | 1,350 | 0.1% |
| Interest | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 594 | 0.1% | 594 | 0.0% |
| Advertising & Promotion | 762 | 0.1% | 50 | 0.0% | 0 | 0.0% | 0 | 0.0% | 812 | 0.0% |
| Automobile | 4,327 | 0.8% | 3,997 | 0.7% | 6,219 | 1.2% | 2,287 | 0.5% | 16,830 | 0.8% |
| Dues & Subscriptions | 1,181 | 0.2% | 594 | 0.1% | 396 | 0.1% | 2,806 | 0.6% | 4,977 | 0.2% |
| Insurance | 3,726 | 0.7% | 10,968 | 2.0% | 11,574 | 2.3% | 3,510 | 0.7% | 29,778 | 1.4% |
| Internet/Website | 1,972 | 0.4% | 3,795 | 0.7% | 4,449 | 0.9% | 2,207 | 0.4% | 12,423 | 0.6% |
| Meals & Entertainment [2] | 10,046 | 1.8% | 2,904 | 0.5% | 5,759 | 1.1% | 13,944 | 2.8% | 32,653 | 1.5% |
| Office Supplies | 7,976 | 1.5% | 2,445 | 0.4% | 4,936 | 1.0% | 4,510 | 0.9% | 19,867 | 0.9% |
| Postage & Freight | 1,192 | 0.2% | 1,166 | 0.2% | 0 | 0.0% | 0 | 0.0% | 2,358 | 0.1% |
| Professional Fees [3] | 2,594 | 0.5% | 1,606 | 0.3% | 4,200 | 0.8% | 5,506 | 1.1% | 13,906 | 0.7% |
| Telephone | 6,547 | 1.2% | 4,841 | 0.9% | 3,355 | 0.7% | 1,807 | 0.4% | 16,550 | 0.8% |
| **Travel** | **55,471** | **10.2%** | **41,494** | **7.4%** | **52,551** | **10.3%** | **76,173** | **15.4%** | **225,689** | **10.7%** |
| Utilities | 3,503 | 0.6% | 2,875 | 0.5% | 3,414 | 0.7% | 1,326 | 0.3% | 11,118 | 0.5% |
| Total Operating Expenses | 138,115 | 25.3% | 110,154 | 19.7% | 136,053 | 26.8% | 130,852 | 26.5% | 515,174 | 24.4% |
| Net Income | $147,487 | 27.0% | $188,101 | 33.7% | $141,063 | 27.8% | $200,702 | 40.6% | $677,353 | 32.1% |
| Adjustments: | | | | | | | | | | |
| Legal & Professional [3] | $0 | 0.0% | $0 | 0.0% | 2,100 | 0.4% | $2,753 | 0.6% | $4,853 | 0.2% |
| Total Adjustments | 0 | 0.0% | 0 | 0.0% | 2,100 | 0.4% | 2,753 | 0.6% | 4,853 | 0.2% |
| Adjusted Net Profit | $147,487 | 27.0% | $188,101 | 33.7% | $143,163 | 28.2% | $203,455 | 41.1% | $682,206 | 32.4% |

**Notes and Sources:**
[1]   Based on Little Documentary Films US Tax Returns.
[2]   Meals and entertainment include the 50% that is disallowed for tax purposes.
[3]   An adjustment was made to add back 50% of legal & professional fees for 2013 and 2014 assumed to be related to the lawsuit with Dr. Wolf.

Schedule 9

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Little Documentary Films - Profit & Loss Statements** [1]

| | 2009 | % | 2010 | % | 2011 | % | 2012 | % | 2013 | % | 2014 | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income | $398,853 | 100.0% | $0 | n/a | $257,551 | 100.0% | $270,070 | 100.0% | $216,885 | 100.0% | $128,547 | 100.0% |
| Operating Expenses: | | | | | | | | | | | | |
| Advertising & Promotion | 0 | 0.0% | 0 | n/a | 762 | 0.3% | 50 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Per Diem | 0 | 0.0% | 0 | n/a | 30 | 0.0% | 650 | 0.2% | 0 | 0.0% | 1,800 | 1.4% |
| Automobile | 2,043 | 0.5% | 0 | n/a | 0 | 0.0% | 2,212 | 0.8% | 5,194 | 2.4% | 2,287 | 1.8% |
| Bank Service Charges | 42 | 0.0% | 0 | n/a | 0 | 0.0% | 25 | 0.0% | 4 | 0.0% | 64 | 0.0% |
| T-Shirt Expense | 1,611 | 0.4% | 0 | n/a | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Permits | 127 | 0.0% | 0 | n/a | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Taxes & Licenses | 1,896 | 0.5% | 0 | n/a | 3,035 | 1.2% | 201 | 0.1% | 288 | 0.1% | 269 | 0.2% |
| Office Supplies | 1,997 | 0.5% | 0 | n/a | 1,508 | 0.6% | 1,869 | 0.7% | 1,169 | 0.5% | 562 | 0.4% |
| Rent Expense | 30,099 | 7.5% | 0 | n/a | 30,978 | 12.0% | 27,657 | 10.2% | 32,853 | 15.1% | 10,858 | 8.4% |
| Computer and Internet Expense | 6,670 | 1.7% | 0 | n/a | 400 | 0.2% | 10,098 | 3.7% | 4,449 | 2.1% | 1,991 | 1.5% |
| Repairs and Maintenance | 200 | 0.1% | 0 | n/a | 147 | 0.1% | 202 | 0.1% | 97 | 0.1% | 80 | 0.1% |
| Utilities | 2,381 | 0.6% | 0 | n/a | 3,503 | 1.4% | 2,875 | 1.1% | 3,198 | 1.5% | 1,326 | 1.0% |
| Research | 0 | 0.0% | 0 | n/a | 0 | 0.0% | 0 | 0.0% | 88 | 0.0% | 0 | 0.0% |
| Film Expense | | | | | | | | | | | | |
| Film Script | 926 | 0.2% | 0 | n/a | 300 | 0.1% | 77 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Hair & Make-Up | 276 | 0.1% | 0 | n/a | 55 | 0.0% | 10 | 0.0% | 19 | 0.0% | 0 | 0.0% |
| Teaching Aid | 707 | 0.2% | 0 | n/a | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| Camera Expense | 11,393 | 2.9% | 0 | n/a | 55 | 0.0% | 642 | 0.2% | 3,384 | 1.6% | 156 | 0.1% |
| Lighting | 0 | 0.0% | 0 | n/a | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 590 | 0.5% |
| Post Production | 135 | 0.0% | 0 | n/a | 0 | 0.0% | 15,625 | 5.8% | 7,561 | 3.5% | 0 | 0.0% |
| Film Supplies | 26 | 0.0% | 0 | n/a | 1,525 | 0.6% | 6,886 | 2.5% | 2,090 | 1.0% | 0 | 0.0% |
| DVD's | 150 | 0.0% | 0 | n/a | 64 | 0.0% | 913 | 0.3% | 470 | 0.2% | 0 | 0.0% |
| Set Construction | 4,453 | 1.1% | 0 | n/a | 468 | 0.2% | 2,070 | 0.8% | 1,264 | 0.6% | 0 | 0.0% |
| Costume | 106 | 0.0% | 0 | n/a | 0 | 0.0% | 185 | 0.1% | 163 | 0.1% | 0 | 0.0% |
| Other | 1,898 | 0.5% | 0 | n/a | 72 | 0.0% | 0 | 0.0% | 1,952 | 0.9% | 5,815 | 4.5% |
| Total Film Expense | 20,070 | 5.0% | 0 | n/a | 2,540 | 1.0% | 26,409 | 9.8% | 16,903 | 7.8% | 6,561 | 5.1% |
| Craft Services | 2,237 | 0.6% | 0 | n/a | 94 | 0.0% | 3,415 | 1.3% | 1,141 | 0.5% | 0 | 0.0% |
| Meals & Entertainment | 3,301 | 0.8% | 0 | n/a | 0 | 0.0% | 2,785 | 1.0% | 2,527 | 1.2% | 1,242 | 1.0% |
| Dues & Subscriptions | 0 | 0.0% | 0 | n/a | 0 | 0.0% | 538 | 0.2% | 0 | 0.0% | 2,044 | 1.6% |
| Equipment Rental | 250 | 0.1% | 0 | n/a | 0 | 0.0% | 667 | 0.2% | 0 | 0.0% | 0 | 0.0% |
| Travel Expense | 400 | 0.1% | 0 | n/a | 300 | 0.1% | 14,254 | 5.3% | 3,074 | 1.4% | 14,036 | 10.9% |
| **Outside Services** | **206,002** | **51.6%** | **0** | **n/a** | **133,553** | **51.9%** | **123,461** | **45.7%** | **98,085** | **45.2%** | **72,182** | **56.2%** |

Schedule 9

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Little Documentary Films - Profit & Loss Statements** [1]

| | 2009 | % | 2010 | % | 2011 | % | 2012 | % | 2013 | % | 2014 | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Postage | 95 | 0.0% | 0 | n/a | 0 | 0.0% | 148 | 0.1% | 441 | 0.2% | 0 | 0.0% |
| Telephone | 3,530 | 0.9% | 0 | n/a | 5,885 | 2.3% | 4,494 | 1.7% | 1,281 | 0.6% | 674 | 0.5% |
| Insurance | | | | | | | | | | | | |
| General Liability | 1,827 | 0.5% | 0 | n/a | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| Worker's Comp | 527 | 0.1% | 0 | n/a | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| Insurance - Other | 460 | 0.1% | 0 | n/a | | 0.0% | | 0.0% | | 0.0% | | 0.0% |
| Total Insurance | 2,814 | 0.7% | 0 | n/a | 3,489 | 1.4% | 3,101 | 1.1% | 3,198 | 1.5% | 2,936 | 2.3% |
| Janitor Expense | 1,527 | 0.4% | 0 | n/a | 2,241 | 0.9% | 2,059 | 0.8% | 2,503 | 1.2% | 875 | 0.7% |
| Freight & Shipping | 263 | 0.1% | 0 | n/a | 95 | 0.0% | 810 | 0.3% | 0 | 0.0% | 0 | 0.0% |
| Office Expense | 0 | 0.0% | 0 | n/a | 0 | 0.0% | 551 | 0.2% | 2,247 | 1.0% | 674 | 0.5% |
| State Taxes | 0 | 0.0% | 0 | n/a | 0 | 0.0% | 3,300 | 1.2% | 0 | 0.0% | 0 | 0.0% |
| Refund | 0 | 0.0% | 0 | n/a | 0 | 0.0% | 408 | 0.2% | 0 | 0.0% | 0 | 0.0% |
| Miscellaneous | 273 | 0.1% | 0 | n/a | 52 | 0.0% | 0 | 0.0% | 0 | 0.0% | 601 | 0.5% |
| Payroll Expense | 5,287 | 1.3% | 0 | n/a | 7,734 | 3.0% | 6,894 | 2.6% | 6,237 | 2.9% | 2,611 | 2.0% |
| Legal & Accounting | 1,970 | 0.5% | 0 | n/a | 0 | 0.0% | 806 | 0.3% | 3,100 | 1.4% | 0 | 0.0% |
| Total Operating Expenses | 295,084 | 74.0% | 0 | n/a | 196,344 | 76.2% | 239,938 | 88.8% | 188,078 | 86.7% | 123,674 | 96.2% |
| Net Income | $103,768 | 26.0% | $0 | n/a | $61,207 | 23.8% | $30,132 | 11.2% | $28,806 | 13.3% | $4,873 | 3.8% |

**Notes and Sources:**
[1]   Based on Little Documentary Films profit and loss statements.

Schedule 10

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Little Documentary Films - 1099s** [1]

| Year | 1099 Payer | Amount |
|------|-----------|--------|
| 2009 | Frank D. Lantern | $396,853 |
| | | |
| 2011 | Frank D. Lantern | 183,189 |
| 2011 | MarbleJam Kids | 57,875 |
| 2011 | Aheadd Services | 60,500 |
| 2011 | North L.A. Cty R.C. | 4,374 |
| | | 305,938 |
| | | |
| 2012 | Frank D. Lantern | 229,966 |
| 2012 | South Central Los Angeles | Illegible |
| | | 229,966 |
| | | |
| 2013 | Frank D. Lantern | 150,210 |
| 2013 | South Central Los Angeles | 820 |
| 2013 | North L.A. Cty R.C. | 10,000 |
| 2013 | Emily Iland, Inc. | 10,000 |
| | | 171,030 |
| | | |
| 2014 | Oakland University | 195,000 |

