Craig L. Chisvin, Esq. (SBN 191825)
**CHISVIN LAW GROUP, APC**
11400 W. Olympic Blvd., Suite 700
Los Angeles, CA 90064
Tel. (310) 820-4488
Fax: (310) 820-8485
craig.chisvinlaw@ymail.com

Shanen R. Prout, Esq. (SBN 236137)
**LAW OFFICE OF SHANEN R. PROUT**
11400 W. Olympic Blvd., Suite 700
Los Angeles, CA 90064
Tel. (424) 208-6399
Fax: (310) 494-9382
shanen@srplawyer.com

Attorney for Plaintiffs
ALISA WOLF and ACTORS FOR AUTISM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| DR. ALISA WOLF, an individual, ACTORS FOR AUTISM, a California corporation,<br><br>             Plaintiffs,<br><br>     v.<br><br>JOSEPH "JOEY" TRAVOLTA, an individual d/b/a INCLUSION FILMS; INCLUSION WEAR, LLC, a California Limited Liability Company; LITTLE DOCUMENTARY FILMS, LLC, a California Limited Liability Company,<br><br>             Defendants. | Case No.: 14-CV-00938-CAS (VBKx)<br><br>Hon. Christina A. Snyder<br>Courtroom 5, 2nd Floor<br><br>Action Filed: February 6, 2014<br>Pre-Trial Conf.: February 29, 2016<br>Trial Date: March 8, 2016<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

I.      THE GENUINE DISPUTES OF MATERIAL FACTS…………………….1

    A. Defendants Have Not Proven Untimely Infringement Claims…………..1

    B. Defendants' Copying Between 2001-2014………………………………2

    C. Dr. Wolf's Diligent Efforts to Discover Wrongdoing ..…………………2

II.     NO ACTUAL KNOWLEDGE OF WRONGDOING……...…………….…4

III.    DEFENDANTS' BURDENS ON THEIR MOTION………………………4

IV.     APPLICABLE LAW SUPPORTING TRIAL OF THE ISSUE OF
        WHETHER THE COPYRIGHT LIMITATIONS PERIOD TOLLED UNTIL
        NOVEMBER 2012 ..……………………………………………………6

    A. The Discovery Rule Should Toll the Limitations Period Until November
       2012……………………………………….……………………………7

    B. Inquiry Notice Is Not the Start Date for the Statute of Limitations On
       Copyright Infringement……………………………………………..11

V.      THE JURY MAY CREDIBLY FIND FRAUDULENT CONCEALMENT
       OF MR. TRAVOLTA'S INFRINGEMENT………………………12

VI.     CONCLUSION……………………………………………………14

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Avila v. Williams Environmental Remediation Trust*
    633 F.3d 828 (9th Cir. 2011) ………………………………………5

*Beidleman v. Random House, Inc.*
    621 F. Supp. 2d 1130 (D. Colo. 2008)…………………………………5

*Beneficial Standard Life Ins. Co. v. Madariaga*
    851 F.2d 271 (9th Cir. 1988)…………………………………………7

*Bridge Publications, Inc. v. Vien*
    827 F.Supp. 629 (S.D. Cal. 1993)……………………………………9

*Chicago Bldg. Design v. Mongolian House, Inc.*
    770 F.3d 610 (7th Cir. 2014)......................................................11, 12

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*
    2012 WL 1830129 (W.D. Mich. Apr. 23, 2012)…………………..9

*Design Basics, LLC v. Chelsea Lumber Co.*
    977 F. Supp. 2d 714, 724 (E.D. Mich. 2013)………………………8, 9

*Fahmy v. Jay-Z*
    835 F. Supp. 2d 783 (C.D. Cal. 2011)………………………6, 12, 13

*Gaiman v. McFarlane*
    360 F.3d 644 (7th Cir. 2004)…………………………………………9

*Garcia v. Coleman*
    2008 WL 4166854 (N.D. Cal. 2008)………………………………11

*Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.*
    No. 12-2061, 2012 WL 5944761 (E.D. Pa. Nov. 28, 2012)...............11

*Grimmett v. Brown*
    75 F.3d 506 (9th Cir. 1996)…………………………………………14

TABLE OF AUTHORITIES

*Kling v. Hallmark Cards Inc.*
    225 F.3d 1030 (9th Cir. 2000)……………………………………...6

*Koszola v. Board of Educ. of City of Chicago*
    385 F.3d 1104, 1111 (7th Cir. 2004)………………………………5

*Kregos v. Associated Press*
    3 F.3d 656, 661 (2nd Cir. 1993)…………………………………..10

*Low v. SDI Vendome S.A.*
    2003 WL 25678880 (C.D. Cal. Jan. 7, 2003) ………………………14

