1 | **JOHN S. CHA, ESQ. (SBN 129115)**
jcha@raineslaw.com
2 | **STEVEN T. GEBELIN (SBN 261507)**
sgebelin@raineslaw.com
3 | **RAINES FELDMAN LLP**
9720 Wilshire Boulevard, 5th Floor
4 | Beverly Hills, California 90212
Telephone:  (310) 440-4100
5 | Facsimile:   (424) 239-1613
6 |
7 | Attorneys for Defendants JOSEPH "JOEY"
8 | TRAVOLTA, d/b/a INCLUSION FILMS,
INCLUSION WEAR, LLC, and LITTLE
9 | DOCUMENTARY FILMS, LLC.
10 |

11

### UNITED STATES DISTRICT COURT

12

### CENTRAL DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14 ALISA WOLF, *et al.* | **CASE NO. 14-CV-00938-CAS (PJWx)** |
| 15 Plaintiffs, | [Hon. Christina A. Snyder] [Courtroom 5-2nd Floor] |
| 16 | |
| 17 v. | Action Filed:        February 6, 2014 |
| JOSEPH "JOEY" TRAVOLTA, *et al.* | 4AC Filed:          August 5, 2015 |
| 18 Defendants. | Trial Date:          February 9, 2016 |
| 19 | |
| 20 | **DEFENDANTS' SUPPLEMENTAL MEMORANDUM ON STATUTE OF LIMITATIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| 21 | |
| 22 | |
| 23 | |
| 24 | **DATE: N/A** **TIME: N/A** **DEPT.: Court Room 5** |

25

26

27

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

Page(s)

I.     Introduction.................................................................................................. 1

II.    New Facts at Issue. ...................................................................................... 2

III.   Plaintiffs Had Knowledge of Their Claims in 2006-2007 and
       Failed to Prove Their Exercise of Due Diligence........................................ 5

IV.    Plaintiffs Have Not and Cannot Invoke Fraudulent Concealment. ............... 7

V.     Plaintiffs Have Failed to Show Infringing Activity by Defendants
       after the Statutory Bar............................................................................... 10

VI.    Conclusion. ............................................................................................... 13

1

## <u>TABLE OF AUTHORITIES</u>

2 | Cases                                                                        Page(s)

3

*Fahmy v. Jay-Z,*
4        835 F. Supp. 2d 783 (C.D. Cal. 2011) ........................................ 5, 7, 9, 10

5 *Gabriel Techs. Corp. v. Qualcomm Inc.,*
         857 F. Supp. 2d 997 (S.D. Cal. 2012).................................................8
6
*Gaines v. D.C.,*
7        961 F. Supp. 2d 218 (D.D.C. 2013)................................................. 13

8 *Grimmett v. Brown,*
         75 F.3d 506 (9th Cir. 1996) ......................................................... 7, 9
9
*Kaminski v. BP Expl. & Prod. Inc.,*
10       975 F. Supp. 2d 1220 (M.D. Fla. 2013)......................................... 13

11 *Makedwde Publ'g Co. v. Johnson,*
          37 F.3d 180 (5th Cir.1994) ..................................................... 10, 11
12
*Newport-Mesa Unified Sch. Dist. v. State of California Dep't of Educ.,*
13        371 F. Supp. 2d 1170 (C.D. Cal. 2005) ......................................... 12

14 *Pincay v. Andrews,*
          238 F.3d 1106 (9th Cir.2001) ......................................................5
15
*Polar Bear Prods., Inc. v. Timex Corp.,*
16        384 F.3d 700 (9th Cir.2004) .........................................................5

17 *William A. Graham Co. v. Haughey,*
          568 F.3d 425 (3d Cir. 2009) ...................................................... 6, 9
18
*Wood v. Santa Barbara Chamber of Commerce, Inc.,*
19        705 F.2d 1515 (9th Cir. 1983) ................................................... 5, 6

20 Statutes

21 17 U.S.C. Section 505 .................................................................... 14