**Notes and Sources:**
[1]   Based on Little Documentary Films Form 1099's.

# Industry Statistics

Schedule 11

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Industry Comparative Income Statements - SIC 8331** [1]
*For the Years 2011 through 2015*

| | 2011 | % | 2012 | % | 2013 | % | 2014 | % | 2015 | % | Total | % |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | $472,000 | 100.0% | $516,000 | 100.0% | $743,000 | 100.0% | $927,000 | 100.0% | $1,048,000 | 100.0% | $3,706,000 | 100.0% |
| Cost of Goods Sold | 26,000 | 5.5% | 29,000 | 5.6% | 45,000 | 6.1% | 60,000 | 6.5% | 70,000 | 6.7% | 230,000 | 6.2% |
| Gross Margin | 446,000 | 94.5% | 487,000 | 94.4% | 698,000 | 93.9% | 867,000 | 93.5% | 978,000 | 93.3% | 3,476,000 | 93.8% |
| Expenses: | | | | | | | | | | | | |
| Advertising | 3,000 | 0.6% | 3,000 | 0.6% | 5,000 | 0.7% | 6,000 | 0.6% | 7,000 | 0.7% | 24,000 | 0.6% |
| Salaries and Wages | 123,000 | 26.1% | 136,000 | 26.4% | 197,000 | 26.5% | 245,000 | 26.4% | 278,000 | 26.5% | 979,000 | 26.4% |
| Employee Benefit Program | 7,000 | 1.5% | 7,000 | 1.4% | 11,000 | 1.5% | 14,000 | 1.5% | 16,000 | 1.5% | 55,000 | 1.5% |
| Pension and Annuity Plans | 11,000 | 2.3% | 12,000 | 2.3% | 17,000 | 2.3% | 20,000 | 2.2% | 23,000 | 2.2% | 83,000 | 2.2% |
| Compensation of Officers | 93,000 | 19.7% | 101,000 | 19.6% | 140,000 | 18.8% | 170,000 | 18.3% | 188,000 | 17.9% | 692,000 | 18.7% |
| Rent Paid | 25,000 | 5.3% | 27,000 | 5.2% | 39,000 | 5.2% | 49,000 | 5.3% | 55,000 | 5.2% | 195,000 | 5.3% |
| Repairs | 3,000 | 0.6% | 3,000 | 0.6% | 5,000 | 0.7% | 6,000 | 0.6% | 7,000 | 0.7% | 24,000 | 0.6% |
| Depreciation Depletion Amort. | 5,000 | 1.1% | 5,000 | 1.0% | 9,000 | 1.2% | 12,000 | 1.3% | 14,000 | 1.3% | 45,000 | 1.2% |
| Interest Paid | 2,000 | 0.4% | 2,000 | 0.4% | 4,000 | 0.5% | 5,000 | 0.5% | 6,000 | 0.6% | 19,000 | 0.5% |
| Miscellaneous Expenses | 116,000 | 24.6% | 126,000 | 24.4% | 182,000 | 24.5% | 227,000 | 24.5% | 256,000 | 24.4% | 907,000 | 24.5% |
| Total Expenses | 388,000 | 82.2% | 422,000 | 81.8% | 609,000 | 82.0% | 754,000 | 81.3% | 850,000 | 81.1% | 3,023,000 | 81.6% |
| Net Income | $58,000 | 12.3% | $65,000 | 12.6% | $89,000 | 12.0% | $113,000 | 12.2% | $128,000 | 12.2% | $453,000 | 12.2% |
| EBITDA | $65,000 | 13.8% | $72,000 | 14.0% | $102,000 | 13.7% | $130,000 | 14.0% | $148,000 | 14.1% | $517,000 | 14.0% |
| Net Income | $58,000 | 12.3% | $65,000 | 12.6% | $89,000 | 12.0% | $113,000 | 12.2% | $128,000 | 12.2% | $453,000 | 12.2% |
| Officer Compensation | 93,000 | 19.7% | 101,000 | 19.6% | 140,000 | 18.8% | 170,000 | 18.3% | 188,000 | 17.9% | 692,000 | 18.7% |
| Adjusted Net Profit | $151,000 | 32.0% | $166,000 | 32.2% | $229,000 | 30.8% | $283,000 | 30.5% | $316,000 | 30.2% | $1,145,000 | 30.9% |

**Notes and Sources:**
[1]   Per Prime Industry Reports for SIC code 8331 with company revenue between $500,000 and $999,999.

Schedule 12

Dr. Alisa Wolf v. Joseph Travolta, et al.
**Industry Comparative Balance Sheets - SIC 8331** [1]
*As of December 31, 2011 through 2015*

| | 2011 | % | 2012 | % | 2013 | % | 2014 | % | 2015 | % |
|---|---|---|---|---|---|---|---|---|---|---|
| ***ASSETS*** | | | | | | | | | | |
| Current Assets | | | | | | | | | | |
| Cash | $20,000 | 32.3% | $23,000 | 32.9% | $35,000 | 30.7% | $46,000 | 29.5% | $53,000 | 28.6% |
| Net Accounts Receivable | 4,000 | 6.5% | 4,000 | 5.7% | 8,000 | 7.0% | 12,000 | 7.7% | 15,000 | 8.1% |
| Inventories | 0 | 0.0% | 0 | 0.0% | 1,000 | 0.9% | 1,000 | 0.6% | 1,000 | 0.5% |
| Other Current Assets | 3,000 | 4.8% | 3,000 | 4.3% | 6,000 | 5.3% | 9,000 | 5.8% | 11,000 | 5.9% |
| Total Current Assets | 27,000 | 43.5% | 30,000 | 42.9% | 50,000 | 43.9% | 68,000 | 43.6% | 80,000 | 43.2% |
| | | | | | | | | | | |
| Long-Term Investments | 9,000 | 14.5% | 10,000 | 14.3% | 16,000 | 14.0% | 22,000 | 14.1% | 27,000 | 14.6% |
| Plant, Property and Equipment | 20,000 | 32.3% | 23,000 | 32.9% | 35,000 | 30.7% | 47,000 | 30.1% | 55,000 | 29.7% |
| Other Assets | 1,000 | 1.6% | 1,000 | 1.4% | 2,000 | 1.8% | 3,000 | 1.9% | 3,000 | 1.6% |
| Net Intangible Assets | 5,000 | 8.1% | 6,000 | 8.6% | 11,000 | 9.6% | 16,000 | 10.3% | 20,000 | 10.8% |
| | | | | | | | | | | |
| ***Total ASSETS*** | $62,000 | 100.0% | $70,000 | 100.0% | $114,000 | 100.0% | $156,000 | 100.0% | $185,000 | 100.0% |
| | | | | | | | | | | |
| ***LIABILITIES and Owners' Equity*** | | | | | | | | | | |
| Current Liabilities | | | | | | | | | | |
| Accounts Payable | $3,000 | 4.8% | $3,000 | 4.3% | $6,000 | 5.3% | $8,000 | 5.1% | $10,000 | 5.4% |
| Short-Term Obligations | 6,000 | 9.7% | 7,000 | 10.0% | 11,000 | 9.6% | 14,000 | 9.0% | 17,000 | 9.2% |
| Other Current Liabilities | 12,000 | 19.4% | 14,000 | 20.0% | 21,000 | 18.4% | 28,000 | 17.9% | 33,000 | 17.8% |
| Total Current Liabilities | 21,000 | 33.9% | 24,000 | 34.3% | 38,000 | 33.3% | 50,000 | 32.1% | 60,000 | 32.4% |
| | | | | | | | | | | |
| Long-Term Debt | 36,000 | 58.1% | 40,000 | 57.1% | 63,000 | 55.3% | 85,000 | 54.5% | 100,000 | 54.1% |
| | | | | | | | | | | |
| Total Liabilities | 57,000 | 91.9% | 64,000 | 91.4% | 101,000 | 88.6% | 135,000 | 86.5% | 160,000 | 86.5% |
| | | | | | | | | | | |
| Total Net Worth and Owners' Equity | 5,000 | 8.1% | 6,000 | 8.6% | 13,000 | 11.4% | 21,000 | 13.5% | 25,000 | 13.5% |
| | | | | | | | | | | |
| ***Total Liabilities and Owners' Equity*** | $62,000 | 100.0% | $70,000 | 100.0% | $114,000 | 100.0% | $156,000 | 100.0% | $185,000 | 100.0% |

**Notes and Sources:**
[1]   Per Prime Industry Reports for SIC code 8331 in Los Angeles County with company revenue between $500,000 and $999,999.

# APPENDIX 1

# BARBARA C. LUNA

Barbara C. Luna is a Senior Partner in the accounting and litigation services firm of White, Zuckerman, Warsavsky, Luna & Hunt, LLP.  She has served as an expert witness for over thirty years in business and personal injury litigation and bankruptcy matters.  Dr. Luna analyzes financial, accounting, economic, business, real estate and valuation issues relating to liability and damages in litigation matters and reorganization of businesses.  The matters she has been involved in include breach of contract, intellectual property, unfair competition, construction and real estate, business interruption, business dissolutions, bankruptcy, partnership disputes, professional malpractice, fraud and misrepresentations, securities, trusts and estates, bad faith, alter ego, wrongful termination, personal injury, products liability and marital dissolution.  She has testified on numerous occasions in U.S. District Court, Superior Court, Bankruptcy Court, arbitrations and depositions.

Prior to joining White, Zuckerman, Warsavsky, Luna & Hunt, LLP, Dr. Luna was a Partner with Coopers & Lybrand specializing in litigation and financial advisory services.  Prior thereto, she was the National Director of Litigation Consulting for Kenneth Leventhal & Company, where she was responsible for directing the litigation services practice nationwide.  Previously, Dr. Luna was a Partner with Pannell Kerr Forster, where she was responsible for providing litigation and reorganization services, and she was a Senior Manager with Price Waterhouse specializing in litigation services.  Before focusing on litigation services, she was an investment banker specializing in corporate finance.

Dr. Luna has taught graduate and undergraduate courses in working capital management, business finance, forensic accounting and intermediate accounting at the UCLA Graduate School of Management, California State University at Northridge and Pepperdine University.  She has addressed numerous audiences and has appeared on several professional panels.  She obtained her MS and PhD degrees in Applied Mathematics from Harvard University and her BA degree from Wellesley College.

Dr. Luna is a Certified Public Accountant, an Accredited Senior Appraiser in Business Valuation, Accredited in Business Valuation, a Certified Valuation Analyst, Certified in Financial Forensics, a Master Analyst in Financial Forensics, a Certified General Real Estate Appraiser, a Certified Commercial Real Estate Appraiser, a Certified Residential Real Estate Appraiser, a Certified Fraud Examiner, a Certified Management Consultant, and a Diplomate Board Certified Forensic Examiner and Accountant.  She is a member of the American Institute of Certified Public Accountants (and holds the AICPA's ABV and CFF designations), the California Society of Certified Public Accountants (and the Society's Economic Damages, Fraud and Business Valuation Common Interest Member Services Committees and the Los Angeles Litigation Services Committee), the Association of Business Trial Lawyers (and the Association's Committee on Experts), the National Association of Forensic Economists, the American Boards of Forensic Examiners and Accountants, the American Society of Appraisers, the National Association of Certified Valuation Analysts, the National Association of Real Estate Appraisers, the Association of Certified Fraud Examiners and the Institute of Management Consultants and an associate member of the Appraisal Institute.

White
Zuckerm
an
Warsavs
ky
.