*Martin v. Alamo Cmty. College Dist.*
    353 F.3d 409 (5th Cir. 2003)………………………………………..5

*Merck & Co., Inc. v. Reynolds*
    559 U.S. 633 (2010)…………………………………………………12

*McIntosh v. Nor. Cal. Universal Enterprises Co.*
    670 F. Supp. 2d 1069 (E.D. Cal. 2009)……………………………..9

*Netzer v. Continuity Graphic Assoc., Inc.*
    963 F. Supp. 1308 (S.D.N.Y. 1997) ………………………………..8

*Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.,*
    210 F.3d 1099 (9th Cir. 2000) ……………………………………..4

*Oracle USA, Inc. v. Rimini Street, Inc.*
    6 F. Supp. 3d 1108 (D. NV. 2014)………………………………….11

*Petrella v. Metro-Goldwyn-Mayer, Inc*
    134 S. Ct. 1962 (2014)……………………………………………...2

*Polar Bear Productions, Inc. v. Timex Corp.*
    384 F.3d 700 (9th Cir. 2004) ………………………………..6, 7 n.2

*Prather v. Neva Paperbacks, Inc.*
    446 F.2d 338 (5th Cir. 1971) ……………………………………13

*Psihoyos v. John Wiley & Sons, Inc.*
    748 F.3d 120 (2nd Cir. 2014)…………………………………..7, 10

- iii -

TABLE OF AUTHORITIES

*Roley v. New World Pictures, Ltd.*
    19 F.3d 479 (9th Cir.1994)……………………………………………6, 7 n.2

*Santa Maria v. Pac. Bell*
    202 F.3d 1170 (9th Cir. 2000)……………………………………………12

*Sellers v. Perry*
    80 F.3d 243 (7th Cir. 1996)……………………………………………..7

*Taylor v. Meirck*
    712 F.2d 1112 (7th Cir. 1983)……………………………………7 n.2, 8

*United States v. Marolf*
    173 F.3d 1213 (9th Cir. 1999)……………………………………………13

*Van Buskirk v. Carey Canadian Mines, Ltd.*
    760 F.2d 481 (3d Cir. 1985)……………………………………………..5

*Volk, et al. v. D.A. Davidson & Co., et al.*
    816 F.2d 1406 (9th Cir. 1987)……………………………………………14

*Warren Freedenfeld Assoc., Inc. v. McTigue*
    531 F.3d 38 (1st Cir. 2008)…………………………………………..7, 9

*William A. Graham Co. v. Haughey*
    568 F.3d 425 (3d Cir. 2009) …………………………………………7, 11

*William A. Graham Co. v. Haughey*
    646 F.3d 138 (3d Cir. 2011)……………………………………………6

**FEDERAL STATUTES**

    17 U.S.C. Section 501(a)–(b)……………………………………………6

    17 U.S.C. Section 507(b) ………………………………………………8

    17 U.S.C. Section 102(a)………………………………………..……18

TABLE OF AUTHORITIES

**SECONDARY AUTHORITIES**

Ninth Circuit Manual of Model Jury Instructions (2007), No. 7.4................6

Hon. A. Wallace Tashima & James M. Wagstaffe, CAL. PRAC. GUIDE, FED.
CIV. PROC. BEFORE TRIAL, ¶ 14:297 (Rutter Group 2015, 9th Cir. ed.,
2015)...............................................................................................5

TABLE OF AUTHORITIES

Per the Court's February 4, 2016, civil minutes (Dkt. 183), Plaintiffs Alisa Wolf and Actors For Autism (AFA) submit this brief in further opposition to Defendants' motion for summary judgment.  <u>Plaintiffs request an opportunity to present additional oral argument in opposition to Defendants' motion at a time convenient for the Court.</u>

## I.     THE GENUINE DISPUTES OF MATERIAL FACTS

Because Plaintiffs filed their original complaint on February 6, 2014, and because the statute of limitations for copyright infringement is three years, February 6, 2011 is the key date here.  There are genuinely disputed issues of material fact concerning the following:

### A.     <u>Defendants Have Not Proven Untimely Infringement Claims</u>

The FAC is vague regarding when Defendants first infringed Dr. Wolf's copyrights, i.e., when they first copied, distributed, or published her works.  *See also* FAC, ¶¶ 91, 101.  Plaintiffs will prove this at trial.  Defendants, however, as the party with the burden, have not produced evidence to definitely answer this question.  *See* PS ¶¶ 14-18, 28-29 (nothing showing precisely when Defendants first copied, distributed, or published Dr. Wolf's copyrighted works).  Defendants also fail to articulate what portions of Dr. Wolf's program designs that Defendants' April 2010 work infringes and when those portions were infringed.  While Defendants first published a version of their allegedly infringing work to the Internet "in <u>or about</u>" May 2010, offering the "2010 revision" for download from the inclusionfilms.com webpage (PS ¶ 29; Travolta Decl. ¶9, Ex. S), these statements are uncertain regarding when Defendants reproduced (17 U.S.C. §107(1)) or distributed (17 U.S.C. §107(3)) any portion of this infringing work to a regional center, thus triggering a relevant infringement.[1]  Particularly on the question of determining Dr. Wolf's awardable net profits, Defendants' submission of infringing copies of Dr. Wolf's program designs to