22 17 U.S.C. Section 102(b) ............................................................... 13

23

24

25

26

27

28

I.     **Introduction.**

Plaintiffs' supplemental briefing on the application of the statute of limitations to bar their claims is almost entirely a rehash of existing arguments already rejected by the Court.  Plaintiffs ignore their admission that they knew Defendants' program was "identical" to the one claimed by Wolf and "suspected Defendant Travolta had merely changed the cover sheet" for his submission to the Regional Center in 2006.  Plaintiffs disingenuously argue that they avoided bringing claims in 2006 and 2007 based on a reasonable investigation, ignoring that they explicitly decided to "not pursue a lawsuit at this time, rather to write a different program to submit to the regional center," despite believing that "it seemed clear that Defendant Travolta was using the program."

Plaintiffs weakly argue that their delay in bringing suit is justified by efforts taken by Wolf to investigate, but these efforts stopped well short of even asking to see the competing "identical program" submitted by Travolta to the Regional Center.  Notwithstanding the unreasonable investigation Plaintiffs claim to have performed, they still do not dispute that even after this investigation they still believed Travolta was causing them harm by taking their business opportunities and ideas in violation of fiduciary duties.  As a result, Plaintiffs were on more than sufficient notice of the alleged harms suffered and thus their claims matured against Defendants in 2006 and 2007.  Moreover, Plaintiffs ignore or talk past the lengthy explanation already provided by the Court in the prior tentative ruling that Plaintiffs' claimed reliance on Defendants' denials (which Defendants testify did not occur) is completely unreasonable and insufficient to overcome the statute of limitations.  Despite Plaintiffs' lengthy and rambling rehash of the same arguments over the same evidence, all of Plaintiffs' claims are time barred.

Apart from the lengthy rehash of old arguments, Plaintiffs' only attempt to show that some non-time barred infringing activity occurred is a fleeting argument that "Defendants, either themselves or through the Frank D. Lanterman Regional

---

*Wolf v. Travolta, et al.*                                    1          **SUPPLEMENTAL BRIEF ISO MOTION FOR**
USDC, Case No. 2:14-cv-00938-CAS (PJWx)                              **SUMMARY JUDGMENT**

1 | Center (FDLRC), were distributing copies of their infringing program design to

2 | other regional centers between 2011 and 2014." Plaintiffs' argument and *only new*

3 | *evidence* falls well short of showing that *Defendants* (and not third parties such as

4 | FDLRC) performed the asserted acts of distribution that allegedly violated

5 | Plaintiffs' copyright in plagiarized material that she claims to own.  Plaintiffs

6 | provide no evidence that FDLRC's sending copies of program design documents to

7 | other nearby regional centers after the copyright claim cutoff date -- done for the

8 | recipient's use in "courtesy vendoring" of the Vocational Film Making for that

9 | center's students -- can be attributed to Defendants.  Moreover, it is clear that

10 | FDLRC's sporadic "distribution" of single copies of Defendants' program service

11 | design (*e.g.* by fax) to other regional centers for the legally-mandated purpose of

12 | permitting nearby students to participate in an educational program would be a fair

13 | use.

14 |        Having demonstrated that the statute of limitations applies to Plaintiffs'

15 | claims, and without any evidence negating Plaintiffs' constructive knowledge of

16 | their claims or showing that any portion of the claims survive the statutory bar,

17 | Defendants are entitled to summary judgment on all of Plaintiffs' claims.

18 | **II.   New Facts at Issue.**

19 |        In support of their supplemental briefing, the only additional evidence

20 | submitted by Plaintiffs is a declaration from counsel attaching three documents

21 | produced by third parties in response to subpoenas served during the litigation.

22 | Docket No. 184-1 (the "Chisvin Decl.").  Plaintiffs argue that this evidence shows

23 | that "Defendants, either themselves or through the Frank D. Lanterman Regional

24 | Center (FDLRC), were distributing copies of their infringing program design to the

25 | other regional centers between 2011 and 2014." Dkt. No. 184 at 2:13-15.