# APPENDIX 2

**BARBARA LUNA'S EXPERT WITNESS TRIAL TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2015** | | | | | |
| Conquest v, HKG | Accounting Malpractice | Gary Goodstein<br>Bruce Berman | Goodstein & Berman | Los Angeles Superior | Valuation<br>Damage Analysis<br>Standard of Care |
| ABA Towing v. AAA of Southern California | Breach of Contract | Bryan Altman | Altman Law Group | Arbitration | Damage Analysis |
| Bae v. Advanced Fresh Concept | Breach of Contract | Grant Nigolian | Grant Nigolian, PC | Arbitration | Damage Analysis |
| Izawa v. AVT | Misrepresentation<br>Fraud | Greg Brown | Brown & Charbonneau | Santa Ana Superior | Damage Analysis<br>Valuation |
| Shum v. Edward D. Jones | Termination | Sylvia Scott | Freeman Freeman & Smiley | Arbitration | Damage Analysis |
| Lou et Lin v. Quarante et al. | Misrepresentation<br>Breach of Fiduciary Duty<br>Breach of Contract | Antoinette Waller | Law Offices of David Alden Erikson | Arbitration | Damage Analysis<br>Valuation |
| Hulavision v. Hulu | Trade Secrets<br>Trademark Infringement | Robert Vantress | Vantress Law Group | Arbitration | Damage Analysis |
| Cardiac Science v. LifeCor | Breach of Contract | Louis Chao | Archer Norris | Los Angeles Superior | Damage Analysis |
| McBroom v. Edward D. Jones | Termination | Sylvia Scott | Freeman Freeman & Smiley | Arbitration | Damage Analysis |
| Sampson v. Sampson Oil Partnership and Sampson | Dissolution of Partnership<br>Breach of Contract | Cheryl Avirom | Law Office of Cheryl Avirom | Long Beach Superior | Accounting<br>Damage Analysis |
| Super Color Digital v. Powers et al. | Breach od Duty of Loyalty<br>Intentional Interference<br>Unfair Competition | Mark Goshgarian<br>Merak Eskigian | Goshgarian & Marshall | Santa Ana Superior | Damage Analysis |
| Domingo Villas v. Tarnutzer | Breach of Contract | Jim Keathley | Keathley & Keathley | Santa Ana Superior | Damage Analysis |

**BARBARA LUNA'S EXPERT WITNESS TRIAL TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| Bruell v. Preimesberger | Breach of Contract<br>Breach of Fiduciary Duty | Chris Ritter | Early Sullivan Wright Gizer & McRae | Arbitration | Damage Analysis |
| Glendale Surgery Partners v Amsurg Glendale | Breach of Contract | | Robins Kaplan Miller & Ciresi | Arbitration | Damage Analysis<br>Valuation |
| Makhlouf v. Young | Partnership Dissolution | John Crose | Issac, Clouse, Crose & Oxford | Arbitration | Damage Analysis<br>Accounting |
| Kim v. Chang | Breach of Contract<br>Breach of Fiduciary Duty<br>Fraud | Gary Goodstein | Goodstein & Berman | Los Angeles<br>Superior | Accounting<br>Valuation |

**BARBARA LUNA'S EXPERT WITNESS TRIAL TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2014** | | | | | |
| Chicony Power v. Comarco, adv. | Breach of Contract Intentional Interference | Cahtleen Huang | Bowles & Verna | Santa Ana Superior Complex | Damage Analysis |
| Cuevas v. MCP | Breach of Contract | J. Scott Humphrey | Humphrey Law | Arbitration | Valuation |
| Jurewicz v. Holly | Breach of Contract | Greg Brown | Brown & Charbonneau | Arbitration | Accounting Damage Analysis |
| Chu v. Sun | Fraud Fraudulent Conveyance | Mohammed Ghods | Ghods Law Firm | Burbank Superior | Accounting Damage Analysis |
| Weinsaft, Skillin v. Arise, Miers | Breach of Fiduciary Duty Fraud | Robert Sibilia | The Sibilia Law Firm | Arbitration | Accounting Damage Analysis |
| DuAmarell v. Wells Fargo | Misrepresentation Fraud | Bob Girard | Freeman, Freeman & Smiley | Arbitration | Damage Analysis |
| Mitsuwa v, Wehba | Breach of Promissory Note Fraudulent Transfer Interference | David Hagopian | Carothers Di Sante & Freudenberger | Los Angeles Superior | Alter Ego Accounting |
| EPIC Medical Management v. Paquette, MD | Breach of Contract Accounting | Richard Walton | Walton & Walton | Arbitration | Accounting Damage Analysis |
| The Zone Sports and Fresno Rock Taco v. National Surety and Fireman's Fund | Breach of Contract Breach of Fiduciary Duty Bad Faith | Paul Smith | Law Offices of Paul M. Smith, II | Eastern District of California-Fresno | Damage Analysis |
| Milovich v. Infiniti Select Insurance | Personal Injury | George Straggas | Straggas & Associates | Arbitration | Damage Analysis |
| ABA Towing v. AAA of Southern California | Breach of Contract | Bryan Altman | Altman Law Group | Arbitration | Damage Analysis |
| Marin v. Ganuelas | Personal Injury | John Paulson | Ford Walker Haggerty & Behar | Pasadena Superior | Damage Analysis |

## BARBARA LUNA'S EXPERT WITNESS TRIAL TESTIMONY DURING PAST FOUR YEARS

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2013** | | | | | |
| Lee v. Farmers Insurance | Wrongful Termination | Solomon Gresen | Law Offices of Rheuban & Gresen | Los Angeles Superior | Damage Analysis |
| Goldberg v. Stelmach | Breach of Fiduciary Duty | Ronald Richards | Ronald Richards & Associates | Van Nuys Superior | Accounting |
| Dawson v. Patina Restaurant Group | Personal Injury | Mark Glazer | Glazer & Blinder | Los Angeles Superior | Damage Analysis |
| OC1 Bush v. PT | Breach of Contract Fraud | Stephen Goldberg | Spierer, Woodward, Corbalis & Goldberg | Santa Ana Superior | Damage Analysis |
| Martinez v. Muhe | Breach of Fiduciary Duty Breach of Contract Fraud | Mohammed Ghods | Ghods Law Firm | Vista Superior | Damage Analysis Valuation Issues |
| O'Connor v. Somerville | Wrongful Termination Breach of Implied Contract Misrepresentation | John Wallace | Rosen & Associates | Arbitration | Forensic Accounting Damage Analysis |
| The Zone Sports and Fresno Rock Taco v. National Surety Corp and Fireman's Fund | Breach of Fiduciary Duty | Richard Hamlish | Law Office of Richard Hamlish | Eastern District of California-Fresno | Damage Analysis |
| Mentor v. Sientra | Unfair Competition Trade Secrets | Ryan Eskin Dylan Wiseman | Littler Mendelson | Santa Barbara Superior | Damage Analysis |
| AERC Desmond's Tower v. Ace Gallery | Lease Default | Haley McIntosh | Jones Day | US Bankruptcy | Financial Analysis |
| Goldsholle v. Internet Brands | Breach of Contract | Mike Hambly | Law Office of Michael R. Hambly | Torrance Superior | Accounting Issues Damage Analysis |
| Chicony Power v. Comarco, adv. | Breach of Contract Intentional Interference | Cathleen Huang | Bowles & Verna | Santa Ana Superior Complex | Damage Analysis |
| Gietzen, Yolanda's v. Goveia | Breach of Contract | Ted Donohue | Voss, Cook & Thel | Arbitration | Damage Analysis |
| Dent Mart Int'l v. iDen Dental Supply | Interference Unfair Competition | Vladhi Khiterer | Khiterer & Park | Los Angeles Superior | Damage Analysis |
| Christie v. Vincent | Conversion | Barry Cohen | Barry E. Cohen, A Professional Corp | Ventura Superior | Accounting Valuation Damage Analysis |
| Martinez et al v. Born | Professional Negligence Product Liability | Brian Ramsey | Rose Klein & Marias | Compton Superior | Damage Analysis |

**BARBARA LUNA'S EXPERT WITNESS TRIAL TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2012** | | | | | |
| Judah v. Sudry | Breach of Contract Shareholder Dispute | J.T. Fox | Law Offices of J.T. Fox & Associates | Los Angeles Superior | Accounting |
| Ngo v. Nguyen | Medical Malpractice | Robert Kasamatsu | Robert K Kasamatsu & Associates | Santa Ana Superior | Damage Analysis |
| MMIT v. Vizio | Patent Infringement | Robert Schroeder | Sheldon, Mak, Rose & Anderson | Central District of California Western Division | Damage Analysis |
| Central Pacific Bank v. Fidelity | Breach of Contract Breach of Fiduciary Duty | Chris Ritter | Early Sullivan Wright Gizer & McRae | Riverside Superior | Damage Analysis |
| Baldwin Hills Dialysis Center v. Slomowitz | Partnership Dispute | Roger Steffen Manlin | Law Office of Roger A. Steffen Manlin | Arbitration | Accounting Issues |
| Brite Style v. Suleymanova | Construction Defects Construction Cost Overruns Fraud | Mike Smith | The Altman Law Group | Los Angeles Superior | Accounting Damage Analysis |
| DeLuca v. State Fish | Breach of Contract | Alex Cornelius | Costell & Cornelius | Long Beach Superior | Liability Issues Accounting Issues |
| Schwartz v. UNX | Wrongful Termination | Michael Blumenfeld | Freeman, Freeman & Smiley | FINRA Arbitration | Damage Analysis |
| M&D Medical Supply v. Los Angeles Metro Medical Center and Pacific Health Corp | Breach of Contract | Bryan Altman | The Altman Law Group | Los Angeles Superior | Accounting Damage Analysis |
| Jenkins v. Allsup, MD | Medical Malpractice | Morton Kamzan | Law Office of Morton A. Kamzan | San Pedro Superior | Damage Analysis |
| Perl v. Clark | Attorney Malpractice | David Hinshaw | Law Offices of David Hinshaw | Santa Monica Superior | Damage Analysis |
| SGRL v. Smith Mehr v. SGRL | Breach of Fiduciary Duty Misappropriation | Gregory Brown | Brown & Charbonneau | Santa Ana Superior | Damage Analysis |
| DiGregorio v. Aronowitz | Medical Malpractice | Bryan Altman | The Altman Law Group | Los Angeles Superior | Damage Analysis |
| L.A.U.S.D. v. Maximus and Harris | Breach of Contract | James Lee | Lee, Tran & Liang | Arbitration | Damage Analysis |

**BARBARA LUNA'S EXPERT WITNESS TRIAL TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2011** | | | | | |
| Cleveland v. IS West | Breach of Contract<br>Breach of Fiduciary Duty | Timothy L. Neufeld | Neufeld, Marks, Gralnek & Maker | Van Nuys Superior | Damage Analysis |
| Eagle Ridge Manufacturing v. Kilroy Realty | Breach of Contract<br>Fraud | Todd Whitman | Allen Matkins Leck Gamble Mallory & Natsis | Santa Ana Superior | Damage Analysis |
| Azer v. Los Angeles County Sheriff's Office | Failure to Accommodate | Elizabeth Kessel | Kessel & Associates | Los Angeles Superior | Damage Analysis |
| Mandosa v. Leibowitz | Medical Malpractice | Steven Rhueban | Rheuban & Gresen | Santa Monica Superior | Damage Analysis |
| Kasim v. Bentley Forbes | Wrongful Termination | Alexandre Cornelius | Costell & Cornelius | Arbitration | Alter Ego<br>Commingling<br>Damage Analysis |
| Ash v. North American Title and Lerner | Breach of Fiduciary Duty<br>Breach of Contract | Phil Bartenetti<br>Richard D. Marks | Clark & Trevithick<br>Richard D. Marks, APC | Los Angeles Superior | Damage Analysis |
| Stewart v. Mission Hospital of Laguna Hills | Medical Malpractice | Robert Kahn | Law Offices of Robert Kahn | Santa Ana Superior | Accounting<br>Damage Analysis |
| Bigfoot Ventures v. NextEngine | Breach of Contract<br>Business Interruption<br>Misrepresentation | Ken Heisz | Gorman & Miller | Los Angeles Superior | Liability Issues<br>Damage Analysis |
| Cameron v. Barantsevich | Breach of Fiduciary Duty<br>Fraud | Michael Rapkin | Law Office of Michael Rapkin | Arbitration | Accounting<br>Damage Analysis<br>Standard of Care |
| MGM v. Vermeer | Breach of Contract<br>Fraud | Bryan Altman | The Altman Law Group | Los Angeles Superior | Damage Analysis |

## BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2015** | | | | | |
| Magpiong v. Invest-U | Shareholder Dissolution Breach of Oral Contract Breach of Fiduciary Duty | Russ Leibson | Gordon & Rees | District Court Clark County Nevada | Valuation Damage Analysis |
| Butler v.Housing Authority City of Los Angeles | Wrongful Termination | Michael Justice | Law Offices of Michael L. Justice | Los Angeles Superior | Damage Analysis |
| Lou et Lin v. Quarante et. al. | Misrepresentation Breach of Fiduciary Duty Breach of Contract | Antoinette Waller | Law Offices of David Alden Erikson | Arbitration | Damage Analysis Valuation |
| Hulavision v. Hulu, NBC | Trade Secrets Trademark Infringement | Robert Vantress | Vantress Law Group | Arbitration | Damage Analysis |
| Super Color Digital v. Powers et. al. | Breach of Duty of Loyalty Intentional Interference Unfair Competition | Mark Goshgarian Merak Eskigian | Goshgarian & Marshall | Santa Ana Superior Complex | Damage Analysis |
| Lujan v, Williams | Personal Injury | Stacy Raphael | Hewitt & Truszkowski | Santa Barbara Superior | Damage Analysis |
| LTC et al. v. Sun West | Breach of Contract | Mary Kaufman | Early Sullivan Wright Gizer & McRae | Central District of California | Damage Analysis |
| Glendale Surgery Partners v. AmSurg Glendale | Breach of Contract | David Veis | Robins Kaplan Miller & Ciresi | Arbitration | Damage Analysis Valuation |
| Willison v. Burlington Coat Factory | Wrongful Termination | Briana Kim | Law Office of Briana Kim | Central District of California | Damage Analysis |
| Kealy v. Ticor Title et al. | Quiet Title Declaratory Relief | Jack Wang | Fidelity National Law Group | Northern County San Diego Superior | Damage Analysis |
| Makhlouf v. Young | Partnership Dissolution | John Crose | Issacs, Clouse, Crose & Oxford | Arbitration | Damage Analysis Accounting |

## BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2014** | | | | | |
| Cuevas v. Mortgage Capital Partners | Breach of Contract | Michael Pappas<br>J. Scott Humphrey | Lesnick Prince & Pappas<br>Humphrey Law | Arbitration | Valuation |
| Beach v. Teixeira | Breach of Fiduciary Duty<br>Accounting | David Hinshaw | Law Offices of David C. Hinshaw | Los Angeles<br>Superior | Accounting |
| Jurewicz v. Holly | Breach of Contract | Greg Brown | Brown & Charbonneau | Arbitration | Accounting<br>Damage Analysis |
| Cornerstone Staffing Solutions v. James | Breach of Fiduciary Duty | Clay Hix | Hill Farrer & Burrill | Northern District<br>of California-<br>San Francisco | Damage Analysis<br>Valuation |
| Weinsaft, Skillin v. Arise, Miers | Breach of Fiduciary Duty<br>Fraud | Robert Sibilia | The Sibilia Law Firm | Arbitration | Accounting<br>Damage Analysis |
| P&G v. Clio, Team Technologies and BrushPoint | Patent Infringement | Ben Deming | DNL Zito | Southern District<br>of Ohio-Western<br>Division | Damage Analysis |
| Duran v. Underwood | Personal Injury | Chad Carlson | AlderLaw PC | Riverside<br>Superior | Damage Analysis |
| Melikyan v. Children's Hospital of Los Angeles | Medical Malpractice | Toby Trobough | Law Offices of Marshall Silberberg | Los Angeles<br>Superior | Damage Analysis |
| Felix v. Union Pacific Railroad | Discrimination<br>Harassment | Dan Stormer | Hadsell, Stormer, Richardson &<br>Renick | Los Angeles<br>Superior | Damage Analysis |
| Zest v. Implant Direct | Patent Infringement | Chris Duggar | Kleinberg & Lerner | Central District<br>of California | Damage Analysis |
| Hufnagel v. McGraw Hill | Wrongful Termination | Mary Schultz | Mary Schultz, PC | District Court for<br>Eastern District<br>of Washington | Damage Analysis |
| Bisogno v. American General Insurance | Breach of Contract | Mohammed Ghods | Ghods Law Firm | Santa Ana<br>Superior | Punitive Damages |
| SP3 v. 401 Harrison | Breach of Contract | Aaron Gundzik | Gartenberg Gelfand Hayton & Selden | Los Angeles<br>Superior | Accounting<br>Damage Analysis |
| Conquest v. HKG | Accounting Malpractice | Bruce Berman<br>Lloyd Pantell | Goodstein & Berman<br>Law Offices of Lloyd S. Pantell | Los Angeles<br>Superior | Standard of Care<br>Damage Analysis<br>Valuation |

**BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2014 Continued** | | | | | |
| Domingo Villas v. Tarnutzer | Breach of Contract | Jim Keathley | Keathley & Keathley | Santa Ana Superior | Damage Analysis |
| Milovich v. Infiniti Select Insurance | Personal Injury | George Straggas | Straggas & Associates | Arbitration | Damage Analysis |
| Gallindo et al. v. Stevie's Catering | Wage and Hour | Ron Wilton | Wilton & Associates | Los Angeles Superior | Damage Analysis |
| Cardiac Science v. LifeCor | Breach of Contract | Robert Hinton | Archer Norris | Los Angeles Superior | Damage Analysis |
| EPG v. Alstom | Patent Infringement | Warren Bleeker | Christie Parker Hale | Central District of California | Damage Analysis |
| Shauli v. Ziv | Wrongful Termination Wage and Hour | Ron Richards | Ronald Richards & Associates | Los Angeles Superior | Damage Analysis |
| Marin v. Ganuelas | Personal Injury | Armen Avakian | Ford, Walker, Haggerty & Behar | Los Angeles Superior | Damage Analysis |
| Media Trust v. Webxu | Breach of Contract Misrepresentation | John Wallace | The Law Offices of Uri Litvak | Arbitration | Damage Analysis Valuation |
| Shannon Fabrics v. Jo-Ann Stores | Trademark Infringement | Eugene Hahm | Lee Tran & Liang | Central District of California | Damage Analysis |

## BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2013** | | | | | |
| <u>Mitsuwa</u> v. Wehba | Breach of Promissory Note Fraudulent Transfer Interference | David Hagopian | Carothers Di Sante & Freudenberger | Los Angeles Superior | Liability Issues Damage Analysis |
| <u>Martinez</u> v. Muhe | Breach of Fiduciary Duty Breach of Contract Fraud | Mohammed Ghods Jeremy Rhyne | Ghods Law Firm | Vista Superior | Damage Analysis Valuation Issues |
| <u>Shinn</u> v. Sabit | Medical Malpractice Battery | Steve Glickman | Glickman & Glickman | Los Angeles Superior | Damage Analysis |
| <u>Leontaritis</u> v. Koursaris, Salmasizadeh et al | Fraudulent Conveyance | Robert Woodbury | Law Office of Robert C. Woodbury | Los Angeles Superior | Valuation Liability Issues |
| <u>Mentor</u> v. Sientra | Unfair Competition Breach of Fiduciary Duty Trade Secrets | Dylan Wiseman | Littler Mendelson | Santa Barbara Superior | Damage Analysis |
| <u>AERC Desmond's Tower</u> v. Ace Gallery | Lease Default | Eric Goldberg | Stutman Treiter & Glatt | US Bankruptcy | Financial Analysis |
| <u>Goldsholle</u> v. Internet Brands | Breach of Contract | Michael Hambly Robert Scott | Law Office of Michael R. Hambly Advocate Law Group | Torrance Superior | Damage Analysis |
| <u>Tzunux & Carrillo</u> v. HK Seafood | Conversion Fraud | Mark Higuchi | DDK Law Corp | Los Angeles Superior | Damage Analysis |
| <u>Chicony Power</u> v. Comarco, adv. | Breach of Contract Intentional Interference | Cathleen Huang | Bowles & Verna | Santa Ana Superior Complex | Damage Analysis |
| <u>Cookson</u> v. County of Riverside | Wrongful Termination | Bill Crosby | Law Office of William M. Crosby | Riverside Superior | Damage Analysis |
| Gietzen, Yolanda's v. <u>Goveia</u> | Breach of Contract | Ted Donohue Dan Kippen | Voss, Cook & Thel | Arbitration | Damage Analysis |
| <u>Martinez et al</u> v Born | Professional Negligence Product Liability | Jennifer Ostertag | Rose Klein & Marias | Compton Superior | Damage Analysis |
| <u>Robbins</u> v. Cement Masons | Wrongful Termination | Edward Torres | Law Offices of Edward A. Torres | Los Angeles Superior | Damage Analysis |

**BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2012** | | | | | |
| MMIT v. Vizio | Patent Infringement | Robert A. Schroeder | Sheldon, Mak, Rose & Anderson | Central District of California Western Division | Damage Analysis |
| Dopaco v. Ample | Patent Infringement | Robert Razzano John Bennett | Baker & Hostetler | Southern District of Ohio | Damage Analysis |
| Behrmann v. Baker | Fraud Breach of Fiduciary Duty | David Jones | Gordon & Rees | Santa Barbara Superior | Damage Analysis |
| Central Pacific Bank v. Fidelity | Breach of Contract Breach of Fiduciary Duty Reformation | Chris Ritter | Early Sullivan Wright Gizer & McRae | Riverside Superior | Damage Analysis |
| Nevitt v. Parking Concepts | Personal Injury | Steven Zwick | Law Office of Steven Zwick | Riverside Superior | Damage Analysis |
| Brite Style Construction v. Suleymanova | Construction Defects Construction Cost Overruns Fraud | Mike Smith | The Altman Law Group | Los Angeles Superior | Accounting Damage Analysis |
| Andalib v. Riley | Attorney Malpractice | Don Hernandez | Hernandez, Schaedel & Associates | Los Angeles Superior | Damage Analysis |
| OC1 Bush, LLC v. PT, LLC | Breach of Contract Breach of Fiduciary Duty | Jay Spillane | Spillane Trial Group | Santa Ana Superior | Damage Analysis |
| The Zone Sports,LLC and Fresno Rock Taco v. National Surety Corp and Fireman's Fund | Breach of Fiduciary Duty | Richard Hamlish | Law Office of Richard Hamlish | Eastern District of California-Fresno | Damage Analysis |
| Arden v Merchant of Tennis | Breach of Contract | Chris Grivakes | Affeld Grivakes Zucker | Central District of California | Damage Analysis |
| DeLuca v. State Fish | Breach of Contract | Alex Cornelius | Costell & Cornelius | Long Beach Superior | Liability Issues Accounting Issues |
| Krumbine v. SNC | Class Action Wage Claim | Lee Gordon | Hagens, Berman, Sobel & Shapiro | Central District of California | Damage Analysis |
| CosmetiCredit v. WFNNB | Breach of Contract Breach of Duty of Good Faith | David Scott | Luper Neidenthal & Logan | Court of Common Pleas, Franklin County, Ohio | Damage Analysis |

**BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2012 Continued** | | | | | |
| JSA Depot v. ForeverLawn | Breach of Contract Interference with Contract | Kalley Aman | Buchalter Nemer | Santa Ana Superior | Damage Analysis |
| Gerchman v. Berryman Products | Product Liability Personal Injury | Stephen Counts | Rose, Klein & Marias | Norwalk Superior | Damage Analysis |
| Perl v. Clark | Breach of Fiduciary Duty | David Hinshaw | Law Offices of David Hinshaw | Santa Monica Superior | Damage Analysis |
| Jenkins v. Allsup | Medical Malpractice | Morton Kamzan | Law Office of Morton A. Kamzan | San Pedro Superior | Damage Analysis |
| Jeon v. Hana Financial | Misrepresentation Fraud | Mark Higuchi | David D. Kim & Associates | Los Angeles Superior | Liability Issues |
| Lee v. Farmers Insurance | Wrongful Termination | Solomon Gresen | Law Offices of Rheuban & Gresen | Los Angeles Superior | Damage Analysis |
| Goldberg v. Stelmach | Breach of Fiduciary Duty | Nick Bravo | Ronald Richards & Associates | Los Angeles Superior | Damage Analysis |
| Greenberg v. Thane Direct | Wrongful Termination | Craig Nickerson | Gordon & Rees | Los Angeles Superior | Damage Analysis |
| Dent Mart Int'l v. iDen Dental Supply | Interference Unfair Competition | Vladhi Khiterer | Khiterer & Park | Los Angeles Superior | Damage Analysis |

**BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS**

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2011** | | | | | |
| Eagle Ridge Manufacturing v. Kilroy Realty | Breach of Contract Fraud | Mark Hartney | Allen Matkins Leck Gamble Mallory & Natsis | Santa Ana Superior | Damage Analysis |
| Azer v. Los Angeles County Sheriff's Office | Failure to Accommodate | Elizabeth Kessel | Kessel & Associates | Los Angeles Superior | Damage Analysis |
| Chavez v. Private Equity Group | Breach of Contract Breach of Fiduciary Duty | Theresa Kristovich | Gordon & Rees | Arbitration | Damage Analysis Liability Issues |
| Ash v. North American Title and Lerner | Breach of Fiduciary Duty Breach of Contract | Philip Bartenetti Richard D. Marks | Clark & Trevithick Richard D. Marks, APC | Los Angeles Superior | Damage Analysis |
| Mandosa v. Leibowitz | Medical Malpractice | Steven Rheuban | Rheuban & Gresen | Santa Monica Superior | Damage Analysis |
| Will-Gary v. Misty Lakes | Breach of Fiduciary Duty | Alina Sorkin | Sorkin Law Group | Santa Ana Superior | Damage Analysis Valuation |
| Schroeder v. Norcold | Wrongful Death | Jeff Lerman | Spile, Siegal, Leff & Goor | Ventura Superior | Damage Analysis |
| Rayii v. Seciada | Wrongful Death | Mark Kramer | Kramer & Kramer | Ventura Superior | Damage Analysis |
| Stewart v. Mission Hospital | Medical Malpractice | Robert Kahn | Law Office of Robert Kahn | Santa Ana Superior | Accounting Damage Analysis |
| Clemmons v. Price, Postel & Parma | Wrongful Termination | Jim Cordes | Law Offices of James H. Cordes | Arbitration | Damage Analysis |
| Fiondella v. SMBF | Elder Abuse Fraud Breach of Fiduciary Duty | Tom Banks | Law Offices of Thomas M. Banks | Arbitration | Accounting Damage Analysis |
| Majeske v. Finmeccanica N.A. | Wrongful Termination | Vida Holguin | Law Offices of Vida M. Holguin | Los Angeles Superior | Damage Analysis |
| Kasim v. Bentley Forbes | Wrongful Termination | Alexandre Cornelius | Costell & Cornelius | Arbitration | Alter Ego Commingling Damage Analysis |
| Starcrest v. Lexington Insurance | Breach of Contract | Kristen Meredith | Lewis, Brisbois, Bisgaard & Smith | Los Angeles Superior | Damage Analysis |
| Ngo v. Nguyen | Wrongful Death | Ann Lakhman | Robert K. Kasamatsu & Associates | Santa Ana Superior | Damage Analysis |

## BARBARA LUNA'S EXPERT WITNESS DEPOSITION TESTIMONY DURING PAST FOUR YEARS

| MATTER | TYPE OF CASE | ATTORNEY | LAW FIRM | COURT | WORK PERFORMED |
|---|---|---|---|---|---|
| **2011 Continued** | | | | | |
| Westpaw v. City of San Bernardino | Temporary Taking | Isaac Braddock | Newsom & Associates | San Bernardino Superior | Damage Analysis |
| Abramson v. Compton | Personal Injury | Jim Alquist | Law Office of Steven Zwick | Santa Ana Superior | Damage Analysis |
| Bang v. Multi-Cultural Telemarketing | Employment | Steven Pearl | The Pearl Law firm | Los Angeles Superior | Damage Analysis |
| Kakkis v. Breastlink | Employment Breach of Contract | Eric Francisconi | Barnes, Crosby, Fitzgerald & Zeman | Santa Ana Superior | Damage Analysis |
| Medversant v. Morrisey | Patent Infringement | Robert Razzano | Baker & Hostetler | Central District of California | Damage Analysis |
| MGM v. Vermeer | Breach of Contract Fraud | Bryan Altman | The Altman Law Group | Los Angeles Superior | Damage Analysis |
| Dabrowski v. Dabrowski | Marital Dissolution | Amanda Brookhyser | Jimmerson Hansen | Las Vegas Superior | Patent Valuation Compensation |

# APPENDIX 3

# BARBARA LUNA'S ARTICLES AND PUBLICATIONS

1. "Analyzing Damages - Perspectives of Plaintiffs and Defendants," ABTL Report, November 1989

2. "Proposition 103 - Determining the Appropriate Responses," Coopers & Lybrand Insurance Newsletter, December 1989

3. "Generators of Hazardous Waste," Chapter 12, Environmental Dispute Handbook - Liability and Claims, John Wiley & Sons, Inc.

4. "Determining Damages In Medical Malpractice Cases," Coopers & Lybrand Briefs

5. "Analyzing Fraudulent Conveyances and Solvency," Coopers & Lybrand Briefs

6. "Valuing Businesses," Coopers & Lybrand Briefs

7. "Using Accountants as Expert Witnesses In Personal Injury Matters," 1996 Expert Witness Update, John Wiley & Sons, Inc.

8. "Unjust Enrichment - An Alternative to Lost Profits," Witness Chair, December 1997

9. "Employment Discrimination and Wrongful Termination," Measuring Damages Involving Individuals - A CPA's Service Guide with Case Studies, AICPA

10. "What is a Reasonable Time for Future Damages?  Should Lost Profits or Lost Value of the Business Be Claimed?"   White, Zuckerman, Warsavsky, Luna, Wolf & Hunt Newsletter, November 2004

11. "Valuing and Selling a Law Practice," Guide for Senior Lawyers, Los Angeles County Bar Association, September 2008

## TABLE OF CONTENTS

I.      MY BACKGROUND, EDUCATION, AND QUALIFICATIONS……………………3

II.     ASSIGNMENT………………………………………………………………………4

III.    MY OPINIONS, THE BASES FOR THE OPINIONS, AND THE DOCUMENTS

ANALYZED…………………………………………………………………………………5

        Opinion No. 1 - Work No. 1 and Work No. 2 (collectively the "Works") are

copyrightable subject matter………………………………………………………………….6

        Opinion No. 2 - Plaintiff Alisa Wolf is the author and owner of the copyright in the

Works………………………………………………………………………………………8

        Opinion No. 3 – Plaintiff Alisa Wolf has exclusive rights as the owner of the copyright in

the Works……………………………………………………………………………………10

        Opinion No. 4 - The copyrights in the Works are valid and strong……………………10

        Opinion No. 5 - Defendants have copied substantial elements of the Works…………12

        Opinion No. 6 – Defendants' Affirmative Defenses Lack Merit……………………...17

        Opinion No. 7: There Exists a Sufficient, Reasonable Causal Connection between

Defendants' Infringement and Their Gross Revenue………………………………………20

IV.     SUMMARY STATEMENT OF OPINIONS………………………………………..21

V.      FEDERAL RULES OF CIVIL PROCEDURE REQUIREMENTS FOR MY EXPERT

REPORT……………………………………………………………………………………21

## I.      BACKGROUND, EDUCATION, AND QUALIFICATIONS

I am an expert in copyright law, an entertainment attorney, and an arbitrator and mediator of entertainment disputes, primarily those in the film and television industries.  I have worked as an entertainment attorney for twenty-nine years.  My first entertainment law experience out of law school was performing entertainment film financing and production work as an associate attorney with Phillips Nizer LLP in New York City from1980 to 1981.  At Phillips Nizer, I represented United Artists as well as independent producers in a wide range of entertainment issues, including copyright issues involving analyzing chain of title and clearance issues. From 1988 through 1993, I worked at The Completion Bond Company ("CBC") as its General Counsel/Director of Legal Affairs, overseeing the negotiation and documentation of various legal agreements involved in completion bond financings. At CBC, I worked on such well-known films as "Driving Miss Daisy," "Dances with Wolves," and "The Silence of the Lambs."  As part of my regular duties at CBC, I reviewed and analyzed chains of title and conducted copyright clearance for each film that was bonded. As a result, I honed a strong expertise in copyright law at CBC, which at the time was bonding more than 100 films per year.

In 1995, I joined Cinema Completions International, Inc. ("CCI") as its Vice President of Business and Legal Affairs, a position I held from 1995-1997.  In 1997, CCI promoted me to Senior Vice President of Business and Legal Affairs, a position I held until February 2002.  At CCI, I oversaw the negotiation and documentation of  business and legal issues with each film project's producers, distributors and banking/financing institutions. While at CCI,  I worked on such notable pictures as "The English Patient," "Traffic" and "Crouching Tiger, Hidden Dragon," performing both business affairs functions and analyzing chains of title and copyright clearance issues. During my time at CBC and CCI, I reviewed and gave legal opinions on approximately 600 screenplays.

Since February 2002, I have been an attorney, arbitrator, mediator and consultant in the entertainment industry working in the areas of film financing, production and distribution.  In 2003-2004, I oversaw the completion and delivery of the film entitled "Shortcut to Happiness" a/k/a "The Devil and Daniel Webster." Most significantly, I dealt with the film's chain of title and intellectual property publicity rights clearance issues, as well as all post-production issues relating to the completion and delivery of that film. Since February 2010, I have successfully

mediated a number of copyright and trademark infringement disputes as a Federal Attorney Settlement Officer for the United States District Court for the Central District of California. I also serve as a Neutral Arbitrator on the American Arbitration Association's Southern California Commercial Panel and its Entertainment Panel. Further, I am an arbitrator on the Independent Film and Television Alliance's Tribunal where I have arbitrated a number of copyright infringement disputes from 2002 to present. My work as a mediator and arbitrator has involved numerous instances of analyzing and providing opinions on issues concerning copyright ownership and validity, infringement, and the application of affirmative defenses to claims of copyright infringement.

Within the past four years, I have acted as an expert witness as set forth in Section III hereof.

My work experience is further summarized in my curriculum vitae attached hereto at Exhibit A.

I received my Bachelor of Arts in 1971 from Hamilton College.  I received my Juris Doctor in 1974 from the Vanderbilt University School of Law.  At Vanderbilt Law, I was a member of the Vanderbilt Journal of Transnational Law. Following graduation from law school, I clerked for Judge Lloyd F. MacMahon of the United States District Court for the Southern District of New York from 1974-1975. Among my many other clerkship duties, I assisted Judge MacMahon with at least eight copyright litigations during my clerkship.

I am an admitted member in good standing of the California, New York, and Tennessee state bars.  I am admitted to practice law in the United States Court of Appeals for the Second Circuit and the United States District Courts for the Central District of California, Southern District of New York, and the Eastern District of New York.

## II.    <u>ASSIGNMENT</u>

Plaintiffs have retained me in this case to render opinions concerning whether: (1) the Works are copyrightable subject matter, (2) Dr. Alisa Wolf is the author of the Works and the exclusive owner of the copyrights relating thereto, (3) the Works are sufficiently original and should be afforded copyright protection, (4) the copyrights in the Works are valid and strong, (5) Defendants have infringed Dr. Wolf's copyrights, (6) Defendants' alleged affirmative defenses

have any merit, and (7) Dr. Wolf can establish a sufficient, reasonable causal connection
between defendants' infringement and their gross revenue from providing their competing
practical filmmaking program.