---

[1] *See also* Plaintiffs' Objection No. 8 to the Declaration of Joey Travolta filed in support of the Motion for Summary Judgment, p.7 (Dkt. 144-2).

- 1 -

the regional centers in order to secure vendorization is the heart of her action.
Moreover, as argued below, the mere fact that Defendants published anything online
does not per se establish actual or constructive notice of infringement.  Defendants
have not shown that Plaintiffs viewed, had the opportunity to view, or even knew of,
their Web site at any time.

### B.      Defendants' Copying Between 2001-2014

"Under the separate-accrual rule that attends the copyright statute of limitations,
when a defendant has committed successive violations, each infringing act starts a new
limitations period.  However, under § 507(b), each infringement is actionable only
within three years of its occurrence."  *Petrella v. Metro-Goldwyn-Mayer, Inc*., 134 S.
Ct. 1962, 1964 (2014).  Attached to the Declaration of Craig Chisvin ("Chisvin Decl.")
accompanying this brief are copies of documents produced in discovery by regional
centers that show Defendants, either themselves or through the Frank D. Lanterman
Regional Center (FDLRC), were distributing copies of their infringing program design
to the other regional centers between 2011 and 2014.  Chisvin Decl. ¶¶2-5, Exs. A-D.

### C.      Dr. Wolf's Diligent Efforts to Discover Wrongdoing

When Dr. Wolf met with a FDLRC representative in January 2007 to discuss the
December 28, 2006 letter from Karen Ingram of FDLRC, the representative told Dr.
Wolf that "Lanterman Regional Center was not using [Dr. Wolf's] program design"
and that Mr. Travolta was instead developing a "different film program" with FDLRC
than any program proposed by AFA.  PS  ¶43.

In late 2006, Dr. Wolf contacted a lawyer to inquire about how she should
approach the possibility that Mr. Travolta might have accessed her works or was using
them to secure vendorization for his own benefit.  The lawyer told Dr. Wolf that if she
could obtain evidence of Mr. Travolta's access she could file a lawsuit against him.
However, the lawyer made it very clear to Dr. Wolf that she needed to proof that Mr.
Travolta was profiting from the use of Dr. Wolf's works.  The lawyer told Dr. Wolf,

PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

"You must make sure you have grounds, you should not file a frivolous lawsuit."  PS ¶44.

In early 2007, Dr. Wolf spoke with Mr. Travolta and asked him if he was using either of her works in developing a program for vendorization.  Mr. Travolta denied that he was doing so.  Mr. Travolta stated that he was instead working with FDLRC to develop a "different program."  PS ¶45.

In early 2007, Dr. Wolf also spoke with Richard Bluth, who Dr. Wolf was aware of being a business associate of Mr. Travolta, to discuss of Mr. Bluth of Mr. Travolta were using Dr. Wolf's works in any way.  PS ¶46.  Mr. Bluth denied that either of them were doing so.   In fact, Mr. Bluth told Dr. Wolf that even though he was working with Mr. Travolta to develop a program for vendoring with FDLRC, that program was unlikely to be consummated because Mr. Travolta had recently became involved in a business deal with ValCom Studios in Burbank, California that would occupy all of Mr. Travolta's time.  PS ¶47.

Despite her efforts to learn if the contrary was true, all of Dr. Wolf's suspicions disappeared regarding Mr. Travolta copying her practical filmmaking program designed for adults on the autistic spectrum.  PS  ¶48.

From early 2007 until November 25, 2012, Dr. Wolf did not have any verifiable information that Mr. Travolta had actually acquired a copy of the May 2006 Work or September 2006 Work, that he provided either of them to any third party in exchange for or in order to receive money, or that Mr. Travolta was contracting with FDLRC or another regional center to perform or license the program designs in the May 2006 Work or September 2006 Work.  PS ¶49.

On November 25, 2012, Dale O'Prandy, an individual that Dr. Wolf knew to be associated in business with Mr. Travolta informed Dr. Wolf that Mr. Travolta was using Dr. Wolf's works in order to gain substantial financial benefits through the business Inclusion Films.  Mr. O'Prandy told Dr. Wolf that Mr. Travolta was using Dr.