26 |        Instead, the "distribution" referred to by Plaintiffs is the result of a process

27 | called "courtesy vendorization," which occurs whenever one Regional Center's

28 | client chooses to participate in a program that is geographically in another Regional

1 │ Center's catchment area.  Declaration of Joseph "Joey" Travolta in Support of

2 │ Supplemental Memorandum on Statute of Limitations Motion for Summary

3 │ Judgment ("Supp. Travolta Decl.") ¶ 4.  Because a Regional Center can only vendor

4 │ programs in its own geographic or "catchment" area, "courtesy vendorization" is the

5 │ mechanism that is used in such situations, as required by the State.  *Id*. As part of the

6 │ process and paperwork involved in "courtesy vendorization," FDLRC may have

7 │ sent copies of Defendants' Program Service design to other Regional Centers.  *See,*

8 │ *e.g.* Chisvin Decl. at Ex. B (November 2011 fax from FDLRC of Defendants'

9 │ Program Service Design produced by South Central regional Center).  However,

10 │ Defendants had no control over any Regional Center's decision to send copies of

11 │ their Program Service Design to other Regional Centers as part of the legally

12 │ mandated "courtesy vendoring" process.  *Id*. at ¶ 3, 5, 6, 7, 8.

13 │       Notably, and despite arguing about the reasonableness of the investigation

14 │ throughout their brief, Plaintiffs have not submitted ***any*** new evidence regarding

15 │ Plaintiffs' 2006 and 2007 "investigation" of their claims.  Instead, Plaintiffs are still

16 │ tied to the following undisputed facts:

17 │     • Plaintiffs were informed that FDLRC was working with Travolta on a

18 │       "program identical" to the one submitted by Plaintiffs in 2006 (SGI 14);

19 │     • In 2006, Plaintiff Wolf "suspected that Defendant Travolta had merely

20 │       changed the cover sheet" to the program service design submitted by

21 │       Plaintiffs in seeking vendorization of his program (SGI 14);

22 │     • At a December 2006 AFA Board Meeting, after seeking and receiving

23 │       legal advice on possible copyright infringement claims, Plaintiffs opted to

24 │       forgo claims against Travolta for "taking the program" and instead it "was

25 │       decided by the board of directors to not pursue a lawsuit at this time, rather

26 │       to write a different program to submit to the regional center" over

27 │       statements by Wolf that "it seemed clear that Defendant Travolta was

28 │       using the program" (SGI 15);

1     • Despite this decision, Plaintiffs subsequently asserted directly to the
2        Regional Center that "All documents submitted" to the Regional Center
3        were "copywritten by me [Wolf] and registered with the U.S. State
4        Department," that "Mr. Travolta broke his fiduciary duty when he
5        continued to have conversations with Lanterman Regional Center about
6        our program for his own personal gain," that after Mr. Travolta left AFA
7        "any further conversations regarding this program should have ceased,"
8        asserting that by law "any and all concepts, programs and services which
9        are developed under a public charity belong to the charity" and that a
10     "board member may not take an idea, concept, program, or service for
11     personal gain." (SGI 16);
12     • Plaintiffs met with regional center representatives in person and agreed to
13        withdraw their appeal and instead submit a different 2-year vocational
14        program that would include film, television, and animation vocational
15        training, in line with the prior decision of the AFA Board to forgo the
16        claims against Defendants (SGI 17);
17     • Following this meeting, Plaintiff Wolf still believed that Travolta was
18        harming Plaintiffs by taking their opportunities and ideas and breaching
19        fiduciary duties to them, despite claiming to have received reassurances
20        that the program service design was not copied (SUF 18).
21      In sum, Plaintiffs still cannot and do not factually dispute that in 2006 they
22 believed that Travolta had submitted the claimed copyrighted materials to the
23 Regional Center by just placing his name on them (*i.e.* making unauthorized copies
24 of the works), had directly asserted such claims to the Regional Center by January
25 2007, accused Travolta of copying the program design materials at issue in this case
26 in 2007 and asserting that his "breach of fiduciary duties" to Plaintiffs involved
27 improperly taking their "copywritten" for his own use and submission to the
28 Regional Center. Moreover, Plaintiffs admit that despite (disputed) claims they

1    were reassured by Travolta that he had not copied the materials, they continued to

2    believe that Travolta was still causing harm to Plaintiffs by taking their

3    opportunities and ideas and breaching fiduciary duties.