## III.   MY OPINIONS, THE BASES FOR THE OPINIONS, AND THE DOCUMENTS ANALYZED

In addition to my experience in copyright law, the data and other information that I
reviewed and/or considered in forming my opinions herein are:

1. Third Amended Complaint and Exhibits thereto and the Answer to said Complaint,
2. Fourth Amended Complaint and Exhibits thereto and the Answer to said Complaint,
3. Joseph Travolta deposition transcript dated April 17, 2015,
4. Wendy Travolta deposition transcript dated September 3, 2015,
5. Defendant Joseph Travolta's Responses and Supplemental Responses to Interrogatories of Plaintiffs,
6. Memorandum of Understanding dated November, 2012 of Futures Explored with Joey Travolta's Inclusion Films relating to Pilot Film Workshop for Adults with Development Disabilities,
7. Foreword written by Joey Travolta to plaintiff Alisa Wolf's book published in 2005 entitled "Acting for Kids on the Autistic Spectrum,"
8. Practical Film Vocational Program for People with Developmental Disabilities (Program Service Design) dated May 10, 2006, written by plaintiff Alisa Wolf, ("Work No. 1")
9. Actors for Autism, Practical Film Program Proposal dated September 5, 2006, written by plaintiff Alisa Wolf, ("Work No. 2")
10. Inclusion Films: A Practical Film Vocational Program for People with Developmental Disabilities (Program Service Design) dated October 7, 2006, ("Inclusion Films Work No. 1")
11. Inclusion Films: A Practical Film Workshop/A Two Phase Practical Film Vocational Program for People with Developmental Disabilities (Program Service Design) dated February 4, 2008, ("Inclusion Films Work No. 2"); and

12.     Inclusion Films Practical Film Workshop / A 20 week Vocational Based Program for Adults with Developmental Disabilities/Program Service Guide/Draft updated April 19, 2011. ("Inclusion Films Work No. 3")

13.     Letter from DDS staff attorney and Excel spreadsheet prepared by the California Department of Developmental Services dated July 6, 2015 (the "DDS Spreadsheet").

14.     September 15, 2015 e-mail from defense counsel to plaintiffs' counsel and six attachments thereto that opposing counsel alleges are the results of its investigation into defendants' claim that Dr. Wolf plagiarized language from online materials in order to create her Works.

I have not yet had the opportunity to review the reports from plaintiffs' other expert witnesses or those from defendants' experts.  I reserve the right to provide further opinions regarding the expert witness reports of plaintiffs' other retained expert witnesses, as well provide further opinions regarding the reports and opinions of the defendants' retained experts.

## **Expert Opinions**

1.      ***Opinion No. 1 – Plaintiff's Work No. 1 and Work No. 2 (collectively the "Works") are copyrightable subject matter.***

The Works are sufficiently original

The Copyright Act protects only "original works of authorship." 17 U.S.C. § 102(a). Originality does not require uniqueness. "'Original' in reference to a copyrighted work means that the particular work 'owes its origin' to the 'author.' No large measure of novelty is necessary." *Alfred Bell & Co. Ltd. v. Catalda Fine Arts*, Inc., 191 F.2d 99, 102 (2d Cir.1951) (citations omitted). Thus, "originality for copyright purposes amounts to 'little more than a prohibition of actual copying.'" 1 Nimmer, supra, § 2.01[B] (*quoting Alfred Bell*, 191 F.2d at 103; *accord Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir.2004).

As alleged in her operative Complaint, Plaintiff Alisa Wolf authored the Works.  The Works are her original and creative expressions reduced to writing.  As the Works were independently created by Dr. Wolf, they are protected by copyright law.  Because the Works are in written form, it is my opinion that they qualify as "literary works," under Section 102(a) of the

- 6 -

Copyright Act, and as such, the Works are copyrightable subject matter.  There is no requirement under copyright law that a work of authorship possess "striking uniqueness, ingenuity or novelty."  *See Alfred Bell & Co. Ltd. v Catalda Fine Arts. Inc.*, 191 F.2d 99 (2d Cir 1951). To have the requisite degree of originality, a work need only possess sufficient written expression of their author.  The Works, as fixed by the author, are sufficiently creative to meet the recognized standards for copyright protection in that they contain explanatory material and other original expression of the author.  In sum, Dr. Wolf wrote the Works in a way that exceeds the threshold under copyright law that they contain a modicum of creativity (i.e., "originality").

I have recently become aware that defendants are now alleging that plaintiff may have copied some of the language contained in the Works from other sources available on the Internet. I have reviewed those documents from defense counsel that I noted above at number 14 under Section III. In light of the fact that I have only recently been made aware of this allegation and only recently received and have not reviewed in depth the "evidence" that defendants provided to plaintiffs' attorney, I must reserve my comment on these allegations for my rebuttal expert report.

<u>The Works are non-functional and the "merger doctrine" does not bar copyrightability of the Works</u>

With respect to textual works, when a plaintiff's work conveys precisely the idea expressed and no more, the expression of the idea is indistinguishable from the idea itself, and thus not entitled to copyright protection. *See e,g., Stern v. Does*, 978 F.Supp. 2d 1031, 1042 (C.D. Cal. 2011). "Elements of expression that necessarily follow from an idea, or expressions that are as a practical matter, indispensable or at least standard in the treatment of a given idea are not protected." *Allen v. Academic Games League of Am., Inc*., 89 F.3d 614, 617 (9th Cir.1996). However, compilations of facts and procedures can enjoy copyright protection if "possess[ing] at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc*., 499 U.S. 340, 345 (1991). "If a given 'procedure' is reduced to written form, this will constitute a protectable work of authorship, so as to preclude the unlicensed copying of 'the expression' of the procedure, even if the procedure per se constitutes an unprotectable 'idea'." M. Nimmer & D. Nimmer, Copyright, at § 2.03[D] (2012).

Any argument by defendants that the Works are merely functional would fall short.  In the copyright context, courts generally use the following analysis: copyright protects the way that an idea or concept is expressed or set down in some medium of expression, in this case textual. If the text is found to be a "useful article," then courts analyze whether the item contains aesthetic expression that may be separated from the text's utilitarian features. Using an analogy to decorative furniture, Dr. Wolf can be said to be seeking copyright protection for her creative expression of her conceived approach of how to create a film training program for persons with special needs. The creative ways that she expressed her concepts in the Works were superfluous nonfunctional elements contained in the Works, which were wholly unnecessary to the utilitarian parts of the program (if any), and, consequently, were separable from the functional part of the program. As such, the Works are generally protectable.

Similar to the concept of functionality, the merger doctrine in copyright law exists as a defense to copyright infringement for unavoidable copying to express an unprotected idea or fact. This often takes place when one author has no choice but to copy or paraphrase another author's words. This occurs when there is just one or a very few ways to adequately express an idea or fact. In these cases, the idea or fact merges with the expression; in other words, the original author's words are given very limited protection because of the limited manner in which to express the concepts, ideas or processes underlying the expression. Defendants did not need to copy Dr. Wolf's highly distinctive way of describing her special needs practical filmmaking program set forth in the Works, as there were a number of ways to express in writing such a program.

<u>The Works are not merely facts and ideas</u>

The Copyright Act protects expressions fixed in a tangible medium, but does not protect ideas, procedures processes, systems, methods of operation and the like. 17 U.S.C. §102(b). The Copyright Act, however, protects the words that express ideas. Plaintiff's work is a creative expression of ideas of her way of organizing and operating a program for autistic young adults in studying various aspects of producing, editing and distributing a film. Thus, defendants cannot copy, distribute, or perform her expression of the program without her permission.

**2. *Opinion No.2 - Plaintiff Alisa Wolf is the author and owner of the copyright in the Works.***

- 8 -

Plaintiff Alisa Wolf did not create the Works in the scope of her employment as an employee of The Entertainment Experience or any other person or entity. Instead, from the materials that I have analyzed, it appears that Dr. Wolf authored the Works on her own time and solely for herself. Among other things, I understand that defendants did not exercise any of the indicia of supervision and control necessary to establish an employment relationship for purposes of copyright ownership as generally described in *CCNV v. Reid*, 490 U.S. 730 (1989).

Based on my analysis of the records disclosed in this report, Dr. Wolf did not create the Works for Defendants as an employee of them or another party, and she did not create them as a specially commissioned independent contractor:

In order for a work created by an independent contractor (i.e., a freelancer) to qualify as a "work made for hire," three specific conditions found in the Copyright Act must be met:

1.      The work must be "specially ordered" or "commissioned." What this means is the independent contractor is paid to create something new (as opposed to being paid for an already existing piece of work);

2.      Both parties must expressly agree in a signed document that the commissioned work shall be considered a "work made for hire"; and

3.      The work must fall within at least one of the following nine narrow statutory categories of commissioned works list in the Copyright Act: (i) a translation, (ii) a contribution to a motion picture or other audiovisual work, (iii) a contribution to a collective work (such as a magazine), (iv) as an atlas, (v) as a compilation, (vi) as an instructional text, (vii) as a test, (viii) as answer material for a test, or (ix) as a supplementary work (i.e., "a secondary connected to a work by another author" such as a foreword, afterword, chart, illustration, editorial note, bibliography, appendix and index).

17 U.S.C. §101 ("work made for hire" definition).

Here, the facts are that no party employed Dr. Wolf at the time she authored the Works and Dr. Wolf has never entered into a signed agreement with any party regarding ownership of the Works. Moreover, it is my opinion that the Works do not fall within any of the nine statutory categories. The registration of the copyright in Work No. 1 is prima facie evidence that Dr. Wolf

is the owner of the copyright in that work. I have not seen any evidence in the materials that I reviewed that serves to adequately rebut this presumption.

**3. *Opinion No 3 – Plaintiff Alisa Wolf has exclusive rights as the owner of the copyright in the Works.***

As the creator of the Works, Dr. Wolf has the following exclusive rights to control how the Works are used:

- Reproduction right – the right to make copies of a protected work;
- Distribution right – the right to sell or otherwise distribute copies of the work to the public;
- Right to create adaptations (or derivative works) – the right to prepare new works based on the protected work; and.
- Performance right – in the case of works, the right to perform the copyrighted work publicly;
- Display right – the right to display a work in public.

17 U.S.C. §106.

Dr. Wolf's copyrights may be exercised only by her, as the author or a person or entity to whom she has transferred all or part of her rights.  If someone wrongly uses the protected material, she as copyright owner can sue and obtain compensation for any losses suffered.

**4. *Opinion No. 4 - The copyrights in the Works are valid and strong.***

My review of the materials described in this report shows that the following are undisputed facts regarding Dr. Wolf's copyrights.

A.    <u>The degree of strength of Plaintiff Wolf's Works.</u>

<u>Work No. 1.</u>  The facts are that Work No. 1 authored by plaintiff Alisa Wolf and dated May 10, 2006 was deposited for registration with the U.S. Copyright Office on August 11, 2006. The date of registration may be relevant to other issues, such as damages and attorney's fees. Regardless, the registration certificate is presumptive evidence of the facts stated therein. Moreover, none of the defendants have applied for registration of their infringing program design

- 10 -

entitled Inclusion Films dated October 7, 2006 A Practical Film Vocational Program ("Inclusion Film Work No. 1"). That material is substantially similar to Work No. 1 as will be discussed herein.

Work No. 2.  The facts are that Work No. 2 contains the copyright sign ©and authorship attribution to Dr. Wolf on its face, and is dated September 5, 2006 (date of creation) Plaintiffs' counsel applied to register Work No. 2 on November 24, 2014. Defendants have not applied to register with the U. S. Copyright office the Inclusion Films works dated February 4, 2008 ("Inclusion Film Work No. 2") and April 19, 2011 ("Inclusion Film Work No. 3") and the other Inclusion Films versions of their works copying defendants' competing filmmaking program. If defendants believed that they had originally authored any portion of their infringing works, it is reasonable to conclude that they would have attempted to register the copyright in them. I have not seen any evidence that defendants have attempted copyright registration of their works and plaintiff's counsel has informed me that he is not aware of any such registration despite searching with the U.S. Copyright Office for a registration issued to defendants.

Another important fact pointing to the strength of the copyrights is that the Copyright Office registered the copyright in Work No. 1 on August 11, 2006, months before any creation date on any of defendants' Inclusion Films Works, including the material dated October 7, 2006.

B.   The degree of strength of the Works as compared to other textual works such as screenplays, computer software instruction manuals, textbooks, and the like.