- 3 -

Wolf's curriculum in order to gain substantial financial benefits through Inclusion Films. This was the first time that Dr. Wolf received information that Mr. Travolta had accessed her works and submitted them to the California Regional Center system to achieve vendorization. PS ¶50.

Immediately after speaking to Mr. O'Prandy, Dr. Wolf took various steps to confirm that Mr. Travolta and Inclusion Films in fact had access her works and had vendored a practical filmmaking program for autistic persons that Dr. Wolf believed was approved by the California Regional Center system based on copies of Dr. Wolf's works. PS ¶51.

## II.   NO ACTUAL KNOWLEDGE OF WRONGDOING

It is axiomatic that a plaintiff cannot discover wrongdoing before it occurs. What she might "discover" before the wrongdoing is merely an unfounded suspicion of wrongdoing. Defendants point to nothing in the record showing or suggesting that Dr. Wolf had actual knowledge before February 6, 2011 that Defendants infringed her copyrights or violated AFA's state law rights by submitting the copyrighted program designs to California regional centers for funding.

## III.   DEFENDANTS' BURDENS ON THEIR MOTION

A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id*. To carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is <u>no</u> genuine issue of material fact. *Id*.

- 4 -

If the defendant is moving for summary judgment on an affirmative defense for which it has the burden of proof, it "must establish beyond peradventure *all* of the essential elements of the ... defense to warrant judgment in [its] favor." *Martin v. Alamo Cmty. College Dist*., 353 F.3d 409, 412 (5th Cir. 2003). Defendants alone bear the burden of proving that no genuine dispute of material fact exists concerning the statute of limitations. *See, e.g., Koszola v. Board of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) ("summary judgment is the . . . moment in a lawsuit . . . when a party must show what evidence it has that would convince a trier of fact to accept its version of events").

Defendants bears "a heavy burden" of demonstrating constructive notice as a matter of law because the applicability of the statute of limitations usually implicates factual questions about when plaintiff discovered or should have discovered their claim. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985). Disposing of questions related to statutes of limitation is a fact-intensive inquiry that is generally inappropriate on summary judgment. *See, e.g., Beidleman v. Random House, Inc*., 621 F. Supp. 2d 1130, 1134 (D. Colo. 2008). "Summary judgment is rarely proper where the statute of limitations runs from when plaintiff discovered or should have discovered the elements of the cause of action." Hon. A. Wallace Tashima & James M. Wagstaffe, CAL. PRAC. GUIDE, FED. CIV. PROC. BEFORE TRIAL, ¶ 14:297 (Rutter Group 2015, 9th Cir. ed., 2015), *citing Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828 (9th Cir. 2011) (despite massive publicity, genuine issues of material fact existed as to precise date by when plaintiffs should have known that their alleged injuries were caused, precluding summary judgment on statute of limitations grounds).

Viewing the universe of the facts at issue on Defendants' motion, and considering all inferences that could by drawn from the facts in the light most favorable to Plaintiffs, it cannot be said definitively as a matter of law that a rational

- 5 -

jury would not find for Plaintiffs.  Defendants have failed to meet their burdens of persuasion, proof and production regarding the statutes of limitations.

## IV. APPLICABLE LAW SUPPORTING TRIAL OF THE ISSUE OF WHETHER THE COPYRIGHT LIMITATIONS PERIOD TOLLED UNTIL NOVEMBER 2012

Proving copyright infringement requires two elements: (1) ownership of a valid copyright, and (2) *copying* of the copyrighted work.  Ninth Circuit Manual of Model Jury Instructions (2007) ("Model Jury Instructions"), No. 17.4; 17 U.S.C. § 501(a)–(b). Plaintiff must prove by a preponderance of the evidence that "that the defendant had access to the plaintiff's copyrighted work and that there are substantial similarities between the defendant's work and original elements of the plaintiff's work."  Model Jury Instructions, No. 17.15.

A claim for copyright infringement "accrues when one has knowledge of a violation or is chargeable with such knowledge."  *Roley v. New World Pictures, Ltd*., 19 F.3d 479, 481 (9th Cir.1994).  Actual or constructive knowledge of facts giving rise to the alleged infringement is required.  *Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 788 (C.D. Cal. 2011) (granting defendant's summary judgment motion because plaintiff *admitted* to knowing of infringement before three-year period and no equitable tolling saved his claim).  The "accrual of a cause of action occurs at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge of all the facts could get it past a motion to dismiss for failure to state a claim."  *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011) (*Haughey II*).  "The statute of limitations is triggered only by violations—i.e., actual infringements . . . . "  *Kling v. Hallmark Cards Inc*., 225 F.3d 1030, 1038 (9th Cir. 2000) (reversing grant of summary judgment for defendant).