4        Plaintiffs provide no factual support to show that they were unable to conduct a

5    reasonable investigation into their claims in 2006 and 2007.  For example, Plaintiffs

6    have not shown that they would not have been able to obtain a copy of the

7    Defendants' program service design that Plaintiff Wolf "suspected" was the result of

8    Travolta having "merely changed the cover sheet" to her claimed works.

9    **III.    Plaintiffs Had Knowledge of Their Claims in 2006-2007 and Failed to**

10   **Prove Their Exercise of Due Diligence.**

11       "The Ninth Circuit has held that a plaintiff may recover damages occurring

12   outside the three-year window only if 'the copyright owner did not discover—*and*

13   *reasonably could not have discovered*—the infringement before the commencement

14   of the three-year limitation period'," which results in "a 'disjunctive two-prong test

15   of actual or constructive notice, under which the statute begins to run under either

16   prong .... The plaintiff is deemed to have had constructive knowledge if it had

17   enough information to warrant an investigation which, if reasonably diligent, would

18   have led to discovery of the [claim.]'." *Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 790

19   (C.D. Cal. 2011) (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706

20   (9th Cir.2004); *Pincay v. Andrews*, 238 F.3d 1106, 1109–10 (9th Cir.2001))

21   (emphasis in original).

22       Upon "suspicion that" their work "had been infringed," Plaintiffs had "a duty to

23   investigate further into possible infringements of [the] copyrights," and whether or

24   not they "conducted this further investigation, equity will impute to a litigant

25   knowledge of facts that would have been revealed by reasonably required further

26   investigation." *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d

27   1515, 1521 (9th Cir. 1983) (affirming statute of limitation bar to infringement

28

1  claims where prior suit over infringement of related photograph should have

2  uncovered other infringements by same defendant).

3       After a Defendant shows Plaintiff had received "storm warnings" of potential

4  infringement places a Plaintiff on notice of such claims, "the burden shifts to

5  [Plaintiff] to show that [it] exercised reasonable due diligence and yet [was] unable

6  to discover [its] injuries." *William A. Graham Co. v. Haughey*, 568 F.3d 425, 438

7  (3d Cir. 2009) (citations omitted).

8       Plaintiffs' entire argument about constructive notice fails to acknowledge that

9  Plaintiffs <u>explicitly asserted</u> they had infringement claims against Defendants in

10  2006 and 2007.  It is undisputed that Plaintiffs not only had reason to suspect, but

11  <u>explicitly documented</u> their belief that they had such claims and even asserted to

12  third parties that they had claims for infringement and other harms connected to

13  Defendants' allegedly wrongful vendorization with FDLRC in 2006 and 2007.  (SGI

14  14, 16.)  Plaintiffs' belief in claims of infringement in 2006 and 2007 were explicitly

15  about Defendants' submission of the allegedly infringing Program Service Design to

16  FDLRC, and continued past the point where Defendants were first vendored based

17  on that program service design submitted to FDLRC.  At that point, Plaintiffs are

18  charged with knowledge of their claims and with knowledge of the results of a

19  reasonable investigation.  Plaintiffs have provided no evidence or even argument to

20  establish that they were unable to review Defendants' allegedly infringing program

21  service design at the time of Plaintiffs' claimed "investigation," either through

22  informal or formal discovery.