Because copyright protection only extends its protection to expression rather than the underlying facts and ideas, works in which the particular words used by the author are important and distinctive such as poems, novels and plays enjoy the most copyright protection. Works that are disseminated for their ideas and facts that they contain, not their language receive somewhat less protection. These kinds of writings include most types of factual works such as textbooks, histories, biographies, how-to do books and news stories. Of course, in this latter category, there is vast distinction between works written with some creative flair and context as opposed to mundane recitation of sequential events.  Finally, and only by way of example, works that are almost entirely governed by the underlying ideas, such as telephone directories, receive the least protection.

While not completely susceptible to either of the first two categories described above, there can be no dispute that the Works are not purely creative writing.  Instead, they seek to convey concepts that render the works closer to textbooks or how-to books.  Nonetheless, the concepts are not of such nature that the methods of expression are limited.  Indeed, and solely by way of example, unlike telephone directory white pages concerning which the expression is almost totally dictated by the underlying concept, the Works reflect significant creativity as to the structure, selection of words and phrases to convey the underlying concepts, the overall literary content, and the overall expression which establishes that the works are capable of significant protection from the copying of the expression used in the Works even though the underlying ideas are unprotected.  As such, the similarities identified below are similarities as to protectable expression, not simply concepts.

Based on my experience reviewing at least 600 screenplays during the course of my work in the entertainment business, I believe that the Works are most similar to a screenplay, which has both highly original elements as well as more stock elements which provide the practical roadmap for filming the screenplay. The creative expression of the screenwriter in conveying his or her expression of the creative expression of the screenplay are mixed with practical guideposts such as descriptions of time and weather in scenes, characters' age, dress and appearance, locational description, description of extras and the like. Thus, like a screenplay the Works are protectable expression.

5. ***Opinion No. 5 - Defendants have copied substantial elements of the Works.***

In the absence of an admission or other direct proof of copying, copyright infringement is premised on proof of access and "substantial similarity" between the works at issue.  Moreover, these two factors are weighed on an inverse sliding scale.  The greater the access, the less a showing of similarity between the works is required.  The greater the similarity, however, the less access needs to be established.  Here, as alleged in the operative complaint, the facts establish that access existed.  Therefore, the only real issue for finding infringement occurred is to prove substantial similarity.

A. <u>**Comparison of Plaintiff's Work 1 with Defendants' Inclusion Films Work No. 1.**</u>

- 12 -

I have compared plaintiff's Work No. 1 consisting of 4 pages and her Work No 2 consisting of 17 pages to defendants' program entitled Inclusion Films: A Practical Film Vocational Program for People with Developmental Disabilities (Program Service Design) dated October 7, 2006 ("Inclusion Films Work No. 1") consisting of 6 pages. The first three pages of the text of the Inclusion Films Work No. 1 are *verbatim copies* from Work No.1.

Verbatim: The sections of the Inclusion Films Work No. 1 copied verbatim are as follows:

(1) Mission Statement;

(2) Entrance Criteria;

(3) Referral Process;

(4) Exit Criteria;

(5) Participation Limits, and

(6) Outcomes.

Much of the remainder of Inclusion Work No. 1 is verbatim from Work No. 2. The following sections of the Inclusion Films Work No. 1 were copied verbatim from Work No. 2, which was prepared prior to the Inclusion Work No.1:

(1) Program Concept from Work No. 2 Overview;

(2) Weeks 1-4 (Term 1);

(3) Weeks 5-10 (Term 2);

(4) Weeks 11-14 (Term 3)[1];

(5) Weeks 15-24 (Term 4)[2];

(6) Admissions Process-largely copied from the last paragraph of Work No. 2's Referral Process; and,

---

[1] The only difference here is that defendants' use of this portion from Work No. 2 addresses Weeks 11-18; however, defendants' chosen text is copied verbatim from Work No. 2.
[2] The only difference here is that defendants' use of this portion from Work No. 2 addresses "Weeks 19-24"; however, defendants' chosen text is copied verbatim from Work No. 2.

(7) Absence Policy copied from Work No. 2 Exit Criteria.

My estimate is that more than 95% of plaintiff's Work No. 1 and Work No. 2 was copied verbatim by defendants in compiling the Inclusion Film Work No. 1.

**B.  Comparison of Plaintiff's Work 2 with Defendants' Inclusion Films Work No. 2 and Inclusion Films Work No. 3.**

I also have compared plaintiff's Work No. 2 to the two longer versions of the Inclusion Films program, i.e., Inclusion Films Work Nos. 2 and 3. Again, as defined above, the first longer program work is entitled Inclusion Films: A Practical Film Workshop/A Two Phase Practical Film Vocational Program for People with Developmental Disabilities (Program Service Design) dated February 4, 2008 ("Inclusion Films Work No. 2"). The second longer work is Inclusion Films Practical Film Workshop / A 20 week Vocational Based Program for Adults with Developmental Disabilities/ Program Service Guide/Draft updated April 19, 2011 ("Inclusion Films Work No. 3")

(1)    Comparison of Plaintiff's Work No. 2 to Defendants' Inclusion Films Work No. 2 shows that there is both verbatim copying of Work No. 2 as well as portions that are substantially similar to Work No. 2.

Verbatim:  The following sections of Inclusion Films Work No. 2 are copied almost verbatim from Work No. 2 with only an occasionally changed word or phrase:

(1) Mission Statement from the first paragraph of Work No. 2's Overview;

(2) Entrance Criteria from Entrance Criteria;

(3) Program Concept from the second paragraph of Work No. 2's Overview;

(4) Exit Criteria from the last paragraph of Work No. 2's Exit Criteria;

(5) Participation Limits-slightly modified from 30 students for five-month program from Work No. 2's 30-40 for six-month program;

(6) Outcomes Phase 1-2 almost verbatim from the second paragraph of Work No. 2's Outcomes;

(7) Paragraph 1 and the footnote of Admission Process of Inclusion Films No. 2 is from the last paragraph of Work No. 2's Referral Process; and,

(8) Absence Policy which is identical to the first two paragraphs of Work No. 2's Exit Criteria.

Substantial Similarity Comparison:

Independent of the verbatim copying, the structure and wording of the curriculum section of Inclusion Films Work No. 2 is substantially similar to that of Work No. 2.  Phase 1 and Phase 2 curricula of Inclusion Films Work No. 2 is divided by week while  the curricula of Work No. 2 is divided  into four 6-week terms. The subject matter that is covered in each curricula is strikingly similar both in sequence and substance. In addition, the film instruction of Inclusion Films Work No. 2 is very similar to that of Work No. 2. The following  are examples of sections that are substantially similar:

Terminology - Phase I, Week 1 of Inclusion Films Work No. 2 at the bottom of page 3 thereof is also discussed in  Work No. 2's Week 1-4 at the middle of page 2 thereof.

Story/Screenplay of Inclusion Films Work No. 2 in Phase I, Week 2 at the top of page 4 thereof is substantially similar to Writing section description of Work No. 2 at the middle of page 4 thereof.

Cinematography of Inclusion Films Work No. 2 in Phase I, Week 5 at the bottom of page 4 thereof is substantially similar to Work No. 2's Camera and Lighting at the middle of page 5 thereof.

Post-Production Editing for Individual Project of Inclusion Films Work No. 2 in the middle of page 7 thereof is substantially similar to the Editing section of Work No. 2 at the bottom of page 6 thereof.

In addition, the description and expression of the goals for  various training subjects and what the participants will learn as set forth in Inclusion Films Work No. 2's "Outcomes" bullet points are substantially similar to Work No. 2's "Evaluation Process" bullet points. Although Inclusion Films Work No. 2 does add some additional language, I conservatively estimate that this additional language, constitutes no more than 50% of Inclusion Films Work No. 2 text.

- 15 -

My estimate is that more than 25% of plaintiff's Work No. 2 was copied verbatim by defendants in compiling the Inclusion Film Work No. 2.

(2) <u>Comparison of Work No. 2 to Inclusion Films Work No. 3</u> shows that there can be no dispute that there are sections of Inclusion Films Work No. 3 that are verbatim from Work No. 2 as well as of non-verbatim material therein that is substantially similar to Work No. 2.

<u>Verbatim</u>: The following sections of Inclusion Films Work No. 3 are copied almost verbatim from Work No. 2 with only an occasionally changed word or phrase:

(1) First introductory sentence of Inclusion Films Work No. 3 is from the first sentence of Work No. 2's Overview;

(2) Entrance Criteria from Entrance Criteria;

(3) Exit Criteria from the last 2 paragraphs of Work No. 2's Exit Criteria;

(4) Participation Limits-slightly modified 15-30 participants in 5 months versus 30-40 participants in 6 months for Work No. 2;

(5) Second paragraph of Outcomes/Objectives is from second paragraph of Work No. 2's Outcomes;

(6) Program Concept which is taken almost verbatim from Work No. 2's Paragraph 2 of Overview;

(7) Paragraph 1 and the footnote of Admission Process from Inclusion Films Work No. 2 is identical to the last paragraph of Work No. 2's Referral Process; and,

(8) Absence Policy which is identical to the first two paragraphs of Works No. 2's Exit Criteria.

<u>Substantial Similarity Comparison</u>:

Again, independent of the use of verbatim language, the structure and wording of the curriculum sections are substantially similar when Inclusion Films Work No. 3 is compared to Work No. 2

Inclusion Films Work No. 3 curriculum section is slightly shorter in overall term length than the curriculum section in Work No. 2. Again, the two works break down the curriculum into slightly different units of time.  However, the overall descriptions, as well as the sequencing of the subject matter is strikingly similar. The following are examples of sections that are substantially similar:

Acting/Writing of Inclusion Films Work No. 3 at the top of page 4 thereof is substantially similar to the Writing section of Work No.2 at the middle of page 4 thereof.

Lighting/ Camera of Inclusion Films Work No. 3 at the middle of page 3 thereof is substantially similar to Work No. 2's Camera and Lighting at the middle of page 5 thereof.

Editing of Inclusion Films Work No. 3 at the top of page 5 thereof is substantially similar to the Editing section of Work No. 2. towards the bottom of page 6 thereof.

In addition, the Inclusion Films Work No. 3's "Goals/Objectives" bullet points for the various training subjects is substantially similar to Work No. 2's "Evaluation Process" bullet points. Both of these sets of bullet points emphasize what will be learned by the participants using strikingly similar terms and phrases.  Again, although Inclusion Films Work No. 3 includes some additional language, I conservatively estimate that this additional language constitutes no more than 50% of Inclusion Films Work No. 2

My estimate is that more than 25% of plaintiff's Work No. 2 was copied verbatim by defendants in compiling the Inclusion Film Work No. 3.

**6.      *Opinion No. 6 – Defendants' Affirmative Defenses Lack Merit.***

A.      Work for Hire Doctrine

This defense is not supported by the facts. As set forth in detail in Opinion 2 above, plaintiff Alisa Wolf was never an employee of any of the defendants or a third party when she created the Works. In addition, she did not create her Works as works for hire as an independent contractor because (a) there was no writing and (b) these works are not encompassed by the limited categories of works for which copyright recognizes a "work for hire."

B.      Fair Use

- 17 -

The facts of the case must be evaluated in light of four factors to determine if the fair use doctrine is applicable: (1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107.

Factor 1 - The Purpose and Character of the Use.  The defendants' use of the Works was clearly for a commercial purpose whereby a profit was earned by them. As such, this factor clearly weighs against defendants' reliance on the fair use defense.  Under fair use analysis, commercial use does not lose its commercial character even if defendant's use is ultimately intended for educational purposes. "The fair-use doctrine is not a license for corporate theft, empowering the court to ignore copyright whenever it determines the underlying work contains material of possible public importance." *Iowa State Univ. Research Found., Inc. v. Am. Broad. Cos*., 621 F.2d 57, 61 (2d Cir. 1980).

Factor 2 - The Nature of the Copyrighted Work. The fair use privilege is more extensive for works of information such as scientific, biographical or historical works than for works of entertainment. As discussed in Opinion 4B above, the Works are analogous to a screenplay, and are still afforded copyright protection, especially in the case where the other three factors weigh heavily against the defendants.