Under the discovery doctrine, copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement.  *Polar Bear Prods., Inc*.

*v. Timex Corp.*, 384 F.3d 700, 705-07 (9th Cir. 2004); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2nd Cir. 2014) (denying motion for summary judgment on copyright statute of limitations).  "The plaintiff is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, *would* have led to discovery of the [claim.]"  *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 275 (9th Cir. 1988) (genuine issue of material fact existed as to whether plaintiff had actual or constructive knowledge of alleged fraud within limitations period, precluding summary judgment).

The first step in applying the discovery rule is establishing when the injury actually occurred.  *William A. Graham Co. v. Haughey (Haughey I)*, 568 F.3d 425, 438 (3d Cir. 2009); *see also Sellers v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) ("the statute of limitations cannot begin to run until a defendant takes some action to injure the plaintiff").[2]  Only then does a court "determine whether the injury was immediately discoverable, or whether the accrual date will be postponed until it is reasonable to expect the plaintiff to discovery the injury."  *Haughey I*, 568 F.3d at 438.

A.     **The Discovery Rule Should Toll the Limitations Period Until November 2012.**

A reasonably diligent plaintiff should discover the injury forming the basis of an action when the plaintiff is put on inquiry notice of the infringement of a right.  *See, e.g., Warren Freedenfeld Assoc., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) ("[A] plaintiff can be charged with inquiry notice, sufficient to start the limitations clock, once he possesses information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer."); *Haughey I*, 568 F.3d at 438 (holding that a claim accrues when the plaintiff "should

---

[2] The Ninth Circuit has adopted the Seventh Circuit's standard for claim accrual.  *See Polar Bear Prods., Inc.*, 384 F.3d 707 and n. 4 (citing *Taylor v. Meirck*, 712 F.2d 1112, 1117–1118 (7th Cir. 1983) (explaining how *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) defined accrual, adopting "knew or should have known" standard from *Taylor*).

- 7 -

have known of the basis for its claims, which depends on whether it had <u>sufficient information</u> of possible wrongdoing to place it on inquiry notice") (emphasis added); *Netzer v. Continuity Graphic Assoc., Inc*., 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997) ("A cause of action accrues when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right."). A plaintiff is on inquiry notice once she possesses information regarding culpable conduct—"storm warnings"—suggesting some reason to investigate. *Design Basics, LLC v. Chelsea Lumber Co*., 977 F. Supp. 2d 714, 724 (E.D. Mich. 2013). But, stated as such, this means only that "it is not enough that he did not discover he had a cause of action, if a <u>reasonable man in his shoes</u> would have." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983).

When the defendant has knowledge of facts comprising copyright infringement, he is charged with the consequences of failing to notify the plaintiff of the wrongdoing or injury to plaintiff. *See Taylor v. Meirick*, 712 F.2d at 1117. In analyzing the accrual of the 17 U.S.C. Section 507(b) statute of limitations, the Seventh Circuit held that, "[a] tortfeasor has a duty to assist his victim. The initial injury creates a duty of aid and the breach of the duty is an independent tort. This principle applies to a statutory tort such as copyright infringement." *Id.* In addition to *Haughey I*, there are other cases finding no accrual of the statute of limitations because of similar insufficient constructive notice.

In *Design Basics, LLC v. Chelsea Lumber Co*., in denying defendant's summary judgment motion, the court held that the copyright holder was not put on inquiry notice of its licensee's alleged infringement of copyrights to trigger the statute of limitations under the discovery rule. Although allegedly infringing materials were publicly available through the licensee's website and its distribution of promotional pamphlets, there were no storm warnings or indications of infringement to "fairly suggest" reason to investigate. *Design Basics, LLC*, 977 F. Supp. 2d at 722-725. The copyright owner was not under a continuous duty to police its copyright. *Id.* at 725. "[I]t would be

- 8 -

unreasonably burdensome to impose on a copyright owner a 'never ending obligation to discover whether anyone to whom he ever supplied his [copyrighted material] would copy it.'" *Id.* "[T]he fact that potentially infringing materials were publicly available does not, without some additional 'triggering event,' put a plaintiff on inquiry notice." *Id.*; *quoting Warren Freedenfeld Assoc., Inc.*, 531 F.3d at 46 ("Architects have no general, free-standing duty to comb through public records or to visit project sites in order to police their copyrights."). A copyright owner has no duty to search for copyright notices from all parties who *may* be infringing the owner's rights. *See Gaiman v. McFarlane*, 360 F.3d 644, 654 (7th Cir. 2004). Only when the owner actually sees an adverse notice of copyright ownership, can the owner be charged with knowledge of copyright infringement. *See id.* "If an infringement is initially remote, concealed or not subject to reasonable discovery by an unsuspecting copyright holder in his everyday routine, he should not lose his copyright protection unwittingly." *See, e.g., Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830129, *2 (W.D. Mich. Apr. 23, 2012)(denying summary judgment).