23       In *Wood v. Santa Barbara Chamber of Commerce*, the plaintiff claimed that it

24  had been prevented from completing discovery in a prior litigation over

25  infringement of a related photograph, but the Ninth Circuit held "as a matter of law

26  that [plaintiff] should reasonably have discovered the allegedly infringing use of

27  those photographs currently at issue." 705 F.2d at 1521.  As was the case in *Wood*,

28  Plaintiffs are charged with the results of a reasonable investigation, even if they

1  failed to properly investigate or use the available tools for discovery of their claims

2  at the time they received constructive notice and explicitly alleged their claims

3  against Defendants.

4       With knowledge of their potential claims, Plaintiffs failed to exercise a

5  reasonable amount of diligence to uncover the scope and extent of their claims.

6  Instead, it is undisputed that Plaintiffs made an explicit decision to not pursue claims

7  against Defendants and dropped their appeal to FDLRC in 2007.  (SGI 15, 17.)  In

8  addition, it is further undisputed that despite allegedly being assured that Defendants

9  were not using their program materials, Plaintiffs still believed they were being

10  wronged by Travolta's alleged taking of business opportunities and ideas and his

11  alleged breach of fiduciary duties in connection with the very same acts that

12  Plaintiffs allege start their claims - the vendorization with FDLRC.  (SUF 18).

13  Plaintiffs knew they had claims against Defendants arising out of the same

14  transactions and events in which they assert that Travolta made infringing copies of

15  the works at issue in this case - the vendorization of the practical filmmaking

16  program using program service design materials alleged to infringe Wolf's

17  copyrights.  Plaintiffs' failure to completely investigate and uncover the complete

18  scope of their <u>known</u> claims does not toll the statute of limitations.

19  **IV.    Plaintiffs Have Not and Cannot Invoke Fraudulent Concealment.**

20       "The doctrine of fraudulent concealment is invoked only if the plaintiff both

21  pleads and proves that the defendant actively misled her, and that she had neither

22  actual nor constructive knowledge of the facts constituting his cause of action

23  despite her due diligence." *Grimmett v. Brown*, 75 F.3d 506, 514-15 (9th Cir.

24  1996).  Simply put, when a plaintiff "had available all the facts necessary to

25  discover her cause of action with due diligence," there can be no claim for

26  fraudulent concealment to toll the limitations period. *Grimmett,* 75 F.3d at 515;

27  *Fahmy v. Jay-Z,* 835 F. Supp. 2d at 791.

28

1    Here, Plaintiffs already had knowledge of their claims against Defendants in

2  2006 arising out of Defendants' vedorization with FDLRC and actively asserted that

3  such claims existed to FDLRC.  Defendants are therefore legally barred from

4  equitable tolling of the statute of limitations.  Indeed, Plaintiffs do not dispute that

5  they were suspicious that Defendant Travolta had harmed them by infringing

6  copyright(s), taking ideas, breaching fiduciary duties, and improperly taking

7  business opportunities.  As a result, Plaintiffs were required to "to take the steps a

8  reasonably diligent plaintiff would take in investigating its claims" that would be

9  based on their suspicion in 2006 and 2007.  *Gabriel Techs. Corp. v. Qualcomm Inc.*,

10 857 F. Supp. 2d 997, 1006 (S.D. Cal. 2012).

11   Plaintiffs could have easily discovered the alleged infringement at the time of the

12 February 2007 meeting with Karen Ingram by simply asking to see a copy of the

13 program service design used by Travolta to vendorize with the Regional Center.

14 Instead, Plaintiff claims to have relied on (undocumented) representations from

15 potentially infringing parties that they had not used her work, including an alleged

16 representation by Ms. Ingram that does not appear in the letter confirming the

17 February 2007 meeting's events.  As such, Plaintiffs failed to take the steps a

18 "reasonably diligent plaintiff would take in investigating its claims," and and their

19 "failure either to proceed against [Defendants] based on the information known to it

20 or to undertake readily available means of confirming [the infringement] was so

21 unreasonable that summary judgment is appropriate." *Id.*

22   Additionally, where, as here, "testimony and corroborating documentary

23 evidence establishes that Plaintiffs actually considered its potential claims against"

24 Defendants, there can be no dispute that the statute of limitations began to run at that

25 time. *Gabriel Techs. Corp.*, 857 F. Supp. 2d at 1008.  Plaintiffs do not dispute that

26 in 2006 they had received legal advice on potential claims based on the copying of

27 the program by Travolta, considered the advice, and decided not to pursue the

28 claims.