Factor 3 - The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole. This factor evaluates how much of the Works were used (quantitative) as well as whether the essence of the Works has been used (qualitative). Verbatim copying exceeds the purpose of the use and would be held by most courts as outside of fair use when used for commercial purposes. In the present case, as discussed in my prior opinions above, significant portions of Dr. Wolf's Works appear verbatim in the Inclusion Films' works. Moreover, the material that is copied verbatim includes the key provisions of Dr. Wolf's creative expression of the concept for her program. Fair use is much less likely in a situation such as the present case where defendants copied verbatim large parts of the Works.

Factor 4 - The Effect of the Use Upon the Potential Market for, or the Value of, the Copyrighted Work. This factor is generally considered to be the single most important element

- 18 -

of the fair use analysis according to the case law. Although the fourth factor is connected to the previous three factors, it most closely relates to Factor 1, where the presumption of injury to the owner arises from the commercial use of the copyrighted work. The use of the Works by defendants profoundly affected the value of the Works to its owner, plaintiff Alisa Wolf.  As a result of defendants' conduct, she could not exploit her Works for her economic benefit and actually lost a contract with the Lanterman Regional Center that was instead awarded to Defendant Travolta.

C.    Joint Authorship

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. §101. A "joint work" requires each author to make "an independently copyrightable contribution." *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir.1990). "The authors of a joint work are co-owners of copyright in the work." 17 U.S.C. § 201(a).

In order to overcome the presumption in favor of plaintiff as copyright registrant Dr. Wolf, Defendant Joey Travolta  has the burden of proof to establish three essential elements necessary to qualify as a joint author with Dr. Wolf, the copyright owner of the Works: (1) a copyrightable contribution, (2) the requisite intention to merge their contributions, and (3) a unitary whole.  It is the first two elements that are at issue in this dispute. Defendants have not advanced any facts that prove that both plaintiff and defendant Joey Travolta intended to be joint authors at the time the work was created by plaintiff. In addition, as the party asserting joint authorship, Joey Travolta has the heavy burden of proving that his contributions were independently copyrightable. *See Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008). In any case, joint authors (as joint owners) owe each other a duty to account to one another for profits that they receive in connection with the jointly authored copyrighted work and have to share those profits with the other author. I am unaware of any effort by Defendants to share in such profits with Plaintiff.

**7.    *Opinion No. 7: There Exists a Sufficient, Reasonable Causal Connection Between Defendants' Infringement and Their Gross Revenue.***

To be awarded any portion of a defendant's net profits in a copyright infringement case, the plaintiff needs to show "profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages" 17 U.S.C. §504(b). The requirement of showing attribution between the infringement and profits requires that plaintiff "prove only that the profits it [seeks] to recover are 'reasonably related to the infringement.'" *William A. Graham Co. v. Haughey*, 568 F. 3d 425, 443 (3rd Cir. 2009)(citations omitted). "[U]nder § 504(b), all gross revenue is presumed to be profit 'attributable to the infringement' unless the infringer is able to demonstrate otherwise." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 512 n. 9 (4th Cir. 2002).

The DDS Spreadsheet indicates that the California Regional Centers and other private third parties have reported paying defendants at least $7,195,203 from January 1, 2007 through July 6, 2015. Based on my review of plaintiffs' complaints and defendants' discovery responses, I understand that in order to be entitled to any revenue through the Regional Center system, defendants need to become "vendorized" by the Regional Centers. Plaintiffs' pleadings inform me that part of the process of becoming vendorized is submitting a written "program design" that must be approved by a Regional Center and adhered to throughout the course of offering services for profit as an approved vendor. Only upon vendorization could defendants begin providing services for profit to customers, and throughout their provision of services, defendants needed to adhere to their submitted infringing program design, unless and until excused by a Regional Center. Causal nexus between defendants' infringement of the Works and the revenues received by defendants can be seen from the fact that defendants did not create their own original program designs, nor hired someone else to do so. Instead, they simply copied Dr. Wolf's Works. Defendants must have believed that to be approved for vendorization they needed to submit a program design that a Regional Center would approve, so that defendants could subsequently sell their services as a practical filmmaking program. Alternatively, perhaps defendants did not have confidence in their ability to create an original program design and secure vendorization on their own.

Based on my review of the pleadings and defendants' discovery responses, I am informed and believe that defendants' sole source of their reported revenues was their filmmaking services as approved Regional Center vendors. I have not seen any evidence indicating that defendants

received any revenue from other sources, such that could be plausibly disconnected from their provision of so-called practical filmmaking services to persons with special needs. Further, I have not seen any information indicating that any Regional Center or the DDS excused defendants from having to adhere to their infringing versions of Dr. Wolf's Works in providing their services. I have also not seen any evidence showing or suggesting that defendants would have been able to obtain any revenue from the sale of their practical filmmaking services in the absence of Regional Center approval of their infringing program designs. To the contrary, the materials I have reviewed cause me to believe that the Regional Centers have vendorized defendants' practical filmmaking services on the basis, at least in part, of approval of defendants' infringing program designs. The infringing works appear to have been an integral link in defendants' ability to reap profits.

## IV.    SUMMARY STATEMENT OF OPINIONS

The Works are copyrightable subject matter. Dr. Wolf is the author of the Works and the exclusive owner of the copyrights relating thereto. Dr. Wolf's Works are sufficiently original and should be afforded copyright protection. The copyrights in the Works are valid and strong. Defendants have infringed Dr. Wolf's copyrights by often utilizing verbatim parts of the Works and otherwise utilizing language that is substantially similar to that of the Works. Defendants' alleged affirmative defenses lack merit. Finally, there is a sufficient, reasonable causal connection between defendants' infringement and their gross revenue from providing their competing practical filmmaking program.

## IV.    FEDERAL RULES OF CIVIL PROCEDURE REQUIREMENTS FOR MY EXPERT REPORT

Set forth below is the specific information requested by the Federal Rules of Civil Procedure for expert reports:

### A.  Opinions and Bases Therefore

The opinions to be expressed, and the bases for each opinion are set forth above in Section III above.

### B.    Information Considered

- 21 -

In addition to my general experience in copyright law, the data or other information considered in forming my opinions is referenced in Section III hereof.

### C.    Exhibits

The only exhibit attached to this report is my resume, which is Exhibit A hereto.

### D.    Qualifications

My qualifications are summarized in Section 1 hereof and are set forth in my Resume, attached hereto.

### E.    Publications

Author "Guarantying a Hit (of Miss) / Understanding the Completion Guaranty Business in Hollywood," Vanderbilt Journal of Entertainment Law & Practice, Vol. 2, No. 2, at 137 (2000).

### F.    Guest Speaker

I have been a guest speaker at UCLA Extension courses on movie production lecturing on various aspects of film production and financing and completion guaranties.

### G.    Compensation

My compensation in this matter is $500 per hour for all work that I perform.

### H.    Testimony in Past Four Years as Expert Witness

The following is a list of all cases in which I have testified as an expert at deposition, in an arbitration, or at trial in the past four years:

*Comerica Bank v. Intertainment Licensing GmbH et al*., Independent Film & Television Alliance Arbitration No. 03-14.

*Cottonwood Pictures, LLC v. Icon Film Distribution Ltd*., Independent Film & Television Alliance Arbitration No. 11-15.

*Newbridge Film Capital LLC v. cineFinance Insurance Services on behalf of Houston Casualty Company*, Independent Film & Television Alliance Arbitration No. 09-184.

- ### -

As I examine additional materials, preform further analysis, and reach new or revised conclusions, I reserve the right to revise and supplement my opinions and conclusions contained herein.

Dated this 30th day of September 2015, at Los Angeles, California.

_____

James W. Coupe, Esq.

# EXHIBIT A

# JAMES W. COUPE

Address:   777 South Figueroa Street, Suite 2800, Los Angeles, CA  90017

Office:  (213) 406-1171   Mobile:  (818) 421-9622   Email:  barrister74@msn.com

## Expert Witness Work & Alternative Dispute Resolution

- Expert witness and litigation consultant in copyright, trademark and music licensing matters and in all aspects of production, financing and distribution in the theatrical motion picture and television industry.

- Active as a dispute resolution professional for over twenty-five years with substantial time as an ADR neutral. Currently serves on the American Arbitration Association's Commercial Panel of Neutral Arbitrators, the International Arbitration Tribunal of the Independent Film and Television Alliance ("IFTA"), and the Attorney Settlement Panel of the U.S. District Court for the C.D. Cal. Practice involves both arbitration and mediation in media industry matters, including copyright and trademark disputes, as well as in general commercial matters.

## Entertainment Legal/Business Affairs, Production, Distribution & Corporate

- Performs legal and business affairs services for production entities including copyright, trademark and music licensing matters, drafts and negotiates all major agreements with cast and crew, the guilds, the distributors, and the banks and related completion guaranty documentation; also handled co-publishing and license agreements relating to interactive entertainment software with Electronic Arts.

- Structures business and legal aspects of financing of motion picture and television productions backed by completion guaranties or otherwise secured, including both foreign and state tax subsidy financing, co-production financing, split rights financing and credit supported and secured financing, with various foreign countries including: Germany, Canada, United Kingdom, Isle of Man, France, Luxembourg and Australia as well as individual states in U.S.

- Drafts, negotiates and coordinates the legal documentation relating to the above referenced productions. Transactions include the following films and TV series: *Hero*, *The English Patient*, *Crouching Tiger Hidden Dragon*, *Traffic*, *Dances with Wolves*, *Driving Miss Daisy*, *Cliffhanger*, *The Silence of the Lambs*, *Baywatch*, and *A River Runs Through It*.

- Negotiates and drafts financing and bank credit agreements, letters of credit, security documentation and inter-creditor agreements related to film financings. Negotiates and drafts settlement agreements relating to motion picture disputes.

- Represents financiers and distributors in negotiation of distribution agreements, loan agreements, completion bond documentation, development contracts and acquisition agreements, copyright and trademark matters and music licensing.

- Represented Walt Disney in various corporate and litigation capacities while at Donovan Leisure and United Artists while at Phillips Nizer.

- Active corporate finance lawyer at ARCO including negotiating revolving credit agreements, public offerings of debt securities, real estate financing and acquisitions. Spearheaded multi-million dollar divestitures of certain ARCO assets.

## Employment History

- **Private Practice**, Los Angeles, CA                                           *2002–pres.*
  Attorney, Arbitrator/Mediator, Consultant & Expert Witness
- **Cinema Completions Intl.**, Studio City, CA                               *1995–2002*
  Senior VP, Business & Legal Affairs
- **Private Practice**, Los Angeles & Pasadena, CA                         *1993–1995*
  Attorney
- **The Completion Bond Company, Inc.**, Los Angeles, CA          *1988–1993*
  General Counsel/Director of Legal Affairs
- **Beverly Enterprises**, Pasadena, CA                                          *1986–1988*
  Chief Counsel
- **Atlantic Richfield Company**, Los Angeles, CA                         *1981–1986*
  Senior Corporate Counsel
- **Phillips Nizer**, New York, NY                                                   *1980–1981*
  Associate
- **Donovan Leisure Newton & Irvine**, New York, NY                 *1975–1980*
  Associate
- **Judge Lloyd F. MacMahon, U.S. District Court, S.D.N.Y.**, New York, NY   *1974–1975*
  Law Clerk

## Education

**J.D. Vanderbilt University Law School**                                       *1971-1974*
Member, Vanderbilt Journal Transnational Law, Dean's List & Student Representative

**B.A., Hamilton College**                                                              *1967–1971*
Junior Year at the Sorbonne, Paris, France and Dean's List

**Pepperdine University School of Law**                                        *2002–2006*
ADR courses at the Straus Institute

## Memberships & Affiliations

- State Bar of CA and LA Co. Bar Assn.
- French American Bar Assn., Irish American and Italian American Lawyers Assns.
- Treasurer, Executive Committee: Business & Corporations Law Section, LA Co. Bar
- Judge Pro Tem, LA Superior Court.
- Attorney Settlement Officer, U.S. District Court, C.D. Cal.
- Chairman, San Marino City Traffic Commission
- Author, Guarantying a Hit (or Miss), 2 Vand. J. Ent.L. & Prac. 137 (2000).

## Admissions

- New York, California, and Tennessee
- U.S. Dist. Courts for S.D.N.Y., E.D.N.Y., and C.D.Cal.
- U.S. Court of Appeals for the 2nd Circuit

# EXHIBIT B