In *McIntosh v. Nor. Cal. Universal Enterprises Co.*, 670 F. Supp. 2d 1069 (E.D. Cal. 2009), the court denied the defendants' motion for summary judgment on its statute of limitations defense. There the plaintiff admitted to considering suit against the defendants for copyright infringement more than three years before filing. *Id.* at 1100-01. The court held that under *Haughey I's* analysis, however, such an admission "demonstrates no *knowledge* of potential infringement," let alone actual infringement. *Id.* at 1101. Plaintiff was not obligated to investigate infringement in the offing. *Id.*

In *Bridge Publications, Inc. v. Vien*, 827 F.Supp. 629 (S.D. Cal. 1993), the district court held that plaintiff's copyright infringement claims concerning defendant-former employee's copying and use of plaintiff's literary works and sound recordings in a course that defendant offered for sale, were not barred by applicable three-year statute of limitations, even though plaintiff's officers knew that the defendant had left

plaintiff-organization to start a competing ministry, plaintiff asked about defendant's knowledge of plaintiff's materials more than three years before commencement of the action, and plaintiff was told that defendant had those materials in her possession. *Id.* at 634. Plaintiff actually permitted defendant to learn and study the materials under a confidentiality agreement, and there was no evidence that plaintiff knew of the defendant's potential infringing use of the copyrighted materials in her competing ministry. *Id.* The existence of the confidentiality agreement in that case is appreciably similar to Mr. Travolta's fiduciary duties of confidence and loyalty owed to AFA.

In *Psihoyos*, the Second Circuit found that there was "no dispute that under the discovery rule none of [plaintiff's] claims are time-barred. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d at 124. In that case, plaintiff owned copyrights to several photographs that he created in 2005 to 2009. In November 2010, defendant notified plaintiff that it had copied plaintiff's photographs by publishing them in various textbooks between 2005 and 2009. Defendant sought a retroactive license for the uses, thus triggering the statute of limitations. Plaintiff filed suit in March 2011. *Id.* at 122. The Second Circuit held that the statute of limitations did not begin to run until November 2010. *Id.* at 124. Plaintiff could not have discovered the copying earlier, despite publication in textbooks.

Moreover, though the Court did not consider the 2006 minutes of AFA's board meetings in tentatively granting Defendants' motion (Dkt. 183, p. 4, fn. 2), should the Court admit them at trial, they may convey to the jury that Plaintiffs were justified in relying at the time on the advice of AFA's counsel to proceed with a lawsuit only on sufficient notice of infringement. It is not unreasonable for a plaintiff to rely on the legal opinion of its counsel concerning whether infringement exists. *Cf. Kregos v. Associated Press*, 3 F.3d 656, 661 (2nd Cir. 1993) (holding that plaintiff could have sought another opinion, and it was unreasonable for him to rely on the legal opinion of

*defendant's* counsel where the parties' interests were adverse), *cert. denied*, 510 U.S. 1112.

The trier of fact may find that the plaintiff also reasonably relied on its belief that a defendant with whom it had a prior good faith relationship or who it had trusted (e.g., a fiduciary), was not acting against its interests, thus that would necessitate an investigation into infringement or wrongdoing. *See, e.g., Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.*, No. 12-2061, 2012 WL 5944761, at *3-5 (E.D. Pa. Nov. 28, 2012). Further, where a defendant expressly assures the plaintiff that he is not violating the plaintiff's intellectual property rights, the plaintiff cannot be charged with knowledge of the infringing conduct. *See e.g.*, *Haughey I*, 568 F.3d at 439-41 (despite "storm warnings" that defendant was a competitor and was in possession of copyrighted material, it was reasonable for plaintiff to delay filing suit because defendant had 'repeatedly agreed to respect [plaintiff's] rights to its intellectual property."), *quoted by Oracle USA, Inc. v. Rimini Street, Inc.*, 6 F. Supp. 3d 1108, 1124 (D. NV. 2014). Similarly, mere general knowledge that a competitor is going to enter (or has entered) the market and compete is also insufficient to place the plaintiff on notice of copyright infringement. *See Garcia v. Coleman*, 2008 WL 4166854, *7 n.2 (N.D. Cal. 2008) (defendant competitor's mere participation in plaintiff's industry is "not enough to establish chargeable knowledge").