---

1    Plaintiffs' citations to *William A. Graham Co. v. Haughey* are unavailing in

2  preventing the obvious conclusion that Plaintiffs were suspicious of the alleged

3  infringement and wrongdoing in 2006 and 2007, and should have reasonably

4  uncovered the alleged infringement by undertaking a reasonable investigation.

5  Unlike *Haughey*, "the storm warnings arose after the alleged wrongs" had already

6  occurred; Plaintiffs became suspicious and were informed of the "identical

7  program" after Travolta had already submitted documents for vendorization, and

8  Plaintiff's meeting with the Regional Center in February 2007 occurred after

9  Defendants were fully vendored in January of the same year.  SGD 15-17; *c.f.* 568

10  F.3d 425, 439 (3d Cir. 2009) (no "duty to inquire into future wrongdoing," but

11  potential plaintiff could be charged with knowledge when "inquiry notice arose for

12  past wrongs.")  Furthermore, Plaintiffs did not just have "evidence that a person is a

13  bad actor in some general sense," but instead had specific suspicions that

14  "Defendant Travolta had merely changed the cover sheet" to the program service

15  design submitted by Plaintiffs, i.e. that Defendants were making unauthorized

16  derivative works from the claimed work(s).  SGD 14; *c.f. Haughey*, 568 F.3d at 440.

17    Furthermore, a claim of fraudulent concealment requires more than a "failure to

18  'own up'," to wrongdoing to show "active concealment."  *Grimmett,* 75 F.3d at 515;

19  see also *Fahmy v. Jay-Z*, 835 F. Supp. 2d at 791 (statement by defendants' attorney

20  asserting license were not grounds for equitable tolling).  Nor can a party rely on

21  actions taken by persons other than Defendants to invoke fraudulent concealment.

22  *Fahmy v. Jay-Z*, 835 F. Supp. 2d at 791-92 (misleading statements by plaintiff's

23  agent was not ground for equitable tolling).  As a result, Plaintiffs' misplaced

24  reliance on alleged statements that no infringement was occurring from Defendants

25  or third party FDLRC would not be sufficient to show active concealment by

26  Defendants sufficient to invoke equitable tolling, even if Plaintiffs were not on

27  notice of their claims in 2006.

28

1      As a result, there is no issue of material fact that prevents the complete

2  application of the statute of limitations to all of Plaintiffs' claims.

3  **V.     Plaintiffs Have Failed to Show Infringing Activity by Defendants after**

4  **the Statutory Bar.**

5      "[A defendant] is only liable for *his* acts of infringement committed within three

6  years prior to [a plaintiff's] lawsuit.") (emphasis in original).  *Fahmy v. Jay-Z*, 835

7  F. Supp. 2d 783, 788 (C.D. Cal. 2011) (citing *Makedwde Publ'g Co. v. Johnson*, 37

8  F.3d 180, 181 (5th Cir.1994)).

9      In its tentative ruling on the statute of limitations, the Court noted "that neither

10  party has referenced any testimony or other evidence in the record regarding alleged

11  copyright infringement occurring between 2011 and 2014," and for that reason, the

12  Court made a *sua sponte* motion "to grant summary judgment in favor of defendants

13  as to the entirety of plaintiffs' two copyright claims." Dkt. No. 183 at 17-18.  The

14  Court did invite the parties to "file supplemental briefing regarding this issue." *Id.*

15  at 18.