**B.**   **Inquiry Notice Is Not the Start Date for the Statute of Limitations On Copyright Infringement.**

The start date for the statute of limitations is when Plaintiffs either actually or "constructively" discovered copyright infringement. Actual discovery is of course just that. "Constructive" discovery refers to the date on which Dr. Wolf as a reasonably diligent person should have discovered that the defendants were violating her rights. *Chicago Bldg. Design v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014). But, "inquiry notice" is not the same as actual or constructive discovery. *Id.* The

- 11 -

Supreme Court has explained that when a limitations period is keyed to the plaintiff's discovery of his injury, "inquiry notice" does not start the limitations clock. *See id.*, citing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 651-53 (2010).  As the *Merk & Co. v. Reynolds* court pointed out

> We conclude that the limitations period . . . begins to run once the plaintiff *did* discover or a reasonably diligent plaintiff *would have* "discover[ed] the facts constituting the violation"— whichever comes first.  In determining the time at which "discovery" of those "facts" occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating.  But the limitations period does not begin to run until the plaintiff thereafter discovers or a **reasonably diligent plaintiff** would have discovered "the facts constituting the violation" ... irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

*Id*. at 653 (emphasis added).

"The concept of inquiry notice may help to identify the time at which a reasonable plaintiff can be expected to start investigating a possible violation of his rights, but it does not itself trigger the statute of limitations."  *Chicago Bldg. Design v. Mongolian House, Inc*., 770 F.3d at 616.

## V.     THE JURY MAY CREDIBLY FIND FRAUDULENT CONCEALMENT OF MR. TRAVOLTA'S INFRINGEMENT

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  The doctrine of fraudulent concealment requires "affirmative conduct upon the part of the defendant which would, under the circumstances, lead a reasonable person to believe that he did not have a claim for relief." *Fahmy*, 835 F. Supp. 2d at 791.  "A court may ... equitably toll a statute of limitations in the interests of justice, such as when (1) the defendant

- 12 -

misleads the plaintiff into allowing the statutory period to expire, or (2) extraordinary circumstances beyond the plaintiff's control make it impossible for him to file suit on time. The burden is on the plaintiff to show that equitable tolling is appropriate." *United States v. Marolf*, 173 F.3d 1213, 1218 n. 3 (9th Cir. 1999). Put another way, statutes of limitations are subject to equitable tolling if a plaintiff shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevent timely filing." *Fahmy*, 835 F. Supp. 2d at 788.

The vital information that Plaintiffs required to apprise them of facts triggering a duty to sue was knowledge that Mr. Travolta had in fact copied Dr. Wolf's works before February 6, 2011, or, at minimum, that he was credibly threatening to do so. There was no such knowledge. Plaintiffs should be permitted to ask the jury to weigh if Dr. Wolf acted "reasonably" in believing Defendants' representations that they did not copy her works between 2006 and 2012, and if she pursued her rights diligently.

Plaintiffs cited *Prather v. Neva Paperbacks, Inc*., 446 F.2d 338 (5th Cir. 1971) in their Opposition for the general rule that a court may equitably toll the copyright statute of limitations. The facts of *Prather*, however, are distinguishable. That case involved a plaintiff who had earlier sued the same defendants in an earlier infringement suit. *Id*. at 340. Moreover, the defendants' degree and manner of concealment of infringement were undisputed, but the Fifth Circuit still held that equitable principles could not toll the statute of limitations. *Id.* And the plaintiff effectively admitted to knowing about the infringing book before filing suit. *Id*. at 341.

In Dr. Wolf's case, she had no knowledge that Mr. Travolta had earlier infringed her works in a different situation. The parties here dispute Defendants' acts of concealment. Moreover, Dr. Wolf has expressly denied knowing of the infringement until 2012. There remains, however, the question of what else Dr. Wolf could have done to show Defendants' successful concealment of their infringement. Perhaps she could have requested that the FDLRC provide her with a copy of the Defendants'

PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

allegedly infringing program designs, but there is no evidence, or reason to think, that FDLRC would have produced copies to Dr. Wolf.  Defendants have not shown any evidence on this question (e.g., a declaration from Karen Ingram).  Further, given the relatively concealed nature of Defendants' works (presumably only they and the regional centers, and perhaps a few of their customers, knew of their contents), Dr. Wolf could not have easily accessed them.