16      In response to the Court's invitation, Plaintiffs' brief makes scant reference to

17  allegedly infringing activity "occurring between 2011 and 2014."  Indeed, the only

18  activity in the statutory period referenced at all is five lines of text arguing that

19  "Attached to the Declaration of Craig Chisvin ("Chisvin Decl.") accompanying this

20  brief are copies of documents produced in discovery by regional centers that show

21  Defendants, either themselves or through the Frank D. Lanterman Regional Center

22  (FDLRC), were distributing copies of their infringing program design to the other

23  regional centers between 2011 and 2014." Dkt. 184 at 2:11-15.

24      Thus, the only infringing activity even claimed by Plaintiffs to overcome the

25  Court's *sua sponte* motion for summary judgment as to the entirety of the copyright

26  claims is the alleged distribution of copies of the "infringing program design to the

27  other regional centers."  However, Plaintiffs' documentary evidence and argument

28

1 | fall well short of showing that Defendants committed or were even able to control

2 | the allegedly infringing distribution.

3 |      As set forth in the Supplemental Declaration of Defendant Travolta,

4 | Defendants neither instructed nor controlled any third party Regional Centers to

5 | have them "distribute" copies of the Inclusion Film Program Service Designs for the

6 | Practical Film Workshop to any other Regional Centers. Supp. Travolta Decl. ¶ 3.

7 | Instead, the copies were "distributed" by the third party Regional Centers to other

8 | Regional Centers in connection with a process called "courtesy vendorization." *Id.*

9 | Defendants had no control over any Regional Center's decision to send copies of the

10 | program service design. *Id.*

11 |      Instead, Regional Centers are required to use "courtesy vendorization"

12 | whenever a client chooses to participate in a program which geographically is in

13 | another Regional Center's catchment area. *Id.* at ¶ 4. A client by law and regulation

14 | can only be a client of the Regional Center in the catchment area of the client's

15 | residence. *Id.* The Regional Center can only vendor programs in its own catchment

16 | area. If the client wants to participate in a program that happens to be in another

17 | Regional Center's catchment area, "courtesy vendorization" is the mechanism that is

18 | used as required by the State. *Id.* This practice is certainly more prevalent in urban

19 | areas such as the Los Angeles basin where there are seven regional centers in a

20 | relatively small geographic, but largely populated, area. *Id.*

21 |      For example, Plaintiffs attach a copy of the Inclusion Films Practical Film

22 | Workshop program service design labeled "TWO PHASE PRACTICAL FILM

23 | PROGRAM" with a date of February 4, 2008, which bears a facsimile transmission

24 | stamp evidencing a "distribution" by FDLRC to the South Central Regional Center

25 | on November 16, 2011. Chisvin Decl. ¶ 4, Ex. C. Defendants did not instruct or

26 | control FDLRC's "distribution" of the allegedly infringing document. Travolta

27 | Decl. ¶ 5. Plaintiffs also attach a copy of the program service design dated "April

28 |

1  22, 2010"[1] and copies of the Inclusion Films website published by Defendants in or

2  about April 2010.  Chisvin Decl. ¶ 5, Ex. D; Supp. Travolta Decl. ¶ 5-6.  Defendants

3  did not control the distribution of documents to Westside Regional Center, instead it

4  appears that Plaintiffs sent these documents as part of their subpoena.  Supp.

5  Travolta Decl. ¶5, 6; Chisvin Decl. ¶ 5.  Plaintiffs also attached a document created

6  by third party Futures Explored Inc. bearing a date of July 28, 2014.  Chisvin Decl.

7  ¶ 3, Ex. B; Travolta Decl. ¶ 7.  As is apparent from the document and confirmed by

8  Mr. Travolta, Defendants did not create the document and did not control its

9  distribution to the Alta Regional Center.  Travolta Decl. ¶ 7.

10        Moreover, the alleged "distribution" of copies of Defendants' program

11  service designs by third party Regional Centers to other third party Regional Centers

12  as part of the legally mandated "courtesy vendoring" process is certainly a non-

13  infringing fair use.  *See, e.g. Newport-Mesa Unified Sch. Dist. v. State of California*

14  *Dep't of Educ.*, 371 F. Supp. 2d 1170, 1176 (C.D. Cal. 2005) (legally mandated

15  individual copying of copyrighted "test protocols to parents of special education

16  students" was a fair use in the public interest).

17        Finally, and in the face of the prior evidence on summary judgment showing

18  Plaintiffs' rampant plagiarism and copying of her claimed work from third parties[2],

19  Plaintiffs completely failed to show or explain which portions of documents

20  allegedly distributed by third parties after the statutory bar contain content that

21  Plaintiff actually owns.  Without any delineation, Plaintiffs' claims for infringement

22  based on such later distribution based on a generalized assertion of copying Wolf's

23  efforts appears to violate the Copyright Act's prohibition on using copyright to

24  claim ideas and systems (*e.g.* for creating a program service design describing a

25

26  _____

27  [1] This 2010 document is a minor revision of prior program service designs that makes no changes
       to any of the wording that Plaintiff Alisa Wolf claims to own in this case.  Supp. Travolta
       Decl. ¶ 5.

28  [2] E.g. Dkt. No 144-1, SGI 34-38, demonstrating wholesale copying of the claimed work from third
       party sources.

1  method for the provision of a vocational program in filmmaking to disabled young

2  adults). *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an

3  original work of authorship extend to any idea, procedure, process, system, method

4  of operation, concept, principle, or discovery, regardless of the form in which it is

5  described, explained, illustrated, or embodied in such work."); *see also Gaines v.*

6  *D.C.*, 961 F. Supp. 2d 218 (D.D.C. 2013) (Purported "business plan" in illustrated

7  instructional manual for using advertising images on a lottery ticket was an idea,

8  and, as such, was not protected under the Copyright Act); *Kaminski v. BP Expl. &*

9  *Prod. Inc.*, 975 F. Supp. 2d 1220 (M.D. Fla. 2013) (Engineer's ideas for responding

10  to a massive underwater oil spill were not protected under federal copyright law).

11  **VI.    Conclusion.**

12          Plaintiffs have failed to raise a dispute of material facts sufficient to prevent

13  summary judgment.  They cannot deny their suspicions and expressed belief in their

14  claims of copyright infringement, breaches of fiduciary duty, and taking of ideas in

15  2006 and 2007 that more than put them on notice.  Instead, Plaintiffs chose not to

16  pursue claims at that time and failed to perform diligent investigation that would

17  have allowed them to obtain a copy of Travolta's program service design and

18  evaluate whether it was actually different from Wolf's claimed work.  Nor can

19  Plaintiffs claim estoppel based on the claim that Defendants and FDLRC made bare

20  denials of copying, especially in light of their contemporary knowledge of claims

21  and continued belief in harm by Plaintiffs.

22          Plaintiffs have also failed to present any evidence showing acts of

23  infringement **by Defendants** within the statutory period.  Instead, the only new

24  evidence or argument provided by Plaintiffs relies on an allegation of "distribution"

25  which amounts to third party Regional Centers having sent copies of Defendants

26  program service design to other Regional Centers in connection with the legally-

27  mandated "courtesy vendorization" process.  This fair use by third parties does not

28  amount to infringement by Defendants within the statutory period.

1        For the foregoing reasons, the Court should grant summary judgment in

2   Defendants' favor on all of Plaintiffs' claims, including the entirety of Plaintiffs'

3   two copyright claims.  Upon such entry of judgment, Defendants further request a

4   briefing schedule for their motion to recover attorneys' fees and costs pursuant to 17

5   U.S.C. section 505.

6   Dated: February 22, 2016              Respectfully submitted,

7                                                      **RAINES FELDMAN LLP**

8

9                                                      By:   /s/Steven T. Gebelin
10                                                    STEVEN T. GEBELIN
                                                         Attorneys for Defendants JOSEPH "JOEY"
11                                                    TRAVOLTA, d/b/a INCLUSION FILMS,
                                                         INCLUSION WEAR, LLC, and LITTLE
12                                                    DOCUMENTARY FILMS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---