The Court's February 4 civil minutes state that a defendant's "failure to 'own up' [to the alleged wrongdoing] does not constitute active concealment."  *Grimmett v. Brown*, 75 F.3d 506, 515 (9th Cir. 1996).  However, "[i]n *Grimmett*, the plaintiff failed even to plead the allegedly concealed facts in her complaint.  [Citations omitted].  Moreover, she claimed concealment by a particular defendant even though she had named that *same* defendant in an earlier adversary complaint (which alleged the same conduct) in bankruptcy court.  [Citations omitted]."  *Low v. SDI Vendome S.A.*, CV02-5983AHM(CWX), 2003 WL 25678880, at *6 (C.D. Cal. Jan. 7, 2003)(emphasis in original).  *Grimmett* is distinguishable because it involved a motion to dismiss at the pleadings stage, only involved the RICO statute, and the plaintiff there "had available all the facts necessary to discover her cause of action with due diligence."  *Grimmett*, 75 F.3d at 515.  Perhaps had Dr. Wolf failed to use due diligence in her inquiry or she unreasonably relied on the Defendants' or their agent's misrepresentations, the Court should find no fraudulent concealment.  But that only seems to be an equitable finding where Dr. Wolf's reliance is unreasonable because she had independent knowledge or notice of prior, related wrongdoing.  *See id.* at *6, *discussing Volk, et al. v. D.A. Davidson & Co., et al.*, 816 F.2d 1406 (9th Cir. 1987).

## VI.  CONCLUSION

Plaintiffs' respectfully ask that the Court deny Plaintiffs' motion for summary judgment in its entirety and allow Plaintiffs' to argue to the jury that they took reasonable steps to diligently investigate wrongdoing and that their claims were timely

- 14 -

filed. Defendants' motion effectively pledges to the Court that, regardless of what the Plaintiffs may establish at trial, Defendants undeniably have a statute of limitations defense to all claims. Defendants, however, have not lived up to that promise. When one looks at the evidence at bar, ones sees that Dr. Wolf lacked knowledge of any actual or circumstantial *copying* or *distribution* of her program designs by Mr. Travolta. Those events that she was aware of, and that Defendants offer as evidence of knowledge, i.e., the "storm warnings," predated Mr. Travolta's copying, and are not evidence of real or plausible infringement.

Perhaps more importantly, when Dr. Wolf did receive "storm warnings," even if they rise to the what can be characterized as "constructive knowledge" triggering a duty to investigate, Dr. Wolf diligently investigated if Mr. Travolta had infringed her copyrights, but she was rebuffed in discovering actual infringement and she never acquired what can be fairly characterized as constructive notice. Ample case law and secondary authorities hold that where the questions of constructive knowledge and diligent investigation are close, *they should be submitted to the jury at trial*.

The risks to Plaintiffs of prematurely filing a lawsuit were real. Plaintiffs could have wasted time and money by bringing claims before knowing of sufficient information of wrongdoing, and seeing them dismissed early. Instead of rushing to the courthouse when Plaintiffs had a falling out with Mr. Travolta, they actively investigated whether he committed any wrongdoing, namely whether he infringed copyrights. Finding nothing remotely showing that Mr. Travolta had actually copied the program designs, Plaintiffs felt compelled to wait.

Dated:        February 12, 2016        CHISVIN LAW GROUP, APC

                                                        */s/ Craig L. Chisvin*
                                            By: _____
                                                    Craig L. Chisvin
                                                    Attorneys for Plaintiffs ALISA
                                                    WOLF and ACTORS FOR AUTISM

- 15 -

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles at Law Office of Shanen R. Prout.  I am over the age of 18 and not a party to the within action.  My business address is 11400 W. Olympic Blvd., Suite 700, Los Angeles, CA 90064.

     On February 12, 2016, I served the foregoing document described as:

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

on the following person(s) in the manner indicated:

     SEE ATTACHED SERVICE LIST.

**[ ]**    (BY MAIL)   I placed such document in a sealed envelope with first class postage thereon fully prepaid in the United States Mail at Los Angeles, California.

**[ ]**    (BY FACSIMILE TRANSMISSION)  On this date, at the time indicated on the transmittal sheet, attached hereto, I transmitted from a facsimile transmission machine, which telephone number is _____ the document described above and a copy of this declaration to the person, and at the facsimile transmission telephone numbers, set forth herein.  The above-described transmission was reported as complete and without error by a properly issued transmission report issued by the facsimile transmission machine upon which the said transmission was made immediately following the transmission.

**[X]**    (BY CM/ECF NOTICE OF ELECTRONIC FILING) I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other permitted means.

     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on February 12, 2016, at Los Angeles, California.

*/s/ Shanen R. Prout*

_____

Shanen R. Prout

- 1 -

PROOF OF SERVICE

1

## <u>SERVICE LIST</u>

2

3    John S. Cha, Esq.                         Attorneys for Defendants JOSEPH "JOEY"
     jcha@raineslaw.com                        TRAVOLTA, d/b/a INCLUSION FILMS;
4    Steven T. Gebelin                         INCLUSION WEAR, LLC; and LITTLE
     sgebelin@raineslaw.com                    DOCUMENTARY FILMS, LLC
5    RAINES FELDMAN LLP
6    9720 Wilshire Boulevard, 5th Fl.
     Beverly Hills, CA 90212
7    Facsimile: (424) 239-1613

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE